# EXHIBIT 1

1  DIANE B. WEISSBURG, Esq. (SBN 237136)
2  **WEISSBURG LAW FIRM**
   12240 Venice Blvd, Suite 22
3  Los Angeles, CA 90066
4  Tel: 310/390-0807; Fax: 310/390-0560
   E-mail: dbw_law@msn.com
5
6  Attorney for Plaintiff, Abhijit Prasad
7
8              UNITED STATES DISTRICT COURT
9            NORTHERN DISTRICT OF CALIFORNIA
10
11  ABHIJIT PRASAD,                    ) CASE NO.: 15-cv-04933-BLF
                                        )
12              Plaintiff,             ) SECOND AMENDED
                                        ) VERIFIED COMPLAINT FOR
13        v.                            ) INJUNCTIVE RELIEF AND
                                        ) DAMAGES; DEMAND FOR
14  SANTA CLARA COUNTY                  ) JURY TRIAL; AND DEMAND
    DEPARTMENT OF SOCIAL SERVICES;      ) FOR PUNITIVE DAMAGES
15  GALE SIMMONS, individually;         )
16  GUADALUPE ACEZES, individually; and )
    DOES 1-20, inclusive,              )
17              Defendants.            )
18
19  Plaintiff alleges:
20                **JURISDICTION AND VENUE**
21  1.    This is a lawsuit for injunctive relief and money damages and is brought
22  pursuant to 42 U.S.C. § 1983, et seq., the Fifth and Fourteenth Amendments to the
23  United States Constitution, the laws of the State of California, and common law
24  principles, for personal injuries and violation of constitutional rights by Defendants
25  County of Santa Clara ("County") and its Department of Social Services ("DSS"),
26  Defendant Gale Simmons ("Simmons"), Defendant Guadalupe Acezes ("Acezes"),
27  and Defendants DOES 1-20. Jurisdiction is founded on 28 U.S.C. Section 1331 and
28

1

1 | 1343 and the aforementioned statutory and Constitutional provisions. A state law
2 | claim requesting that the Court issue a writ of mandate and/or injunctive relief is
3 | alleged as well. Plaintiff invokes the Court's supplemental jurisdiction to consider
4 | the state law claims.

5 | 2.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents,
6 | events, and occurrences giving rise to this action occurred in the Northern District.

7 | **GENERAL ALLEGATIONS**

8 | 3.     Plaintiff, Abhijit Prasad (hereinafter "Plaintiff" or "Prasad"), is, and was at all
9 | material times mentioned herein, a resident of the County of San Joaquin, State of
10 | California.

11 | 4.     At all times mentioned herein Defendants DOES 1 through 20 were
12 | employees of DSS, and in doing the acts hereinafter described acted within the
13 | course and scope of their employment. The acts of all defendants, and each of them,
14 | were also done under the color and pretense of the statutes, ordinances, regulations,
15 | customs and usages of the State of California.

16 | 5.     DOES 1 through 20 are sued individually.

17 | 6.     Defendant DOE 1 was at all times material herein the policymaker for said
18 | COUNTY and responsible for the promulgation and implementation of policies,
19 | rules, regulations and procedures for said DSS and its social workers, as well as
20 | clerks and other clerical employees responsible for accurately inputting, deleting,
21 | disseminating child abuse allegations and disposition information into the computer
22 | database or other information retention and retrieval systems accessible to members
23 | of all 58 counties in the State of California, law enforcement, and court personnel
24 | involved in identifying persons for child abuse history.

25 | 7.     Said policymaker(s) was also responsible at the County level for setting policy,
26 | rules, regulations and procedures as to hiring, training, supervising, retraining,
27 | discipline and termination of persons engaged in information management regarding
28 |

1 | persons to be investigated for child abuse, prior referrals of abuse, ability to adopt,
2 | become a foster parent, levels of risk, and impacting future referrals.

3 | 8.   Defendant County, DSS is a public entity existing under the laws of the State
4 | of California and is the employer of the individual defendants named above.

5 | 9.   Plaintiff is informed and believes and therefore alleges that Defendant
6 | Simmons is an employee of Defendant DSS, as a Supervising Social Worker with
7 | policy-making authority, and was at all material times mentioned herein a resident
8 | of the County of Santa Clara, State of California.

9 | 10.   Plaintiff is informed and believes and therefore alleges that Simmons is a
10 | Team Facilitator and provides training and procedures on legal authority of Child
11 | Abuse Cases as a Commissioner on the Santa Clara County Child Abuse Council
12 | since October 7, 2003, as well as provides training on Child Abuse and Neglect
13 | Programs.

14 | 11.   Plaintiff is informed and believes and therefore alleges that Acezes is an
15 | employee of Defendant DSS as a Data Office Specialist.

16 | 12.   Plaintiff is informed and believes and therefore alleges that Acezes has policy-
17 | making authority since March 3, 2003, writing policy and procedures on expedited
18 | Medi-Cal and Safety Surrendered Newborn Law implementation and procedures,
19 | and was at all material times mentioned herein a resident of the County of Santa
20 | Clara, State of California.

21 | 13.   The true names or capacities, whether individual, corporate, associate or
22 | otherwise, of Defendants named herein as DOES 1 through 20 are unknown to
23 | Plaintiff, who therefore sues said Defendants by said fictitious names. Plaintiff will
24 | amend this complaint to show said Defendants' true names, races, and capacities
25 | when the same have been ascertained. Plaintiff is informed and believes and thereon
26 | alleges that all defendants sued herein as DOES are in some manner responsible for
27 | the acts and injuries alleged herein.
28 |

3

Second Amended Verified Complaint

1    14.    Plaintiff is informed and believes and therefore alleges that at all times
2    mentioned herein each of the Defendants was the agent, servant and/or employee of
3    each of the remaining Defendants and were, in doing the acts herein alleged, acting
4    within the course and scope of this agency and/or employment and with the
5    permission, consent and authority of their co-defendants, and each of them, and each
6    is responsible in some manner for the occurrences hereinafter alleged; and that
7    Plaintiff's injuries were proximately caused by the actions of each.

8    15.    Plaintiff is informed and believes and therefore alleges that at all times herein
9    mentioned each Defendant aided, abetted, condoned, permitted, willfully ignored,
10    approved, authorized, and/or ratified the unlawful acts hereinafter described due to
11    Plaintiff's race and national origin.

12    16.    As a proximate result of Defendants' deprivation of federal and state civil
13    rights, Plaintiff has suffered, continues to suffer, and will suffer, general and special
14    damages and is entitled to exemplary and punitive damages and attorney fees.

15    17.    On May 15, 2015, Plaintiff's counsel filed a claim with the County of Santa
16    Clara and DSS for the injuries alleged herein. Exhibit 1, attached hereto and
17    incorporated herein by reference. On May 28, 2015, Defendants denied that claim.
18    Exhibit 2, attached hereto and incorporated herein by reference. Therefore, Plaintiff
19    has complied with all requirements of California Government Code §800 et seq.

20                   **FACTUAL ALLEGATIONS**

21    18.    Plaintiff is, and at all times relevant to this Petition is, residing in the County
22    of San Joaquin, is a 49 year-old United States Citizen who was born in India, is of
23    Indian descent, and has no criminal history.

24    19.    Plaintiff is informed and believes and therefore alleges that he has a history
25    of five Child Protective Services investigations. Plaintiff was previously informed
26    in 2010 that his name was listed in the Child Abuse Central Index ("CACI") by
27    Defendants; in reliance, Plaintiff initiated a grievance hearing and subsequent court
28

Second Amended Verified Complaint

1   actions at substantial expense over $200,000.00. Upon appeal with the State of

2   California, Court of Appeals, 6th Appellate District, Case No. H039167, the matter

3   was remanded back to the Superior Court to conduct another hearing on the Writ of

4   Mandate. The Writ of Mandate was denied by the Superior Court, was appealed by

5   Plaintiff, and is now pending in the 6th District Appellate Court, Case No. H043780.

6   20.   In a previous action before this Court, which is currently before the Ninth

7   Circuit Court of Appeals, Plaintiff sued Defendants based upon his 2009/2010 listing

8   in the Child Welfare Services/Case Management System ("CWS/CMS") without

9   sufficient due process.

10   21.   Plaintiff is informed and believes and therefore alleges that the previous action

11   before this Court concerned deprivation of Plaintiff's due process rights as the result

12   of referrals/investigations investigated by DSS, which were made by his ex-wife,

13   Komal Rattan ('Mother'). The first allegation was made in Alameda County in

14   August 2008 for allegations of abuse of his two daughters, "K" and "S", determined

15   to be unfounded. The second referral/investigation was also made by Mother in

16   Alameda County, July 2009 for abuse of "K" and "S" again, and was also determined

17   to be unfounded. The third referral/investigation was in Santa Clara County, by

18   Mother in November 2009 for abuse of "K" and "S". DSS employee Chancellor

19   closed that referral/investigation on or about November 23, 2009 without ever

20   interviewing Prasad or collateral contacts, mandated by Title 11 CCR § 901, et seq.,

21   aka California Administrative Code § 901(a); violation of California Penal Code §

22   11169(a); violation of California Department of Social Services ("DSS") Manual of

23   Policies and Procedures ("MPP") MPP, §§31-115, 31-105.111-117, 31-115, 31-125.

24   22.   Chancellor then opened a new referral on December 30, 2009 in Santa Clara

25   County with the same November 23, 2009 allegations, at the request of mother.

26   Those referrals were closed by Chancellor in February 2010 at mother's request,

27   conclusive for sex abuse and emotional abuse of "K" and "S". The fifth

28

1  referral/investigation was opened in Contra Costa County, at the request of
2  Chancellor in 2010 based on instructions from the mother. The disposition of the
3  Contra Costa Referral and the allegations of the fifth referral is unknown, as Plaintiff
4  has never received the CWS/CMS database case information from Defendants. Prior
5  to the referrals in 2009-2010 by Defendants, Plaintiff had no prior reports to
6  CWS/CMS and/or CACI.

7  23.  Plaintiff is informed and believes that Mother made allegations of physical
8  and sexual abuse by Plaintiff to obtain sole physical and legal custody of the children
9  in contested Family Law proceedings that were occurring prior to the 2009 referrals.
10  24.  Plaintiff is informed and believes that the 2009 allegations were not properly
11  investigated by social workers employed by County and DSS.

12  25.  Although never told he was being investigated for sexual abuse, or that his
13  personal information would be contained in statewide databases, Plaintiff cooperated
14  fully; and it was eventually determined that no criminal charges or juvenile
15  dependency court petitions of any kind were warranted. No CPS investigations are
16  currently open. Plaintiff was never arrested, charged, or convicted of a crime.

17  26.  Plaintiff is informed and believes and therefore alleges that the minors never
18  disclosed to County or DSS any physical and/or sexual abuse by Plaintiff, and that
19  no physical evidence of physical and/or sexual abuse exists.

20  27.  During the time of the events in question, Plaintiff had not lived with the
21  children, or had access to the children, since July 2009, which was four months
22  before the sexual abuse referral was initiated and immediately after the second child
23  abuse referral was closed as unfounded, nor has he had access to his children since
24  that date because of his alleged inclusion in the CWS/CMS databases, and
25  approximately 500 sub-databases.

26  28.  On or about February 2010, Plaintiff received a notice from County informing
27  him that his name was included in CACI, which is maintained by DOJ. The notice
28

6

1  stated, in pertinent part: "Santa Clara County Department of Social Services, has
2  completed an investigation of suspected child abuse that we determined to be either
3  substantiated or inconclusive. Pursuant to Penal Code 11169(b), this is notification
4  that you are named in a child abuse report that was sent to the DOJ, Child Abuse
5  Central Index (Index)." The letter went on to note that, in this case, the complaint
6  was determined to be "substantiated" and/or "conclusive" for sex abuse.  Plaintiff
7  was also notified that the social worker was closing the referral without any necessity
8  for further involvement from DSS.  Since that time it has been determined that this
9  allegation and others made involving Plaintiff's children were false, and made as the
10 result of an ongoing, contested custody proceedings involving Plaintiff's ex-wife.

11 29.    Plaintiff's counsel requested information related to all referrals from the
12 County of Santa Clara and filed with the Santa Clara County Juvenile Dependency
13 Court a Welfare and Institutions Code §827 petition for disclosure. An initial Court
14 order for disclosure was received on November 2, 2010. A subsequent Order for
15 Disclosure was received on March 18, 2011.  Both Orders authorized disclosure of
16 records by the Defendants.   Plaintiff's Counsel also requested at that time all
17 documents in the County's files including computer files and records.

18 30.    Eventually two grievance hearings were held for the 2009 inclusion into CACI
19 only, in July and August 2010, and from which a recommendation was made that
20 the allegation remain substantiated. Plaintiff's Counsel then filed a Writ of Mandate
21 in the Superior Court of California, County of Santa Clara, Case No. 1-11-CV-
22 203380.  The Superior Court refused to accept the administrative record of that
23 action; and the Court denied that Writ of Mandate.  Upon appeal with the State of
24 California, Court of Appeals, 6th Appellate District, Case No. H039167, the matter
25 was remanded back to the Superior Court to conduct another hearing on the Writ of
26 Mandate.  The Writ of Mandate was denied by the Superior Court, was appealed by
27 Plaintiff, and is now pending in the 6th District Appellate Court, Case H043780.

28

7

1  31.    Plaintiff has spent over $200,000.00 dollars since 2010 to clear his name from
2  the CACI database that Defendants, in 2010, told him he was in.

3  32.    Plaintiff eventually learned the allegations of abuse from 2010 were not
4  actually listed in CACI, as originally told by the Defendants in 2010, requiring that
5  he defend against that action at great personal expense and severe emotional distress
6  for being accused of sex abuse by Defendants.

7  33.    On April 7, 2015, during a contested family law matter involving Plaintiff,
8  his ex-wife, and their two children, Plaintiff learned from his Family Law attorney
9  for the first time that Plaintiff was actually not in the CACI database all along.

10  34.    Plaintiff is informed and believes and therefore alleges that in April 2015
11  Defendants then listed Plaintiff in CACI, including the 2009 allegations and new
12  allegations that have never been investigated by defendants.

13  35.    In April 2015, Plaintiff received a Notice of Child Abuse Central Index
14  Listing, which stated in pertinent part: "Santa Clara Child Welfare Services agency
15  has completed an investigation of alleged child abuse or severe neglect and
16  determined that the allegations of abuse or severe neglect are substantiated. Pursuant
17  to Penal Code 11169(b), this is notice that the finding of substantiated abuse or
18  severe neglect was sent to the California Department of Justice (DOJ) for inclusion
19  in the Child Abuse Central Index." The letter went on to note that the allegation was
20  determined to be "substantiated" for "sexual abuse, assault, exploitation". Acezes
21  was the agency contact responsible for the submission of the report that placed
22  Plaintiff in CACI. Simmons submitted the Child Abuse or Severe or Severe Neglect
23  Indexing Form (BCIA 8583) on April 7, 2015 to the Department of Justice ("DOJ")
24  indicating that this was an Initial Report. Simmons' name is on the DOJ – CARP
25  printout obtained by Plaintiff as "Investigator".

26  36.    Plaintiff is informed and believes and therefore alleges that Simmons and
27  Acezes did not investigate any allegations against Plaintiff in 2015 as mandated, and
28

8

1  in violation of Title 11 CCR § 901, et seq.; violation of Penal Code § 11169(a); and

2  violation of MPP, §§31-115, 31-105.111-117, 31-115, 31-125, by never

3  interviewing Plaintiff or any collateral contacts including the children.

4  37.  Neither Simmons nor Acezes ever saw or spoke to Plaintiff prior to including

5  him in CWS/CMS, CACI, the 500 plus sub-databases, and/or his submission to the

6  DOJ for allegations of abuse occurring in 2015.

7  38.  Plaintiff, through counsel, sent a request to Acezes and Simmons requesting a

8  grievance hearing on April 15, 2015 to review this "substantiated" report and the

9  underlying listing in CACI, and to receive all documents pursuant to the review

10  process mentioned in the notice, pursuant to the due process requirements provided

11  pursuant to *Burt v. County of Orange* (2004) 120 Cal.App.4th 473.

12  39.  On July 21, 2015, the request for a hearing was denied.

13  40.  On May 19, 2015, Plaintiff sent a CACI Self Inquiry Request to DOJ. On May

14  28, 2015, Plaintiff received a response from DOJ confirming his inclusion in the

15  CACI database on April 7, 2015, in violation of Title 11 CCR § 901, et seq.; violation

16  of Penal Code § 11169(a); and violation of MPP, §§31-115, 31-105.111-117, 31-

17  115, 31-125.

18  41.  Defendants notified Plaintiff in April 2015 that a new, uninvestigated false

19  report was placed in the computerized CACI and CWS/CMS systems, and sent to

20  DOJ. That system also feeds information directly into more than 500 other statewide

21  databases, including, but not limited to, Strategic Decision Making, and/or Risk

22  Assessment Matrix system records, licensing, welfare, probation, etc. All of these

23  sub-databases are also in the direct control of Defendants.

24  42.  Despite his written request, Defendants failed to provide Plaintiff an

25  opportunity to offer live testimony, call witnesses or examine those witnesses whose

26  statements were considered by Defendants when they placed his personal

27  information, immigration status, ethnicity, and that of his family and/or employers,

28

9

1  in April 2015, in CACI and CWS/CMS statewide computer systems and the more
2  than 500 databases that directly receive information from the CWS/CMS system,
3  which is then disseminated to public and private entries, without a court order.

4  43.  Plaintiff is gainfully employed in Information Technology, which requires him
5  to obtain high level government clearances and professional insurance and to be
6  bonded.

7  44.  Plaintiff is informed and believes and therefore alleges that being listed in the
8  CACI and CWS/CMS system prevents Plaintiff from passing government
9  clearances, obtaining professional insurance, and getting bonded.  Defendants had
10  previously informed Plaintiff for the first time in August 2013 that he was listed in
11  CWS/CMS.  Being in CWS/CMS will prevent Plaintiff from being bonded, getting
12  high level jobs and/or working for the government, adoption, licensing, guardianship
13  of children, and working with children or at schools where children are available.
14  He also learned that multiple referrals raise his Risk Level for substantiated abuse.

15  45.  Plaintiff is also seeking a Determination of Factual Innocence so that he may
16  get custody of his children; get bonded; get high level jobs and/or get clearance so
17  he can work for the government; adoption; state licensing for foster care;
18  guardianship of children; and working on IT Systems at schools where children are
19  present.  The Family Law Court will not allow Plaintiff to get his daughters back
20  without a Determination of Factual Innocence from the 2015 information contained
21  in CACI and CWS/CMS.

22  46.   Defendants also informed Plaintiff that he cannot get a Determination of
23  Factual Innocence about CWS/CMS inclusion because in April 2015 there is still no
24  statute, ordinance, or case law requiring a hearing for inclusion in CWS/CMS, new
25  allegations to DOJ of CACI, and/or sub-databases.

26  47.   Plaintiff was told by Defendants that CACI's purpose is to alert identified
27  licensing and similar agencies of possible matches of applicants about whom abuse

28

10

Second Amended Verified Complaint

1  investigations were performed where investigative dispositions of inconclusive or

2  conclusive only were made, until January 1, 2012. Then, only investigations with

3  "substantiated" findings were to be reported to the DOJ; unfounded and inconclusive

4  referrals are not reported to CACI and all inconclusive referrals were purged from

5  CACI on January 1, 2012 as a result of prior legal action.

6  48.    Plaintiff is informed and believes and therefore alleges that the DOJ is only

7  the repository of the CACI information. The information contained in CWS/CMS,

8  CACI, and the 500 plus sub-databases is now limited to substantiated referrals of

9  abuse, and all information contained in CACI is provided by social worker

10  employees of California's 58 individual counties at the conclusion of a child abuse

11  investigation.

12  49.    Plaintiff is informed and believes and therefore alleges that CACI's purpose

13  is to serve as an index of names of suspected child abusers. The information in

14  CACI is available to aid law enforcement investigations and prosecutions, and to

15  provide notification of new child abuse investigation reports involving prior reports

16  to CACI of the same suspects and/or victims. Information also is provided to

17  designated social welfare agencies to help screen applicants for licensing or

18  employment in child care facilities and foster homes, and to aid in background

19  checks for other possible child placements and adoptions. Dissemination of CACI

20  information is controlled by the Penal Code. Information on file in CACI includes:

21  names and personal descriptors of the suspects and victims listed on reports;

22  reporting agency that investigated the incident; the name and/or number assigned to

23  the case by the investigating agency; type(s) of abuse investigated; and the findings

24  of the investigation for the incident which are substantiated only. Subsequent

25  referrals that are unfounded or inconclusive are not reported to DOJ or placed in the

26  CACI system, but are always retained in the CWS/CMS system and over 500

27  statewide databases.

28

50.    Prior to the 2009/2010 referrals by DSS, Plaintiff did not have a prior referral that was substantiated or inconclusive, and was never previously reported to CACI.

51.    Plaintiff is informed and believes and therefore alleges that CACI is a single computerized database.

52.    Plaintiff is informed and believes and therefore alleges that the State is only the repository of the CWS/CMS information. The information contained in CWS/CMS is very broad, includes all referrals, and includes all unfounded, inconclusive, and substantiated dispositions.    All information contained in CWS/CMS is provided by social worker employees of California's 58 individual counties while the investigation is ongoing, updated at the conclusion of each child abuse investigation, and accessed for each new referral. The CWS/CMS information then generates an entry on CACI, which is then forwarded to DOJ.

53.    Plaintiff is informed and believes and therefore alleges that the information in CACI is used by outside colleges, universities, government agencies, and private database companies.

54.    Plaintiff is informed and believes and therefore alleges that in April 2015 all of his personal information and that of his family and friends was placed in the CWS/CMS database and the 500 plus databases utilized by Defendants; that the information was placed in those systems by Defendants without Plaintiff's prior knowledge or consent; that the information in those systems is wrong; and that the information in those systems was used against him resulting in a higher risk level that indicates abuse by Plaintiff, without foundation, and in violation of State and Federal Law.

55.    Plaintiff is informed and believes and therefore alleges that the April 2015 information in those systems is preventing him from working with children and getting government clearances required to allow him to work in his chosen profession; and that the information in those systems was given to the family law

12

1  courts either deliberately or with complete indifference to Plaintiff's rights to
2  privacy, preventing Plaintiff from seeing or having access to his children.

3  56.    Plaintiff is informed and believes that he has been denied the ability to get a
4  Determination of Factual Innocence, or review or delete the April 2015 fraudulent
5  and incorrect information in these databases, as he does not know what information
6  is in these databases, what he has been accused of in these databases, or the basis for
7  any determination, as Defendants maintain there is no appeal or review of these
8  databases available, and that Defendants claim they are not required by law to give
9  a due process hearing, so they refuse to tell him about the databases or the contents
10 of the databases.

11 57.    Plaintiff is informed and believes and therefore alleges that the Defendants
12 assert that there is no ability to review or correct the April 2015 incorrect information
13 because there is no appeal mechanism or a right to a hearing for removal from CACI
14 for this referral information, or CWS/CMS, and/or the more than 500 databases.
15 Further, he was never informed how that information is used in subsequent referrals,
16 application for licensure, application to adopt or obtain guardianship of a child,
17 government clearances for his work, or his ability to work with children.

18 58.    Plaintiff is under immense emotional distress in that Defendants' abuse of
19 discretion and reporting as described above has affected his fundamental vested
20 rights and will interfere with his career, his ability to get high level clearances, his
21 ability to obtain placement of his children or placement of another child, his ability
22 to obtain guardianship of a child, and his ability to adopt a child.

23 59.    Defendants' refusal to provide Plaintiff an opportunity to review, correct,
24 and/or remove the April 2015 fraudulent and incorrect information as the basis for
25 the conclusive report from CACI, CWS/CMS, or the more than 500 database
26 systems, is improper and is contrary to law.

27
28

Second Amended Verified Complaint

60.     Defendants have proceeded in a manner contrary to law and have abused their discretion, which has resulted in damage to Plaintiff and has prejudiced his rights under the state and federal laws and constitutions.  Further, it has violated Plaintiff's constitutional rights to due process of law, and his right to privacy.

61.     Plaintiff has no plain, speedy and adequate remedy at law other than the relief sought in this Petition, in that Plaintiff has no other means to compel Defendants to comply with the law; to act in a manner that does not constitute an abuse of discretion; to make a Determination of Factual Innocence based on the April 2015 contents of CACI and CWS/CMS and its 500+ databases; and to comport with the requirement that he be accorded due process of law, and thus Plaintiff seeks injunctive relief as well as damages in this action.

62.     Defendants, and each of them, knew or should have known that their April 2015 failure to exercise due care by failing to conduct any investigation for inclusion in CACI and CWS/CMS as substantiated for "sexual abuse, assault, exploitation", in violation of Title 11 CCR § 901, et seq.; Penal Code § 11169(a); and MPP regulations, would cause Plaintiff severe emotional distress. The injury to Plaintiff was foreseeable.

63.     Therefore, the acts of Defendants, each of them, herein alleged also constituted gross negligence and carelessness under state and federal law by not conducting any investigation in violation of Title 11 CCR § 901, et seq.; Penal Code § 11169(a); due process notice and hearing requirements, and MPP.

64.     The acts of the individual defendants in placing Plaintiff in these databases without any investigation, and in violation of the law, were all intentional and malicious and done for the purpose of causing Plaintiff to suffer severe humiliation, intimidation, mental anguish, and emotional and physical distress.

65.     Defendants' April 2015 conduct in confirming and ratifying those acts was done with knowledge that Plaintiff's emotional and physical distress would thereby

14

1   increase, and were done with a wanton and reckless disregard of the consequences
2   to Plaintiff.

3   66.   Public entity Defendant County of Santa Clara is also liable under the doctrine
4   of Respondeat Superior for state law claims.

5   67.   Plaintiff has exhausted all administrative remedies provided by Defendants to
6   a person in Plaintiff's position, i.e., a person who has been the subject of a child
7   abuse investigation, whose disposition is substantiated and who without any
8   knowledge is listed in CACI, because he was denied a hearing, and listed in
9   CWS/CMS, Strategic Decision Making, and/or Risk Assessment Matrix records
10  system or over 500+ sub-databases, because no appeal of inclusion in these
11  databases exist per the defendants.

12  68.   Defendants' policies and procedures regarding review of CACI listings,
13  CWS/CMS referrals, Strategic Decision Making, 500 statewide databases, and/or
14  Risk Assessment Matrix records system are non-existent, and deficient to the extent
15  they are non-existent, and were applied to Plaintiff in a deficient manner, thereby
16  violating his due process rights. *Humphries v. County of Los Angeles* (9th Cir.2009)
17  554 F.3d 1170, 1177–1178, revd. on other grounds sub nom. *Los Angeles County v.*
18  *Humphries* (2010) 562 U.S. ——, [130 S.Ct. 1501]. *Humphries* held CANRA was
19  unconstitutional because it provided no means by which the decision to include an
20  individual's name in the CACI listing could be reviewed and the name removed in
21  appropriate circumstance. (*Id.* at pp. 1179–1180, 1200–1201.) Further, *Humphries*
22  held that notice and "some kind of hearing" must be provided. (*Humphries*, supra,
23  554 F.3d at p. 1201.) Here, Defendants denied any hearing for the 2015 inclusion in
24  CWS/CMS, CACI, or any of the 500 plus databases.

25                    **FIRST CAUSE OF ACTION**
26            42 U.S.C. § 1983 Constitutional Violations-
27        Unlawful Policies, Customs and Habits By Plaintiff
                        Against County
28
                           15

69.   Plaintiff realleges Paragraphs 1 through 68 as though set forth herein verbatim, and by this reference incorporates the same herein and make each a part hereof.

70.   As a result of the acts alleged above, particularly the County and its DSS' failure to offer any due process mechanism, and its woefully inadequate policies and procedures for review of substantiated allegations of child abuse in CACI, CWS/CMS, or the 500 plus databases, Plaintiff suffered a violation of his right not to be deprived of life, liberty or property without due process of law as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution. Further, Plaintiff suffered an unconstitutional violation of his right to privacy. The April 2015 inclusion in CACI, CMS/CWS, and the 500 plus databases, without knowing what is in those databases, has impacted Plaintiff's licensure; and restricted Plaintiff's right and ability to get a Determination of Factual Innocence, to fully pursue his profession and earn a living, to obtain placement of his children, to obtain other children, to obtain guardianship of a child, and to adopt a child, further violating his right to due process of law by denying any hearing. As a result, Plaintiff is entitled to the injunctive relief requested herein and damages pursuant to Title 42 U.S.C. § 1983, et seq., in an amount to be proven at trial.

71.   Defendant DSS has woefully inadequate and unlawful policies, customs and habits of improper and inadequate investigation of child abuse allegations, and woefully inadequate due process review and hearing procedures regarding reports which are challenged. Further, DSS has a policy, custom or habit of failing to provide any hearing, failing to modify CACI when they have fraudulent information, or delete erroneous information from CWS/CMS and the 500 plus statewide databases. These unlawful customs, policies and habits proximately caused the injuries and constitutional violations described above. Accordingly, Plaintiff is entitled to the

Second Amended Verified Complaint

1  injunctive relief requested herein and damages pursuant to Title 42 U.S.C. § 1983,
2  et seq., in an amount to be proven at trial.

3  72.    As a direct and proximate result of the acts alleged above, Plaintiff was injured
4  in mind and body. Plaintiff has been restricted in his right and ability to pursue his
5  profession; has suffered a severe invasion of his privacy; carries a stigma for acts
6  that he never perpetrated nor was ever criminally charged or convicted for; and has
7  suffered severe emotional distress. Plaintiff has also incurred significant expenses,
8  including attorney's fees. Plaintiff is therefore entitled to the injunctive relief
9  requested herein and to general and compensatory damages, and attorney fees, 42
10  U.S.C. § 1988(b), in an amount to be proven at trial.

11  73.    The aforementioned conduct of Defendants, and each of them, was willful and
12  was intended to cause pain, suffering and humiliation to Plaintiff, and in fact
13  subjected Plaintiff to cruel and unjust hardship of pain, humiliation, and
14  intimidation.

15                    **SECOND CAUSE OF ACTION**

16              42 U.S.C. § 1983 Constitutional Violations By Plaintiff
17                   Against Simmons, Acezes and DOES 5-10

18  74.    Plaintiff realleges Paragraphs 1 through 68 and 70 through 73 as though set
19  forth herein verbatim, and by this reference incorporates the same herein and makes
20  each a part hereof.

21  75.    The elements of a § 1983 claim are (1) the action occurred under color of state
22  law and (2) the action resulted in the deprivation of a constitutional right or federal
23  statutory right. *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir.2006) (citing
24  *West v. Atkins*, 487 U.S. 42, 48 (1988)). A person acts "under color of state law"
25  when the person acts or purports to act in the performance of official duties under
26  any state, county, or municipal law, ordinance or regulation. In order to be
27
28
                                    17

1  individually liable under § 1983, an individual must personally participate in an

2  alleged rights deprivation. *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir.2010).

3  76. Commencing on or about April 2015, Defendants Simmons, Acezes, and Does

4  5-10, and each of them, as alleged herein, were acting under color of state law when

5  they knew and agreed to report plaintiff in these databases in 2015, without notice

6  or an opportunity to object to the inclusion.

7  77. Acezes was the agency contact responsible for the submission of the report that

8  placed Plaintiff in CACI. Acezes is an employee of Defendant DSS as a Data Office

9  Specialist. Plaintiff is informed and believes and therefore alleges that Acezes has

10  policy-making authority since March 3, 2003, writing policy and procedures on

11  expedited Medi-Cal and Safety Surrendered Newborn Law implementation and

12  procedures.

13  78. Simmons submitted the Child Abuse or Severe or Severe Neglect Indexing

14  Form (BCIA 8583) on April 7, 2015 to the DOJ indicating that this was an Initial

15  Report. Simmons' name is on the DOJ – CARP printout obtained by Plaintiff as

16  "Investigator". Plaintiff is informed and believes and therefore alleges that Simmons

17  is a Team Facilitator, provides training and procedures on legal authority of Child

18  Abuse Cases as a Commissioner on the Santa Clara County Child Abuse Council

19  since October 7, 2003, and provides training on Child Abuse and Neglect Programs.

20  79. Plaintiff is informed and believes and therefore alleges that neither Simmons

21  nor Acezes investigated any allegations against Plaintiff in 2015 as mandated, and

22  in violation of Title 11 CCR § 901, et seq.; violation of Penal Code § 11169(a); and

23  violation of MPP, §§31-115, 31-105.111-117, 31-115, 31-125, by never

24  interviewing Plaintiff or any collateral contacts including the children.

25  80. As a result of the conduct of said Defendants Simmons, Acezes, and Does 5-

26  10, and each of them, Plaintiff's personal and civil rights were violated, including

27  the right of protection from personal insult and violation, from defamation and from

28

18

1   injury to personal relations, in the exercise and enjoyment of Plaintiff's rights
2   secured by the United States Constitution, other Federal laws, and the Constitution
3   and laws of the State of California (conduct not immunized by California's
4   Government Code § 820.21 and federal law).

5   81.   Defendants Simmons, Acezes, and Does 5 through 10, and each of them,
6   agreed to interfere with and violate the civil rights of Plaintiff, as set forth under 42
7   U.S.C. § 1983, including violation of Plaintiff's rights found in the 4th and 14th
8   Amendments of the United States Constitution, by, but not limited to, using false
9   information, and failing to provide any investigation, in violation of, and interference
10  to, the Plaintiff's constitutional liberty interests.

11  82.   Defendants Simmons, Acezes, and Does 5 through 10 did agree to violate due
12  process rights of the Plaintiff under the 14th Amendment in order to harm Plaintiff
13  by, including but not limited to, making false and misleading statements, and falsely
14  reporting to the CWS/CMS, CACI and 500+ other statewide databases that Prasad
15  had abused his children in 2015. Said report caused Prasad to be listed in the
16  databases, to his detriment. Thereinafter, Defendants Simmons, Acezes, and Does 5
17  through 10 refused to remove his name, or request that his name be removed, after
18  his demand.

19  83.   As a direct result of these Defendants' violations, and in accordance with 42
20  U.S.C. §1983, Plaintiff's civil rights have been violated in that he has suffered, and
21  will continue to suffer, damages, including, but not limited to, physical and/or mental
22  anxiety and anguish; as well as continue to incur attorney's fees, costs and expenses
23  in the underlying case as authorized by 42 U.S.C. §1988 in an amount not yet
24  ascertained, all of which shall be shown according to proof at trial.

25  84.   Defendants Simmons, Acezes, and Does 5 through 10's wrongful conduct as
26  herein alleged was intentional, and done with conscious disregard for the rights of
27  the Plaintiff herein, and as a result of their intentional and despicable conduct,
28

19

1  Plaintiff is therefore entitled to recover punitive damages from said individual
2  Defendants' wrongful acts for the purposes of punishing said Defendants and to
3  deter others from such conduct in the future.

4  85.    As a direct and proximate result of the foregoing, Plaintiff has been damaged
5  as recited above and demands and is entitled to the damages recited in the First Cause
6  of Action, including, but not limited to, general and punitive damages, against the
7  individual defendants only.

8                              **THIRD CAUSE OF ACTION**

9                    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

10                        By Plaintiff Against All Defendants

11  86.    Plaintiff realleges Paragraphs 1 through 68, 70 through 73, and 75 through 85
12  as though set forth herein verbatim, and by this reference incorporates the same
13  herein and makes each a part hereof.

14  87.    On or about April 7, 2015 and thereafter, Plaintiff was entitled to the duty of
15  due care by Defendants, and each of them, including, but not limited to, the duty to
16  conduct an investigation in compliance with Title 11 CCR § 901 et seq.; Penal Code
17  § 11169(a); due process notice and hearing, and MPP. Prior to placing Plaintiff's
18  personal information into CACI and CWS/CMS computer databases without notice
19  or opportunity to be heard, Defendants were required to advise Plaintiff that his
20  information was put in all statewide databases; provide Plaintiff the information in
21  those databases; and provide Plaintiff opportunity to contest the April 2015 inclusion
22  and information in all databases.  Defendants have refused.

23  88.    On or about April 7, 2015 and thereafter, Plaintiff was entitled to the duty of
24  due care by Defendants, and each of them, to not falsely report "substantiated" for
25  "sexual abuse, assault, exploitation" dispositions to the CWS/CMS system or the
26  500 plus databases statewide; to not falsely report "substantiated" for "sexual abuse,
27  assault, exploitation" to CACI; and to accurately input, delete, and disseminate child

28

                                         20

1 │ abuse allegations and disposition information into the computer database or other
2 │ information retention and retrieval systems accessible to members of all 58 counties
3 │ in the State of California, law enforcement, and court personnel involved in
4 │ identifying persons for child abuse history in compliance with Title 11 CCR § 901
5 │ et seq.; Penal Code § 11169(a); and MPP.

6 │ 89.    On or about April 2015 and thereafter, Defendants, and each of them,
7 │ unlawfully caused Plaintiff to be placed in those databases as "substantiated" for
8 │ "sexual abuse, assault, exploitation", subjected Plaintiff to false accusations of sex
9 │ abuse and pending criminal matters, and conspired among themselves to cover up
10 │ their lawlessness and corruption in 2015 without any investigation in violation of
11 │ Title 11 CCR § 901 et seq., Penal Code § 11169(a), and MPP.

12 │ 90.    Defendants are liable for Plaintiff's injuries, due to their fraudulent,
13 │ duplicitous, and deceitful acts. In doing the aforementioned, Defendants' conduct
14 │ was intentional, outrageous, malicious, and done for the purpose of or with reckless
15 │ disregard for the consequences of their misconduct, causing Plaintiff to suffer
16 │ emotional suffering and mental distress, physical pain, the indignity of being labeled
17 │ in 2015 "substantiated" for "sexual abuse, assault, exploitation" abuser, fear,
18 │ anxiety, and extreme mental anguish.

19 │ 91.    Defendants' intentional specific fraudulent and deceitful acts to damage the
20 │ name and reputation of Plaintiff in 2015 clearly violated his Civil Rights. Defendants
21 │ knew the false information they put into CACI in 2015 would impact Plaintiff in
22 │ adoption, family law matters, employment, job promotions, and government
23 │ clearances. Defendants intentionally refused to investigate the charge in violation
24 │ of Title 11 CCR § 901 et seq.; *Penal Code* § 11169(a); and MPP; and/or to give
25 │ Plaintiff a hearing to get out of the system, in direct violation of the federal and state
26 │ law. Further, information in that system directly feeds 500+ databases including the
27 │
28 │

21

1 | Risk Assessment Matrix databases, in which inclusion automatically results in
2 | higher risk levels for future referrals.

3 | 92.    As a direct and proximate result of the foregoing, Plaintiff has suffered, and
4 | continues to suffer, mental and emotional distress and is entitled to and demands
5 | damages against Defendants jointly and severally, as recited in the First Cause of
6 | Action, including, but not limited to, general and punitive damages (except as to
7 | Defendant DSS).

8 | **REQUEST FOR INJUNCTIVE RELIEF**

9 | [42 U.S.C. § 1983, et seq. and California Law]

10 | 93.    Pursuant to the provisions of the federal law and 42 U.S.C. section 1983 et
11 | seq., as well as California law, and in light of the constitutional violations and
12 | customs, policies and practices of the County of Santa Clara as alleged above,
13 | Plaintiff respectfully requests that the Court issue a permanent injunction requiring
14 | that the County of Santa Clara, through its Department of Social Services, (1) issue
15 | a Determination of Factual Innocence for Plaintiff, or provide Plaintiff all
16 | information contained in CACI, CWS/CMS, and 500+ databases related to the April
17 | 2015 inclusion in the CACI and CWS/CMS databases; then conduct a full
18 | evidentiary hearing for Determination of Factual Innocence; (2) as Defendants'
19 | policies, practices, and customs violate the Fifth Amendment of the United States
20 | Constitution, issue an injunction requiring Defendants (a) to remedy such violations,
21 | including removal of Plaintiff's name from the April 2015 inclusion in the CACI
22 | and CWS/CMS databases that prevent him from obtaining guardianship, adoption,
23 | government clearances etc.; and (b) to provide Plaintiff with the a due process
24 | hearing and opportunity to contest his April 2015 inclusion in CACI and CWS/CMS
25 | and all 500+ databases.   Plaintiff seeks this or other equitable relief deemed
26 | appropriate by the Court according to proof made at the time of trial in this case.

27 |
28 |

22

Second Amended Verified Complaint

## ATTORNEY FEES AND COSTS

94. Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1. For a permanent injunction as described in paragraph 93 above and/or other equitable relief according to proof at trial;

2. For general and compensatory damages according to proof at trial;

3. For exemplary damages according to proof at trial (except as to Defendant County);

4. For costs of suit herein, including reasonable attorney fees, and

5. For such other and further relief as the Court deems proper and just.

*DIANE B. WEISSBURG*

Dated: November 9, 2016

DIANE B. WEISSBURG
Attorney for Plaintiff,
Abhijit Prasad

Plaintiff hereby demands a jury trial in this action as to those claims for which a jury trial is appropriate.

*DIANE B. WEISSBURG*

Dated: November 9, 2016

DIANE B. WEISSBURG
Attorney for Plaintiff,
Abhijit Prasad

23

**VERIFICATION**

STATE OF CALIFORNIA, COUNTY OF _____San Joaquin_____

I have read the foregoing _____Second Amended Complaint_____ and know its contents.

[X] I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

[ ] I am [ ] an officer [ ] a partner [ ] a _____ of _____, a party to this action, and I am authorized to make this verification for and on its behalf. [ ] I am informed and believe, and on that ground allege, that the matters stated in the foregoing document are true. [ ] The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

[ ] I am one of the attorneys for _____, a party to this action. Such party is absent from the aforesaid county where such attorneys have their offices, and I make this verification for and on behalf of such party for that reason. I am informed and believe, and on that ground allege, that the matters stated in the foregoing document are true.

Executed on _____November 8, 2016_____ at _____Tracy_____, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

# EXHIBIT 2

1  JAMES R. WILLIAMS, County Counsel (S.B. #271253)
   STEPHEN H. SCHMID, Deputy County Counsel (S.B. #078055)
2  OFFICE OF THE COUNTY COUNSEL
   70 West Hedding Street, East Wing, Ninth Floor
3  San Jose, California 95110-1770
   Telephone: (408) 299-5900
4  Facsimile: (408) 292-7240

5  Attorneys for Defendants
   COUNTY OF SANTA CLARA (erroneously sued
6  as Santa Clara County Department of Social
   Services), GALE SIMMONS (erroneously sued as
7  Gail Simmons), and GUADALUPE ACEVES
   (erroneously sued as Guadalupe Acezes)

8

9                  UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                          (San Jose)

11
   ABHIJIT PRASAD,                          No. 15-CV-4933 BLF
12
              Plaintiff,                    **DEFENDANTS COUNTY OF SANTA**
13                                          **CLARA, GALE SIMMONS, AND**
   v.                                       **GUADALUPE ACEVES' ANSWER TO**
14                                          **SECOND AMENDED COMPLAINT**
   SANTA CLARA COUNTY DEPARTMENT OF
15 SOCIAL SERVICES, GAIL SIMMONS,
   GUADALUPE ACEZES, and DOES 1-20,
16
              Defendants.
17

18         Defendants County of Santa Clara, Gale Simmons, and Guadalupe Aceves ("Defendants")

19 answer the Second Amended Complaint for Damages ("SAC") and allege as follows:

20         1.      Defendants admit each of the allegations contained in paragraphs 1 and 2 of the SAC.

21         2.      Defendants lack sufficient knowledge or information to form a belief as to the truth of

22 the allegations contained in paragraph 3, 4, 5, 6, and 7 of the SAC, and on that basis deny each and

23 every allegation contained in those paragraphs.

24         3.      Defendants deny the allegations contained in paragraph 8 of the SAC but admit that

25 the County of Santa Clara, a public entity existing under the laws of the state of California, was Gale

26 Simmons' and Guadalupe Aceves' employer during certain time periods and further admit that the

27 Santa Clara County Department of Social Services is a department of the County of Santa Clara.

28 //

                                              1

1    4.    Defendants deny the allegations of paragraph 9 of the SAC but admit that in 2015

2  Gale Simmons was a resident of Santa Clara County and an employee of the County of Santa Clara

3  working within the Santa Clara County Department of Social Services.

4    5.    Defendants deny the allegations of paragraph 10 of the SAC but admit that in the past

5  Gale Simmons has served as a Commissioner on the Santa Clara County Child Abuse Council and

6  has participated in training programs.

7    6.    Defendants deny the allegations of paragraph 11 of the SAC but admit that in 2015

8  Guadalupe Aceves was employed by the County of Santa Clara as a Data Office Specialist working

9  within the County Department of Social Services.

10   7.    Defendants deny the allegations of paragraph 12 of the SAC but admit that

11  Guadalupe Aceves was at all material times mentioned in the SAC a resident of the County of Santa

12  Clara, California.

13   8.    Defendants lack sufficient knowledge or information to form a belief as to the truth of

14  the allegations contained in paragraph 13 of the SAC, and on that basis deny each and every

15  allegation contained in that paragraph.

16   9.    Defendants deny the allegations of paragraphs 14, 15, and 16 of the SAC.

17   10.   Defendants deny the allegations of paragraph 17 of the SAC but admit that a claim

18  was presented to the County of Santa Clara on behalf of Plaintiff on May 15, 2015 and further admit

19  that the County of Santa Clara mailed Plaintiff's attorney a notice of return without action and of

20  rejection of claim on May 28, 2015.

21   11.   Defendants lack sufficient knowledge or information to form a belief as to the truth of

22  the allegations contained in paragraph 18 of the SAC, and on that basis deny each and every

23  allegation contained in that paragraph.

24   12.   Defendants lack sufficient knowledge or information to form a belief as to the truth of

25  the allegations contained in paragraph 19 of the SAC, and on that basis denies the allegations

26  contained in that paragraph; but Defendants admit that Plaintiff has been the subject of multiple CPS

27  investigations conducted by various other counties, was notified in 2010 of inclusion of his name in

28  CACI, and that Plaintiff instigated state court litigation after receiving an adverse administrative

2

1   determination.

2       13.     Defendants deny the allegations contained in paragraphs 20, 21, and 22 of the SAC

3   but admit that Plaintiff filed a prior lawsuit in this Court, which is now pending in the Ninth Circuit.

4   Defendants further admit that the specific allegations included in Plaintiff's pleadings filed in the

5   prior lawsuit are self-evident.

6       14.     Defendants lack sufficient knowledge or information to form a belief as to the truth of

7   the allegations contained in paragraph 23 of the SAC, and on that basis deny each and every

8   allegation contained in that paragraph.

9       15.     Defendants deny the allegations contained in paragraph 24 of the SAC.

10      16.     Defendants lack sufficient knowledge or information to form a belief as to the truth of

11  the allegations contained in paragraph 25 of the SAC, and on that basis deny each and every

12  allegation contained in that paragraph.

13      17.     Responding to paragraph 26 of the SAC, Defendants deny the allegation that the

14  "minors never disclosed to County or DSS any physical and/or sexual abuse by Plaintiff."

15  Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegation

16  that "no physical evidence of physical and/or sexual abuse exists," and on that basis deny said

17  allegation.

18      18.     Defendants lack sufficient knowledge or information to form a belief as to the truth of

19  the allegations contained in paragraph 27 of the SAC, and on that basis deny each and every

20  allegation contained in that paragraph.

21      19.     Defendants deny the allegations contained in paragraph 28 of the SAC but admit that

22  the County notified Plaintiff in writing in 2010 of inclusion of his name in CACI.  Defendants

23  further admit that the County's written notice to Plaintiff in 2010 states what it states.

24      20.     Defendants lack sufficient knowledge or information to form a belief as to the truth of

25  the allegations contained in paragraph 29 of the SAC because, in part, relevant information is

26  currently unavailable to Defendants pending presentation and determination of a Petition to be

27  brought pursuant to Welfare & Institutions Code § 827, and on that basis deny each and every

28  allegation contained in that paragraph.

Defendants' Answer to Second Amended Complaint                                          15-CV-4933 BLF

1      21.    Defendants lack sufficient knowledge or information to form a belief as to the truth of

2  the allegations contained in paragraph 30 of the SAC because, in part, relevant information is

3  currently unavailable to Defendants pending presentation and determination of a Petition to be

4  brought pursuant to Welfare & Institutions Code § 827, and on that basis deny the allegations

5  contained in that paragraph; but Defendants admit that Plaintiff received a grievance proceeding and

6  thereafter filed a state court proceeding to contest the outcome of the grievance proceeding.

7      22.    Defendants lack sufficient knowledge or information to form a belief as to the truth of

8  the allegations contained in paragraphs 31, 32, and 33 of the SAC, and on that basis deny each and

9  every allegation contained in those paragraphs.

10      23.    Defendants deny the allegations contained in paragraph 34 of the SAC.

11      24.    Responding to paragraph 35 of the SAC, Defendants deny the allegation that "Aceves

12  was the agency contact responsible for the submission of the report that placed Plaintiff in CACI."

13  Defendants lack sufficient knowledge or information to form a belief as to the truth of the other

14  allegations contained therein, and on that basis deny them; but Defendants admit that Gale Simmons

15  participated in preparation of the BCIA 8583 form in April 2015 and further admit to the contents of

16  said form, which are self-evident.

17      25.    Defendants deny the allegations contained in paragraph 36 of the SAC but admit that

18  in 2015 neither Simmons nor Aceves participated in an active investigation of child abuse

19  allegations against Plaintiff.  Defendants further admit that neither of them participated in

20  conducting interviews regarding same.

21      26.    Defendants deny the allegations of paragraph 37 of the SAC but admit that neither

22  Gale Simmons nor Guadalupe Aceves saw or spoke to Plaintiff in 2015.

23      27.    Defendants lack sufficient knowledge or information to form a belief as to the truth of

24  the allegations contained in paragraph 38 of the SAC and on that basis deny those allegations; but

25  Defendants admit that Plaintiff requested a grievance hearing from the County in 2015.

26      28.    Defendants admit the allegations contained in paragraph 39 of the SAC.

27  / /

28  / /

4

Defendants' Answer to Second Amended Complaint                                     15-CV-4933 BLF

1         29.   Defendants lack sufficient knowledge or information to form a belief as to the truth of

2    the allegations contained in paragraph 40 of the SAC, and on that basis deny each and every

3    allegation contained in that paragraph.

4         30.   Defendants deny the allegations contained in paragraph 41 of the SAC.

5         31.   Defendants deny the allegations contained in paragraph 42 of the SAC but admit that

6    in 2015 the County of Santa Clara denied Plaintiff's request for a second grievance proceeding to

7    contest a 2010 substantiation of a child abuse allegation.

8         32.   Defendants lack sufficient knowledge or information to form a belief as to the truth of

9    the allegations contained in paragraph 43 of the SAC, and on that basis deny each and every

10   allegation contained in that paragraph.

11        33.   Defendants deny the allegations contained in paragraph 44 of the SAC.

12        34.   Defendants lack sufficient knowledge or information to form a belief as to the truth of

13   the allegations contained in paragraphs 45 and 46 of the SAC, and on that basis deny each and every

14   allegation contained in those paragraphs.

15        35.   Defendant lacks sufficient knowledge or information to form a belief as to the truth of

16   the allegations contained in paragraph 47 of the SAC, and on that basis deny those allegations; but

17   Defendants admit that from and after January 1, 2012, the law required that only substantiated child

18   abuse allegations are properly reported to CACI and that any reports of unsubstantiated child abuse

19   allegations (i.e., inconclusive) made to CACI before January 1, 2012 be purged.

20        36.   Defendants deny the allegations contained in paragraph 48 but admit that the DOJ is

21   the repository of information reported to CACI, and that information in CACI is limited to

22   substantiated referrals of child abuse, and that social workers employed by California county

23   agencies are amongst those who report to CACI.

24        37.   Defendants lack sufficient knowledge or information to form a belief as to the truth of

25   the allegations contained in paragraphs 49, 50, 51, 52, and 53 of the SAC, and on that basis deny

26   each and every allegation contained in those paragraphs.

27        38.   Defendants deny the allegations contained in paragraph 54.

28   //

Defendants' Answer to Second Amended Complaint                              15-CV-4933 BLF

39.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 55, 56, 57, and 58 of the SAC, and on that basis deny each and every allegation contained in those paragraphs.

40.     Defendants deny the allegations contained in paragraph 59 of the SAC.

41.     Defendants deny the allegations contained in paragraph 60 of the SAC.

42.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 61 of the SAC, and on that basis deny each and every allegation contained in that paragraph.

43.     Defendants deny the allegations contained in paragraphs 62, 63, 64, and 65 of the SAC and further deny any wrongdoing whatsoever with respect to Plaintiff.

44.     Defendants deny the allegations of paragraph 66 of the SAC but admit that in certain instances depending upon the circumstances, the County of Santa Clara may be held liable under respondeat superior for some torts committed by its employees.

45.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 67 of the SAC, and on that basis deny each and every allegation contained in that paragraph.

46.     Defendants deny the allegations contained in paragraph 68 of the SAC but admit that the holding(s) of the published decision of *Humphries v. County of Los Angeles* are self-evident.

47.     Answering the allegations of paragraph 69 of the SAC, Defendants incorporate by reference its denials and admissions made in response to paragraphs 1-68 herein.

48.     Defendants deny the allegations of paragraphs 70, 71, 72, and 73 of the SAC.

49.     Answering the allegations of paragraph 74 of the SAC, Defendants incorporate by reference its denials and admissions made in response to paragraphs 1-68 and 70-73 herein.

50.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 75 of the SAC but admit that the holdings of the published decisions cited therein are self-evident.

51.     Defendants deny the allegations contained in paragraph 76 of the SAC but admit that Simmons and Aceves, in a general sense, acted under color of state law with respect to activities

6

1    undertaken within the scope of their employment with the County of Santa Clara in 2015.

2        52.    Defendants deny the allegations contained in paragraph 77 of the SAC but admit that

3    in 2015 Aceves was employed by the County of Santa Clara as a Data Office Specialist and working

4    within the County Department of Social Services.

5        53.    Defendants deny the allegations of paragraph 78 of the SAC but admit that in 2015

6    Gale Simmons was a resident of Santa Clara County, an employee of the County of Santa Clara

7    working within the Santa Clara County Department of Social Services, and participated in the

8    process of preparing a BCIA 6583 form. Defendants further admit to the contents of said form,

9    which are self-evident and further admit that in the past Gale Simmons has served as a

10   Commissioner on the Santa Clara County Child Abuse Council and has participated in training

11   programs.

12       54.    Defendants deny the allegations contained in paragraph 79 of the SAC but admit that

13   in 2015  neither Simmons nor Aceves participated in an active investigation of child abuse

14   allegations against Plaintiff. Defendants further admit that neither of them participated in

15   conducting interviews regarding same.

16       55.    Defendants deny the allegations contained in paragraphs 80, 81, 82, 83, 84, and 85 of

17   the SAC.

18       56.    Answering the allegations contained in paragraph 86 of the SAC, Defendants

19   incorporate by reference its denials and admissions made in response to paragraphs 1-68, 70-73, and

20   75-85 herein.

21       57.    Defendants deny the allegations contained in paragraph 87, 88, 89, 90, 91 and 92 of

22   the SAC.

23       58.    Defendants lack sufficient knowledge or information to form a belief as to the truth of

24   the allegations contained in paragraph 93 of the SAC, and on that basis deny each and every

25   allegation contained in that paragraph.

26       59.    Defendants deny the allegations of paragraph 94 of the SAC.

27       60.    Defendants lack sufficient knowledge or information to form a belief as to the truth of

28   the allegations contained in the prayer of the SAC, and on that basis deny each and every allegation

                                                    7

1 | contained in the prayer.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

As a separate, distinct and affirmative defense to the SAC, Defendants allege that neither the SAC nor any of its purported claims for relief state facts sufficient to constitute a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

As a separate and affirmative defense to the SAC, Defendants deny that they have deprived Plaintiff of any rights, privileges or immunities granted by the laws or Constitution of the United States, or by the laws or Constitution of the State of California.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's complaint, and each cause of action, is barred by failure to comply with the claim provisions of Government Code Sections 900 et seq.

### FOURTH AFFIRMATIVE DEFENSE

Defendants plead all immunities of public employees and public entities pursuant to the Government Code Sections 810 et seq., including, but not limited to Sections 820.2, 820.8, 821.6, 835.4, and 840.6.

### FIFTH AFFIRMATIVE DEFENSE

As a separate, distinct and affirmative defense to the SAC, Defendants allege that Plaintiff was careless, negligent, and at fault in and about the matters complained of, and that such carelessness, negligence and fault proximately and concurrently caused the alleged damages sustained by Plaintiff. Under principles of comparative fault, Plaintiff must bear sole, or partial, responsibility for their alleged injuries, damages or other alleged loss, if any there be, using a percentage allocation of Plaintiff's fault or negligence.

### SIXTH AFFIRMATIVE DEFENSE

As a separate, distinct and affirmative defense to the SAC, Defendants allege that the happening of the incidents complained of, and the loss and damage, if any, which Plaintiff allegedly sustained, were caused wholly or in part by the fault of persons, firms, corporations, or entities other

8

Defendants' Answer to Second Amended Complaint                    15-CV-4933 BLF

1   than Defendants, and such fault is imputed to Plaintiff and either eliminates or comparatively

2   reduces the percentage of fault, if any, of Defendants with respect to the matters complained of in

3   the SAC.

4                            **SEVENTH AFFIRMATIVE DEFENSE**

5       As a separate, distinct and affirmative defense to the SAC, Defendants allege that each and

6   every cause of action of the SAC is barred by the applicable statutes of limitations.

7                             **EIGHTH AFFIRMATIVE DEFENSE**

8       As a separate, distinct and affirmative defense to the SAC, Defendants allege that neither the

9   SAC nor any of its purported causes of action state a claim upon which relief can be granted because

10   Plaintiff consented to all acts of Defendants as alleged in the SAC and contributed to the incidents

11   referred to in the SAC.

12                            **NINTH AFFIRMATIVE DEFENSE**

13       As a separate, distinct and affirmative defense to the SAC, Defendants allege that each and

14   every cause of action of the SAC is barred in that Plaintiff is estopped from recovering the amounts

15   claimed, or any amount at all.

16                            **TENTH AFFIRMATIVE DEFENSE**

17       As a separate, distinct and affirmative defense to the SAC, Defendants allege that each and

18   every cause of action in the SAC is barred in that Plaintiff has waived any rights they may have had

19   to the amounts claimed, or any amount at all.

20                        **ELEVENTH AFFIRMATIVE DEFENSE**

21       As a separate and distinct affirmative defense to the SAC, Defendants allege that the

22   employees, officials, and agents of the County of Santa Clara were at all times material hereto acting

23   with both subjective and objective good faith, such that any claim for relief that Plaintiff may have is

24   barred by law.

25                        **TWELFTH AFFIRMATIVE DEFENSE**

26       As a separate and distinct affirmative defense to the SAC, Defendants allege that the SAC

27   should be dismissed because they are immune and/or entitled to absolute and/or qualified immunity

28   based on the applicable federal and state laws and case law.

Defendants' Answer to Second Amended Complaint                                 15-CV-4933 BLF

| 1 | **THIRTEENTH AFFIRMATIVE DEFENSE** |

2    As a separate and affirmative defense to the SAC, Defendants allege that this action is barred

3    due to the doctrines of res judicata and/or collateral estoppel.

4    **FOURTEENTH AFFIRMATIVE DEFENSE**

5    As a separate, distinct and affirmative defense to the SAC, Defendants allege that Plaintiff

6    has failed to mitigate any or all of the damages alleged in the SAC, and is thereby precluded from

7    recovering those damages which could have reasonably been avoided by the exercise of due care on

8    Plaintiff's part.

9    **DEMAND FOR JURY TRIAL**

10    Defendants hereby demand a trial by jury in this matter.

11    WHEREFORE, Defendants pray for judgment against Plaintiff as follows:

12    1.    That Plaintiff takes nothing by way of his SAC;

13    2.    That the SAC be dismissed with prejudice;

14    3.    That all costs of suit, including attorneys' fees, be awarded to Defendants;

15    4.    That judgment be entered in favor of Defendants; and

16    5.    That this Court award such further relief as the Court may deem just and proper.

17    Dated: November 22, 2016                    Respectfully submitted,

18                                                JAMES R. WILLIAMS
                                                 County Counsel
19

20                                        By: _____ /S/ _____
                                                 STEPHEN H. SCHMID
21                                               Deputy County Counsel

22                                               Attorneys for Defendants
                                                 COUNTY OF SANTA CLARA (erroneously
23                                               sued as Santa Clara County Department of Social
                                                 Services), GAIL SIMMONS (erroneously sued as
24                                               Gail Simmons), and GUADALUPE ACEZES
                                                 (erroneously sued as Guadalupe Acezes)
25

26

27

28    1427074

10

EXHIBIT 3

REPORT OF LEMOR WARZMAN

ABHIJIT PRASAD

Case No. 1 CV-04933-BLF

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

A. INTRODUCTION AND QUALIFICATIONS:
   My name is Lemor C. Warzman
   My office address is 3601 W. 244th St., Torrance, CA 90505. Telephone (310)738-0748.
   My CV is attached as Exhibit "1", and this is my report attached as Exhibit "2".

1. I was retained by the Weissburg law firm to provide my opinions and testimony regarding Abhijit Prasad, hereinafter Plaintiff or Prasad, as described below.

2. My personal compensation is not dependent on the outcome of this matter. I charge $250.00 per hour for consultation and $450.00 per hour for depositions and trial testimony.

3. I have testified in the Dependency Court regarding cases under my direct control and scope of supervision. I have testified in Criminal Court proceedings. Due to testimony that was conducted in the dependency or adoption system, the identity of the minors is barred by California Welfare and Institutions Code § 827, absent a court order from the Dependency Court or this honorable court.

4. I have a Bachelors degree in Social Worker, and A Masters degree in Public Policy and Administration.

5. I was employed by Los Angeles County Department of Children and Family Services ("DCFS") for 20 years and retired in 2018. My final payroll classification was as a Supervising Children's Social Worker, reporting to the Assistant and Regional Administrators ("SCSW"). I worked for the Los Angeles County Department of Children and Family Services ("DCFS") as an investigating social worker for the Dependency Investigation unit, as a line social worker and Supervising Social Worker in the Emergency Response Section, Family Maintenance and Reunification units and permanency Units. My job duties and responsibilities required that I apply Federal & State Laws on a daily basis involving the detention and placement of children in Los Angeles County, in other States, and placement of children out of the Country of Los Angeles through the Interstate Compact on the Placement of Children. I was required to send information to the

1

Department of Justice ("DOJ"), regarding the results of my investigations on a daily basis. I was required by CANRA to report known or suspected child abuse or neglect to a law enforcement agency or child welfare agency and Cal. Penal Code

§ 11165.9. I received repeated and updated training on the 2007 GOMEZ v. SAENZ settlement agreement and the rights of individuals to have CACI appeals of inclusion into the databases. I attended the DCFS (6) six-week Core academy, and numerous specialized trainings on all of the subjects listed.

6. I have direct knowledge of DCFS computer utilization requirements, as well as day to day experience with all of the computer systems utilized by DCFS, including new systems such as CWS/CMS, CWS Cares, and the Family Child Index.

7. I have extensive knowledge and training on child abuse reporting, investigations and dispositions of referrals, Dependency Court Systems including report requirements, adoption and guardianship assessments, and services to be provided to families, DCFS jurisdiction to investigate referrals.

B. EXPERT TESTIMONY

I was retained by the Weissburg Law Firm to review and testify as to the appropriateness of the three prior and two investigations from 2009, and determination of "conclusive" findings of Mr. Abhijit Prasad in 2015 by Santa Clara County Department of Social Services ("DSS"), Gale Simmons, Guadalupe Acezes and Does 1-20 regarding his placement in the Child Welfare System/Case Management System ("CWS/CMS"), and all of the databases that are fed from CWS/CMS, CWS Cares, to the Child Abuse Central Index ("CACI") databases, and over 500 statewide databases.

I was asked to review and testify to applicable policy, procedure, practices, and customs involving the day to day requirements and utilization of CWS/CMS, and all other databases utilized by a social worker DSS, and including but not limited to issues and procedures followed in investigation of referrals involving allegations of abuse, neglect, adoption assessment, legal guardianship assessment, concurrent planning requirements, and investigation of allegations of exploitation of

2

children as mandated by Penal Code, §11165, et seq., and State Department Social Services, Manual of Policies and Procedures ("MPP"), throughout the State of California.

I reviewed and am prepared to testify regarding preparing to conduct emergency response investigations, actual procedures including utilizing access and input into CWS/CMS, completing investigations, Court reports, detentions, investigation of referrals, disposition of allegations, closing a "referral" and promoting to a "case", use of the primary CWS/CMS database and all databases fed from CWS/CMS including but not limited to: SDM Risk Assessments, SDM Safety Assessments, and CACI.

I reviewed and am prepared to testify to applicable policy, procedure, practices, and customs involving jurisdiction of DSS to conduct investigations; cross-reporting responsibilities of DSS CSWs; unrestricted access to DSS case information under WIC §827, by Law Enforcement, Courts, Adoption Agencies, Family Law Courts, Welfare Agencies, State Licensing, other States, all 58 California County HHS agencies, communications and access to DCFS records by these agencies, specific WIC §827 requirements, ICPC exchange of case records, access by Courts, District Attorneys, probation, law enforcement, family law attorneys, medical providers, county counsel, school personal, and family members, etc.

I reviewed and am prepared to testify to applicable policy, procedure, practices, and customs involving DSS and CACI. The California Child Abuse and Neglect Reporting Act ("CANRA"), Cal. Penal Code § 11164-11174, governs the maintenance of a statewide database of reports of suspected child abuse and severe neglect, known as CACI". That CANRA requires certain individuals to report known or suspected child abuse or neglect to a law enforcement agency or child welfare agency and Cal. Penal Code § 11165.9.

I reviewed and am prepared to testify to current DCFS reporting requirements (AB717 changes), for CANRA, Cal. Penal Code § 11164-11174, which governs the maintenance of a statewide database of reports of suspected child abuse and severe neglect, known as CACI system in 2008 to date. Finally, I reviewed and am prepared to testify that now CANRA only requires submission

3

of founded allegations CACI, while all dispositions remain in CWS/CMS. See Cal. Penal Code §
11165.9.

I estimate that the amount of time I will have spent prior to the submission of this report has totaled
over 30 hours. In reaching my conclusions, I have drawn on my experience and knowledge as a
Social Worker and Supervising Children's Social with DCFS for 20-years. In those capacities and
an individual interested in child welfare laws and applications, for many years I have kept abreast
of developments, State and Federal changes in the law as it relates to child abuse, assessments,
adoption, guardianship, and services to families.

Beyond my technical and personal background, I have used a variety of materials in preparing this
report from both the World Wide Web and the State of California archive search system including
but not limited to, California's Division 31 Regulations; DSS Files; current DSS Policy and
Procedures which is available on the internet as well as discovery responses, and Core Training
Manual; Deposition Transcripts of Defendants, and Court transcripts of Plaintiff, Chancellor, and
other experts; DOJ Policy and Procedures for CACI; California Code of Regulations; California's
Child Welfare System/Case Management System ("CWS/CMS") overview; CWS/CMS In A
Nutshell, CWS Cares, and new DSS Policy and Procedures on system utilization for CACI,
CWS/CMS, and Strategic Decision Making ("SDM") for safety and risk assessments.

Most of the material I used is explicitly cited in the text of this report; material that I used but may
not otherwise be cited in this report includes:

A. California Outcomes and Accountability System (COAS). The COAS stems from
   legislation (AB 636 2001) aimed at improving California's child welfare system. The
   COAS encourages State and County leadership to identify and replicate best practices to
   assure the unique and critical needs of children and their families are met;
B. Adoptions and Safe Family Act;
C. California's Team Decision Making ("TDM") guidelines;
D. California Multiple Disciplinary Team ("MDT") guidelines;

4

    E. California's Risk Assessment Tool guidelines;

    F. California's Safety Assessment Tool guidelines;

    G. Public Child Welfare Training Academy, Core Training Manuals; and

Seiser and Kumli, California Juvenile Courts Practice and Procedure. (Mathew Bender 2016).

As I examine additional materials and perform further analyses, I reserve the right to revise and supplement my opinions.

    C. EXHIBITS

        At this time, I have utilized the following list of exhibits. This list may expand as additional documents become available.

        Exhibit 1, Suspected Child Abuse Report dated 11/16/2009;

        Exhibit 2,  Screener Narrative (referral date 11/16/2009);

        Exhibit 3, Investigative Narrative (referral date 11/16/2009);

        Exhibit 4, Emergency Response Referral Information dated 11/16/2009;

        Exhibit 5, Delivered Service Log from 11/16/2009 through 12/3/2009;

        Exhibit 6, Emergency response Notice of Referral Disposition dated 12/30/2009;

        Exhibit 7, Child Abuse Summary report dated 2/09/2010;

        Exhibit 8, Screener Narrative (referral date 12/30/2009;

        Exhibit 9, Investigative narrative (referral date 12/30/2009);

        Exhibit 10, Emergency response Referral Information dated 12/30/2009;

        Exhibit 11, Delivered Service Log from 12/30/2009 through 3/17/2010;

        Exhibit 12, Letter to Ms. Chancellor from Abhijit Prasad dated 12/31/2009;

        Exhibit 13, Emails between Nana Chancellor and Komal Rattan from 11/26/2009 to 1/11/2010 with attached Pleasanton Police report no. 2008-00025031;

        Exhibit 14, Request for Grievance Hearing dated 3/08/2010;

        Exhibit 15, Letter to Abhijit Prasad from Dana Sugiyama, dated 3/26/2010;

        Exhibit 16, Letter to Abhijit Prasad from Dana Sugiyama, dated 4/14/2010;

        Exhibit 17, Letter to Abhijit Prasad from Ronni Smith, dated 5/27/2010;

Exhibit 18, Delivered Service Log dated 5/27/2010 through 5/27/2010;

Exhibit 19, Delivered Service Log dated 6/01/10 through 6/01/2010;

Exhibit 20, Letter to Abhijit Prasad from Ronni smith dated 6/07/2010 with attached Grievance Procedures for challenging Reference to the child Abuse Central Index;

Exhibit 21, Fax to Ronni Smith from Abhijit prasad dated 6/07/2010;

Exhibit 22, Letter to Abhijit prasad from Ronni Smith dated 6/20/2010;

Exhibit 23, Transcription of Grievance Hearing;

Exhibit 24, Letter to Sirs/Mesdames from Abhijit Prasad dated 6/1/2010 with attached photographs;

Exhibit 25, County of Alameda Families & Children's bureau Child Custody Mediation Report dated 1/12/2010;

Exhibit 26, Investigation Narrative (referral date 7/07/2009;

Exhibit 27, Reporter's Transcript of Proceedings dated 1/13/2010;

Exhibit 28, Reporter's Transcript of Proceedings dated 1/21/2010;

Exhibit 29, Investigative narrative (referral dated 8/15/2008);

Exhibit 30, Photographs of Mr. Prasad's Master Bath;

Exhibit 31, Tracy Police Department Report No. 09-10703;

Exhibit 32, Pleasanton Police Department report no. 2009-00059957;

Exhibit 33, Superior Court of California, County of Alameda Order dated 11/25/2009;

Exhibit 34, Plaintiff's Exhibit List for Family Law Trial dated 1/13/2010 with attached medical records;

Exhibit 35, Tracy Police Department Report No. 08-07487;

Exhibit 36, Tracy Police Department Report No. 07-10662;

Exhibit 37, Photograph of Ms. Melara and minors dated 12/21/2008;

Exhibit 38, Reporter's Transcript of Proceedings dated 2/19/2010;

Exhibit 39, Letter from Bab M. Patel, M.D. dated 3/01/2010;

Exhibit 40, Information on Atenolol dated 2/27/2010;

Exhibit 41, Letter to Mr. Prasad from Claudia G dated 11/25/2009;

Exhibit 42, County of Alameda Families & Children's Bureau Child Custody Mediation Report dated 9/29/2008;

Exhibit 43, Email to Abhijit Prasad from Komal Rattan dated 7/07/2009;

Exhibit 44, Letter to sirs/Mesdames from Abhijit Prasad dated 7/10/2009;

Exhibit 45, Notice of Child Abuse Central Index Listing dated 2/09/2010 with attached Request for Grievance Hearing;

Exhibit 45, notice of Child Abuse Central Index listing dated 2/09/2010 with attached Request for Grievance hearing;

Exhibit 46, AT&T Monthly Statement dated 2/07/2010;

Exhibit 47, Findings and order After Hearing dated 6/16/2009;

Exhibit 48, Petition for the dissolution of marriage dated 8/29/2009;

Exhibit 49, letter from Kami Arac dated 10/22/2009 with attached Declaration by Jennifer Silva with handwritten notes;

Exhibit 50, Tracy Police Department Report No. 06-02878;

Exhibit 51, Resident history Report dated 10/05/2009;

Exhibit 52, Emails between Komal Rattan and Monica Corrales from 10/31/2007 and 11/13/2007;

Exhibit 53, various reporter's transcripts, pleadings, and motions;

Exhibit 54, Summons dated 11/14/2007;

Exhibit 55, Findings and order after hearing dated 1/14/2009;

Exhibit 56, Disability Benefits dated 6/24/2008;

Exhibit 57, Tracy police Department incident inquiry dated 3/01/2010,

Exhibit 58, Writ Petition dated 4/08/2009;

Exhibit 59, Letter to Komal Rattan from Joyce E. Weterdahl dated 2/23/2007;

Exhibit 60, Letter to Mr. Abhijit Prasad from Kristine Reed dated 5/26/2010;

Exhibit 61, Temporary Driver License for Leydi Melara;

Exhibit 62, State of California commission on Teacher Credentialing for Glenda Galleta Teogalbo with copy of Driver License;

Exhibit 63, Handwritten notes with names, addresses and phone numbers of nannies Mr. Prasad reviewed;

Exhibit 64, Child and Dependent Care Expenses (Form 2441) for 2008;

Exhibit 65, Findings and Order after hearing dated 9/17/2009;

Exhibit 66, Letter to Mr. Reuben from Abhijit Prasad (undated);

Exhibit 67, Fax to Ms. Chancellor from Abhijit Prasad dated 1/04/2010 with attachments;

Exhibit 68, Grievance Officer Recommendation and summary of Findings dated 8/23/2010;

Exhibit 69, Letter to Mr. Will Lightbourne from Mark Lane dated 8/23/2010;

Exhibit 70, letter to Abhijit prasad from Will Lightbourne dated 8/25/2010;

Exhibit 71, Investigation narrative (referral date 12/30/2009) with Addendum dated April 7, 2015;

Exhibit 72, Notice of child Abuse Central index listing dated 4/07/2015;

Exhibit 73, Grievance Procedures for challenging Reference to the child Abuse Central Index;

Exhibit 74, Request for Grievance Hearing dated 4/15/2015;

Exhibit 75, Child Abuse or Severe Neglect Indexing Form dated 4/07/2015;

Exhibit 76, Email between Tiapepe Uiagalelei to Ronni Smith dated 4/14/2015;

Exhibit 77, Emails between Midday Tovar, Ronni Smith, Harrison Taylor, Robert Coelho, Julie McKellar, Elizabeth Morgan, Stephen Schmid and Stanley Lee from 4/10/2015 and 4/14/2015.

Exhibit 78, 2015 Notice from DOJ that there is no record for Mr. Prasad in CACI.

Exhibit 79, 2015 notice from DSS that Mr. Prasad is being reported to CACI in 2015.

Exhibit 80, Prasad 2015 demand for CACI hearing for 2015 inclusion.

Exhibit 81, 2015 denial by DSS for CACI hearing.

Exhibit 82, 11/2/2010 Dependency Court order for use of DSS records with CWS/CMS exhibits.

Exhibit 83, 2nd Amended Verified Complaint Federal Court.

Exhibit 84, Order on Motion to Dismiss from Federal Court.

Exhibit 85, 7/16/2018 Dependency Court order for use of DSS records with CWS/CMS exhibits.

Exhibit 86, Administrative Record from 2010 with CACI appeals.

Exhibit 87, All County Information Notices including but not limited to 12-21.

I reserve the right to amend these lists, and conclusions based on any new evidence being provided.

D. SUMMARY OF CONCLUSIONS:

I have reached the following conclusions in my analysis:

1. Santa Clara County Department of Social Services, and its Social Workers investigated Abhijit Prasad contrary to Santa Clara County Policy, California Statues, Case Law and Division 31 Regulations, without complying with mandatory policies and procedures.

2. Santa Clara County Department of Social Services and its Social Workers violated Abhijit Prasad's due process rights contrary to Santa Clara County Policy, California Statutes, Case law and Division 31 Regulations, when they placed his information in the CWS/CMS System which feeds the other databases.

3. Santa Clara County Department of Social Services and its Social Workers violated Abhijit Prasad's due process rights contrary to Santa Clara County Policy, California Statutes, Case law and Division 31 Regulations, when they placed his information in the CACI System as a new referral in 2015, and then refused him a CACI hearing.

4. Santa Clara County Department of Social Services and its Social Workers violated Abhijit Prasad's rights contrary to Santa Clara County Policy, California Statutes, Case law and Division 31 Regulations, when they placed his information in 500 plus sub-database systems without notice to him.

5. Santa Clara County Department of Social Services and its Social Workers violated Abhijit Prasad's rights contrary to Santa Clara County Policy, California Statutes, Case law and Division 31 Regulations, and customs involving the day to day requirement and utilization of CWS/CMS, and all other databases utilized by a social worker for Santa Clara County, DSS , and including but not limited to issues and procedures followed in the investigation of referrals involving allegations of abuse, neglect, adoption assessments, legal guardianship assessments, concurrent planning requirement and investigation of allegations of exploitation of children in Santa Clara County, and as mandated by the California Penal code, and State Department of Social Services, throughout the State of California.

6. Santa Clara County Department of Social Services and its Social Workers violated Abhijit Prasad's rights contrary to Santa Clara County Policy, California Statutes, Case law and Division 31 Regulations, as to preparing to conduct emergency response investigations, including but not limited to, the actual procedures utilized to access the input into CWS/CMS, completing the investigations requiring Ms. Prasad to waive his Family law Court Ordered visitation rights, the investigations of referrals, dispositions of allegations, closing these "referrals" including but not limited to: SDM Risk Assessments, SDM Safety Assessments, etc.

7. Santa Clara County Department of Social Services and its Social Workers violated Abhijit Prasad's rights contrary to Santa Clara County Policy, California Statutes, Case law and Division 31 Regulations, in denying Mr. Prasad access and visitation to his children.

8.  Santa Clara County Department of Social Services and its Social Workers violated Abhijit Prasad's rights contrary to Santa Clara County Policy, California Statutes, Case law and Division 31 Regulations, regarding applicable policy, procedure, practices, and customs involving jurisdiction of DFCS to conduct investigations; cross-reporting responsibility of DFCS CSWs; unrestricted access to DFCS case information by law Enforcement, courts, Adoption Agencies, Family Law courts, Welfare Agencies, Family Law courts, Welfare Agencies, State licensing, other States, all fifty-eight (58) California County HHS agencies, communications and access to DFCS records by these agencies, WIC 827 requirements, ICPPC exchange of case records, access by Courts district Attorneys, probation, law enforcement, family law attorneys, medical providers, county counsel, school personnel, and family members, etc.

9.  Santa Clara County Department of Social Services and its Social Workers violated Abhijit Prasad's rights contrary to Santa Clara County Policy, California Statutes, Case law and Division 31 Regulations, regarding telling Mr. Prasad in 2010 that he was in CACI, when they never intended to report him to DOJ, and in fact did not report him to DOJ in 2010.

10. Santa Clara County Department of Social Services and its Social Workers violated Abhijit Prasad's rights contrary to Santa Clara County Policy, California Statutes, Case law, DOJ regulations, and Division 31 Regulations, regarding verification of submission to DOJ.

E.  BASIS FOR CONCLUSIONS
1.  The 2009 Referrals

In November 2009 DSS received a referral from Mother, Rattan as to allegations of abuse of her two daughters allegedly caused by Mr. Prasad. If DSS had checked the prior referrals as mandated by SDSS Division 31 regulations and DSS policy, CSW Chancellor would have learned that mother was involved in a highly contested custody battle, and had three prior recent referrals in other counties, all closed as unfounded. Chancellor closed the first referral and never interviewed Mr. Prasad, collateral contacts, mother's boyfriend, or family doctors.

On December 30-, 2009 mother called and e-mailed another referral to Chancellor, because she had a family law hearing pending. Chancellor closed this referral as inconclusive and unfounded as to the two girls in violation of Penal Code Sections 11169, subd. (a), and 11165.12 which mandate for a substantiated referral, lifetime inclusion in the CACI database based on a Social Worker's "Sub-standard Investigation", and whose Investigation did not comply with the California Penal Code, California Manual of Policies and Procedures, and the regulations contained in the California Administrative Code, and based on an opinion of a Social Worker, and DCFS' Hearing Officer, who have no legal knowledge, skills, or training, to determine "more likely than not that abuse occurred" with that sub-standard investigation. Chancellor lied when she claimed she interviewed the girls, (they did not speak English); lied in the family law court, and at the CACI hearing when she said there were criminal charges against Prasad, and when she claimed the MDI interview substanted abuse. In 2009, Prasad was in the midst of a contentious separation from his (now ex-) wife Komal Rattan. The two had separated in 2007 and eventually divorced in

10

June 2010. Throughout their separation, Prasad and Rattan shared legal custody of their two young daughters and Prasad had visitation rights. During the family law proceedings, there were multiple reports to different child welfare agencies, in different counties, against Prasad by his ex-wife. The prior child abuse reports all referred by the ex-wife, were all closed as unfounded.

On November 16, 2009, Santa Clara Social Services "Department" received another report from the ex-wife, this time that Prasad had sexually abused his daughters, who were then aged six and four years old. Prasad was never told the alleged abuse took place at Prasad's home sometime between September 2008 and July 2009, or what the allegations were.

Chancellor was the assigned social worker, and was told, per the Mother, one of the girls had rashes and yeast infections in her genital area (no medical evidence was ever provided), and mother claimed both girls told Rattan that Prasad pinched their 'private area' and bathed with them. Around this same period of time Rattan claimed she observed her daughters kissing each other and laying on top of each other while naked. Rattan also reported that Prasad has a history of committing domestic violence. (It was Rattan who was convicted of domestic violence, not Prasad). On November 23, 2009, Chancellor met with Rattan and the two girls. Chancellor claimed, while the girls played, Chancellor and Rattan spoke quietly so that they would not overhear. Rattan described past incidents of domestic violence by Prasad, many of which were committed in their daughters' presence. Rattan said the older daughter recently told her that Prasad takes baths with them and pinches them in 'their privates.' None of these allegations were ever reported by the girls to Chancellor, as they did not speak English in 2009, as ruled by Judge Huber in the Superior Court decision. In November 2009, Chancellor closed the November 2009 referral for sexual abuse, inconclusive. Chancellor never interviewed Prasad.

On December 30, 2009, Rattan who had just returned from India, contacted Chancellor because Prasad was scheduled to pick up their daughters that afternoon. Chancellor had a new referral opened and assigned to her the same day. Chancellor did not interview the girls, doctors, teachers, family members, and would not interview Prasad because, she said, "the police were conducting an investigation". However, "that Prasad sent Chancellor nearly 100 pages of documents prior to the January 13, 2010 family court hearing". Chancellor went to a January 13, 2010 Family Law hearing and testified against Prasad, although she never met him, or interviewed him. Chancellor claimed, "Once police are involved in an investigation, Chancellor would not ask the children detailed questions about the claims unless law enforcement personnel were present". Chancellor claimed, "Detective Cogburn scheduled a multi-disciplinary interview (MDI) with Rattan and the older daughter for February 1, 2010, but that Chancellor did not attend that interview". The children never talked to Detective Cogburn, and Prasad was never arrested or charged with a crime. Prasad never received the MDI evidence prior to the CACI Hearings. However, Chancellor found the allegation of sexual abuse by Prasad against the child(ren) was substantiated, and on February 9, 2010, Chancellor advised Prasad that she had reported her findings to the California Department of Justice for inclusion in the Child Abuse Central Index (CACI). She further advised him of his right to an administrative grievance hearing.

2. Prasad's Grievance Hearings

DSS conceded Prasad was never interviewed by Chancellor, RT. 1/5/16; pg. 17, lines 7-8; and Prasad did not know what the DCS report allegations were; that there were alleged statements of police officers that he never saw or heard; that he could bring witnesses; or that there had been a Multi-disciplinary Interview ("MDI") of the children until the grievance hearing, ten months after Chancellor's sub-standard or limited investigation. Prasad Declaration, CT Vol 2, pg. 331, lines 1-24. Prasad was not allowed to take the records with him or show it to his attorney, only read them there; then the first hearing had to be continued due to DSS' failure to turn over prior to the hearing exculpatory evidence, or documents were heavily redacted. RONNI: "Yeah but you cannot take the document at home though. MARK: Okay." MA, Exh. 3, pg. 122, (7/15/10 Grievance Hearing Transcript). All of these practices by DSS violated Prasad's due process rights, and DSS Division 31 Manual of policy and procedures.

At the second Grievance hearing on August 10, 2010 Prasad for the first time heard the testimony of the Social Worker, but was not allowed to cross-examine her. CT Vol 2, pg. 331, lines 1-24. Prasad never received the MDI report, or alleged statements from police officers from DSS; therefore, he was unable to cross-examine the social worker about lies about Prasad having a criminal record, the children' alleged inconsistent statements because they did not speak English; and a statement from one child that he received from the MDI interview years later, "I do not know what a boy's pee- pee looks like, do you", all of which goes directly to the issues of child abuse. There is no way an adequately trained social worker could find sex-abuse substantiated in this case.

During the CACI hearing, the procedure held was as follows: "MARK: "As you go through your testimony why don't we back that as you go through your testimony you can say here's, that's probably a better idea so why don't we back track the way this usually goes and the way I want to proceed is we ask the social worker to give a statement regarding her referral and what her investigation is and I may ask her some questions if you have question you can ask them through me and kind of get some clarity about the specific referral. Once the social worker is done with that then it's your turn to present your information regarding this allegation what information you have and I will accept the exhibits at that time and I may ask to clarify or sometimes I do not quite understand how it relates so I am going to look for some clarity, at the end of that then we can do some follow up whether there is additional questions or if it looks like I have everything I need then I'll close the hearing, alright." MA, Exh. 3, pg. 127 (8/10/10 Grievance Hearing Transcript). Prasad did not agree. Then Lane said:

"MARK: Procedures are that I ask this County to present their case first and I will ask them a couple of questions and for some clarity and then when County if done then I ask the complainant to present their position, I mean I again ask you questions and you can present your exhibits whatever, once that is done we would do some follow up. That is the kind of process that we set up to do this so that's how I do it." MA, Exh. 3, pg. 127 (8/10/10 Grievance Hearing Transcript). In reviewing the transcripts of the grievance hearings, Prasad was interrupted 44 times, and was repeatedly prevented from presenting his case. MA, Exh. 3, pgs. 118-160. Prasad Declaration, CT Vol 2, pg. 331, lines 1-24.

At oral argument, the Superior Court acknowledged and agreed the evidence showed the children did not speak English, and mother translated everything. RT. 1/5/2016: pg. 6; lines 1-23. Prasad was never able to cross-examine the worker to establish she lied about the interview of the girls, MDI interview, or that Prasad did not have a criminal record, and no criminal proceeding were pending or occurred. Prasad Declaration, CT Vol 2, pg. 331, lines 1-24. The trial court order mentions that "Detective Cogburn also told Chancellor that the forensic interviewer had found the older daughter to be reliable". App., infra, 48a. This is again Chancellor's hearsay statement. There is no evidence in the entire administrative record of the MDI interview at the hearing, or that Ms. Wanda Reub found the older daughter to be reliable or credible. Neither Detective Cogburn, who observed the interview from behind a two-way glass per the Declaration of Ronnie Smith, ever said that older daughter spoke English, was reliable, or credible. Smith, and the worker provided unsupported hearsay statements, and the social worker lied in the August 2010 grievance hearing, asserting that there was an ongoing criminal case against Prasad, whereas she knew Prasad never had any arrest or criminal court case, as the Police closed the case long before the hearing, and the case was a DA reject. The MDI or forensic interview report was never given to Prasad, and was not a part of the record, only the hearsay statements of the social worker that Prasad was not allowed to cross-examine. Prasad Declaration, CT Vol 2, pg. 331, lines 1-24.

Here, it is my opinion that because Chancellor failed to conduct a thorough investigation (e.g., interview other family members, the nannies, and Rattan's boyfriend) and follow the policies and procedures set forth in the California Social Services Manual of Policies and Procedures (e.g., visit Prasad's home and interview Prasad), it follows that the Department's decision was contrary to the weight of the evidence. A failure to conduct a thorough investigation and comply with applicable policies and procedures means, as a matter of law, that the administrative decision was contrary to the weight of the evidence.

DSS admitted in the court hearings that the investigation was in-sufficient; and delay of holding CACI hearings until criminal charges are resolved. RT. 4/29/2016: pgs. 35-36; lines 27-28 and 1-6, did not apply. DSS knew Prasad never had criminal charges filed against him, and MPP 31-021.31 did not apply. RT. 4/29/2016: pg. 40; lines 5-25.

In my opinion as a Supervising CSW, and 20 years of trainings, the MPP legal requirements of social worker investigations are mandatory; the record in this case is not adequate; the court allowed in evidence not included with the Record; Prasad was denied due process; and grievance review hearings requirements including timeframes and evidence disclosures are mandatory. See Assembly Bill 717; B.H., a Minor, v. County of San Bernardino, (2015) 62 Cal. 4th 168; State Dept. of State Hospital v. Superior Court (Novoa), (2015), 61 Cal 4th 339; and Jones v County of Los Angeles, (2015) 802 F.3d. 990. (9th Cir.), submitted for the proposition that, "In the area of child abuse, as with the investigation and prosecution of all crimes, the state is constrained by the substantive and procedural guarantees of the Constitution. The fact that the suspected crime may be heinous—whether it involves children or adults—does not provide cause for the state to ignore the rights of the accused or any other parties." Jones supra. MA, Exhibit 3, pgs. 1-117.

Prasad during his CACI hearings was interrupted 44 times. MA Exhibit 3, pgs. 118-160. Prasad did not even know the allegations that he was defending himself against at the Hearing until the

hearing, because Chancellor never told him the allegations. MA, Exhibit 3, pg. 126, CT Vol 2, pg. 331, line 7. Chancellor also lied at the hearing asserting Prasad had criminal charges pending. The Social Worker testified that Mr. Prasad's "case" was still pending in Criminal Court, although the Tracy Police completed their investigation in April 2010 and declined to press charges against Prasad. MA, Exhibit 3, pgs. 129-130, CT Vol 2, pg. 331, lines 22-23. During the administrative hearing Prasad repeatedly attempted to read exhibits into the record and provide explanations of their relevance, and the Review Officer repeatedly stopped him and said that Review Officer would read the exhibits after the hearing, and would not allow Prasad to show bias, prejudice, or the history of referrals and there relevance. MA, Exhibit 3, pg. 132. Prasad contends and as the transcript of the hearing shows, Prasad was "cut off and interrupted 44 times during the hearing." MA, Exhibit 3, pgs. 118-160. CT. Vol. 2, pgs. 331, line 14-15. The hearing officer "refused" Mr. Prasad's attempts to bring in information about Ex-Wife's prior allegations of child abuse. MA, Exhibit 3, pgs. 132-133, CT. Vol. 2, pgs. 331, line 16-18, and "told [Mr. Prasad] not to talk about the previous abuse cases that were unfounded." MA, Exhibit 3, pgs. 132-133.

Finally, Prasad did not receive copies of the social workers reports including the MDI. No copy of the MDI was entered into evidence. Then the Review Officer asked Prasad more than once to comment on the contents of the MDI, but Prasad had never seen or read the MDI and it was not part of the record. MA, Exhibit 3, pgs. 132-133., CT. Vol. 2, pgs. 331, line 10- 11.

During the hearings, Prasad testified the abuse allegations were false and he believed Chancellor did not undertake a proper investigation. Chancellor could not tell him when the alleged abuse occurred and he denied ever bathing with his daughters. He complained that he had not seen his daughters since July 2009 and Rattan would often not let him know where the children were. He said his children went to the doctor and there was no evidence that they had been molested. (Chancellor never checked with the child(ren) doctors. Prasad also said Rattan previously falsely accused him of engaging in domestic violence and he believes she has coached the daughters to make false allegations of abuse against him. He said he has not been arrested and no criminal charges were filed against him arising out of the alleged molestations.

On August 23, 2010, the hearing officer issued a written recommendation and summary of findings in which he recommended that Chancellor's original findings, i.e., that the claims of molestation were substantiated as to the older daughter and inconclusive as to the younger daughter, remain unchanged. The hearing officer concluded that the 'statements of [Chancellor] and the information in the case regarding the MDI interview of [the older daughter] substantiate the allegation of sexual abuse.' As to the younger daughter, the hearing officer concluded '[t]he allegation of sexual abuse . . . is less clear and there was no supporting MDI regarding her statements. Therefore I am recommending that this allegation continue to be classified as inconclusive.' The hearing officer's recommendation was confirmed by the agency director on August 25, 2010.

*Penal* Code section 11170(a)(2) provides that the submitting agency is responsible for the accuracy and completeness of the report required by CANRA and states that the DOJ is only responsible for ensuring that the CACI accurately reflects the report it receives from the submitting agency. Accordingly, the DOJ presumes that the information provided by the submitting agency on the

Child Abuse or Severe Neglect Indexing Form ("BCIA 8583") is accurate. Here in 2015 DSS never conducted an investigation, and refused Prasad's request for appeal of the 2015 inclusion.

A primary purpose of California's CACI statutes is to permit authorized entities to locate prior reports detailing investigations of known or suspected child abuse or severe neglect. The submitting agency must permanently retain investigative reports for which it has submitted a BCIA 8583, or earlier version thereof, if the investigative report substantiated allegations of abuse or severe neglect unless the agency, acting pursuant to court order or otherwise, determines that the allegations investigated are unfounded. If the investigative report was inconclusive about the existence of child abuse or severe neglect, the report must be retained for ten years unless there is an investigation of subsequent allegations of child abuse or severe neglect against the same child or by the same suspect(s) which determines the allegations are not unfounded. If the investigation of subsequent allegations is inconclusive, the original investigative report and the subsequent investigative report must be retained for ten years after filing the BCIA 8583 for the subsequent instance of abuse or severe neglect with DOJ. When the subsequent investigation determines that the subsequent allegations of abuse or severe neglect are substantiated, all prior remaining investigative reports involving the same victims or suspects must be retained permanently. Penal Code sections 11169(a), 11169(c), 11170(a)(1), 11170(a)(2), and 11170(a)(3). Here, DSS nor DOJ have any record of a 2010 report to DOJ for Mr. Prasad. Yet he was forced to spend over $250,000.00 and multiple hearings to get out of a system Defendants said he was in. It was not until April 2015 in the family law case that Mr. Prasad learned he was not in the system after all. Then in 2015 DSS reported him to CACI in violation of his due process rights without any investigation, and without any right to a hearing.

## F. CONCLUSION

In my opinion, it is fundamentally unfair, and a perversion of due process rights to deny those rights because the CACI hearing in this case was held in 2010; to relieve the party who has the burden of proof from the obligation to come forward and meet that burden with lies, deceit, and a lack of due process protections as occurred here in 2010; and instead shift to the other party the obligation to anticipate and discuss allegations never given to him; discuss evidence never given to him; anticipate procedures that did not comply with due process requirements; and have a social worker without any legal knowledge, skills, or training, be allowed to lie her way to, "it more likely than not that child abuse or neglect, occurred, because she met the mother, but did not ever talk to Prasad." (Cal. Pen. Code, § 11165.12, subd. (b).) DSS never verified that the supposed referral in 2010 is ever sent to DOJ, and per those regulations, if the report cannot be found, it must be deleted from DOJ. Finally to report Mr. Prasad in 2015 as a new referral due to information from the family law case, as a new report, in further violation of his due process rights. The ability to amend a report, has clear instructions on the form. In my opinion Mr. Prasad has not seen his children since 2009, due to the deliberate and the ongoing conduct of these defendants to notice and opportunity to be heard, thus violating his rights in California and in the United States.

15

I declare under penalty of perjury of the laws of the United States of America, that the forgoing is true and correct.

Dated: October 15, 2018

Respectfully submitted,

Lemor Warzman

**Lemor Warzman, BASW, MPPA**
**lemorwass@yahoo.com**
**(310)738-0748**

## EDUCATION
Bachelor of Arts, Social Work.  California State University, Long Beach, 1995.
Master of Arts, Public Policy and Administration, California State University, Long Beach, 1999

## TECHNICAL SKILLS

- Proficient in Microsoft Office; Word, Power Point, Outlook and Excel applications for PC and MAC formats.

## SUMMARY OF PROFESSIONAL EXPERIENCE

- Twenty years of experience as a Children's Social Worker and Supervising Children's Social Worker in Emergency Response/Family Maintenance/Reunification/Permanency Units at the Los Angeles County Department of Children and Family Services.
- Consistently exceeded California State and Departmental standards for safety of children in and out of foster care, reunification timeframes of children to their families of origin and successful permanency and/or emancipation of foster youth. Consistently exceeded Departmental standards for children not reentering the foster care system after termination of court jurisdiction and DCFS intervention.
- Clear knowledge, understanding and consistent use of computer systems utilized by the California Child Welfare system including but not limited to, CWS/CMS, CACI, SDM, FCI, CIS, LEDER, WICMIS, ESCARS, LIVE-SCAN, and new systems in production including E-Scars, and CWS Cares.
- Solid knowledge, understanding and practice of the Child Welfare System to include policy and procedures, California Manual of Policies and Procedures requirements, legal sufficiency and Best Social Work Practice Model for children and families.
- Ongoing training of staff regarding interventions and strategies on engaging with families
- Utilization of critical thinking skills, realistic and practical methods of evaluating the ongoing safety of children.
- Lead for Torrance Office Quality Service Review conducted by DCFS Quality Review Section. Coordinator for Institutional Analysis focusing on Disproportionality and Disparity in the African American and American Indian Populations as part of the CAPP (California Partners for Permanency) Initiative.
- Extensive work with Commercially Sexually Exploited, STAR Court and advocacy groups.
- Law Enforcement Liaison. Worked and consulted with Law Enforcement, District Attorney's Office and the Criminal and Dependency Court System regarding children determined to be at-risk and abused and neglected.
- Ongoing cultural competency training per State and Departmental expectations.

- Completion of ongoing DCFS Departmental assignments, assignments to the Board of Supervisors, ongoing evaluation and case reviews/ handling and troubleshooting constituent calls.
- Statistical analysis of reporting rates, removal of children by race and zip code, recidivism, aging foster youth.
- Designated Fundraiser and Resource Coordinator for Torrance DCFS office. Connecting local and national foundations, non-profit and community agencies with DCFS and the Torrance Office for the purpose of developing relationships to secure ongoing resources, scholarships, clothing, laptop computers and other necessary items for youth in foster care.
- Outreach specialist and guest speaker at forums hosted by Church Congregations, Synagogues, Community-Based Partnerships and organizations. Case Presenter at DCFS/Casey Foundation Executive Board and Management Meetings for the purpose of critical thinking reviews and purposeful decision-making process.
- Superior leader, team-builder and follow-through of all projects and relationships established through work collaboration.
- Liaison to Department of Public Social Services Linkages Program and Child Support Services Division.

## EMPLOYMENT EXPERIENCE

### Los Angeles County Department of Children and Family Services, Torrance, California

### Mandated Reporter, California Penal Code §11165 and §11166
### Supervising Children's Social Worker, 2001-2016

From 2001 through 2016, I supervised Children's Social Workers (CSWs) in the service delivery sections of Emergency Response (ER), Family Reunification/Maintenance and Permanency. Responsibilities included on-going monitoring, tracking and training of staff. I conducted case-conferencing, data collection/compliance with performance indicators and case management services to ensure the ongoing safety of children under my direct scope of supervision and oversight during investigative and reunification/permanency phases. Tracked staff accuracy and compliance with State and Department mandates through Team Decision Making meetings, Strategic Decision Making (SDM) Safety and Risk Assessment tools on a daily basis. Collaborated with Law Enforcement, State Licensing, District Attorney Offices after cross-reporting to these agencies. Trained, monitored and oversaw legal guardianship evaluations and adoption assessments submitted by CSWs. Worked with staff in and out-of-state regarding placement of children in and out of California via the Interstate Compact Placement of Children (ICPC). Assessed and reviewed CWS/CMS history of parents and potential care-providers, Child Abuse Assessment Index (CACI) history, Criminal history through CACI/DOJ, ESCARS, Leder, Family and Child Index (FCI), State Licensing for revocation of Foster Care Licenses (FC), WICMIS, State of California-Aid to Families Dependent Children (AFDC), Adoption and Safe Families Act (ASFA). Reported individuals to the Department of Justice after determination that a CACI report was warranted. Oversaw the determination of appropriate placements in out-of-state and county homes by assessing the appropriateness of non-offending parents, relatives, unrelated individuals and extended family members. Utilized DCFS Web based and free-standing computer databases and systems to evaluate and assess referred family and extended family members/interested parties for appropriateness as potential caregivers. Reviewed and presented

cases of high-risk mental health youth to specialized placements for the purpose of intensive placement and treatment. Worked with administrative superiors county-wide with regards to criminal waivers for placement/approval of homes for children requiring out-of-home care. Oversaw and ensured legally sufficient reports were provided to the Juvenile Court on a timely basis. Constant collaboration with law enforcement, medical personnel, public and private agency professionals, community stakeholders, Department of Mental Health, DCFS Medical Director's Office, Indian tribes, US Secretary of the Interior office and relevant resource providers. Communication and submission of reports and assignments to the DCFS Executive Management Team and LA County Board of Supervisors office.

As a Supervisor, I have been a guest trainer for the DCFS Training Section and have consistently been designated as a Training Supervisor with high rates of Social Work staff being promoted from my unit to Supervisory/Administrative positions within the Department of Children and Family Services and specialized sections.   My responsibilities included but were not limited to determining whether children were deemed safe to remain in their family of origin or removal was warranted. Ongoing consultation with County Counsel regarding warrant requests and detentions of children. Witness testimony provided in Juvenile and Criminal court cases.

From September 2010 through September 2011, I reported directly to the Regional Administrator of the Torrance DCFS office, overseeing all aspects of the operation. My responsibilities included establishing relationships with the Faith-based and Community Organizations within the Service Plan Area of the Torrance Office for the purpose of resource development to the youth and families we serve. As part of this project, I hosted and chaired monthly Resource Fairs for DCFS staff and provided them the opportunity to link with new agencies and resources for their clients. Responsible for recruitment of community volunteers as Visitation Center Monitors/Coaches, developed training material for monitor's training and conducted ongoing trainings. I trained community members, Casey Foundation Staff and New York Children and Family Services Delegates on the Visitation Center Implementation Model and Process utilized by the Torrance DCFS Office. Additionally, I worked with Faith-based Council to compile a Visitation Center pamphlet which has been printed and utilized throughout the Department for community recruitment efforts.   Collaborated with Executive staff at South Bay Center for Community Development regarding Visitation Center Monitors, training, budget, finger-printing and report submission regarding Visitation Center data.  I compiled statistical data and completed monthly Adoptions and Safe Families Act denial reports, departmental reports addressing foster youth in-care with open court services for more than 12 months and foster youth over the age of 18 years with open cases. I was consistently recognized for my diligence in completion of these reports with accuracy and "real world/common sense" approaches to resolving the issues identified.  I was responsible for identifying State and Departmental MAPP goals for the Torrance office on a monthly basis and provided/presented data in excel and graph format to management and staff. Conducted case reviews and prepared questions and updates to Regional Administrator, reviewed constituent complaints and contacted constituents to resolve matters. Worked collaboratively with Educational Consultant and Independent Living Program Staff to ensure Torrance Youth eligible for graduation and Celebration I and II events were contacted and provided with all the resources and benefits allotted to them. I have provided ongoing documentation and completed assignments to the LA County DCFS Director and Executive Management Team regarding high-profile/high mental health needs cases I have been specifically designated to supervise and manage.

Since 2003, in addition to my role as a Supervising Children's Social Worker, I have worked with National Non-Profit Organizations including the Pritzker Family Foundation, Teague Family Foundation, Foster Care Counts, iFoster, General Federation of Women's Clubs, The Jester, local

Rotary Clubs and organizations for the purpose of donations including laptop computers to our foster youth in-care. I am the designee to work directly with the Executive Directions of these organizations and have built strong relationships with ongoing communication for the purpose of expanding programs benefiting foster youth in-care.

I have served as the Torrance DCFS office Law Enforcement, DPSS Linkages and Child Support Services Liaison. Responsibilities included participation in on-going meetings/conferences and working with local law enforcement/public agencies to facilitate the working relationship between the respective agencies and DCFS staff. I contacted, coordinated and intervened in situations of conflict to ensure services were coordinated between both agencies for the benefit of the children served.

**Lakewood DCFS Office**
**Children's Social Worker Trainee/I/II/III- Family Maintenance/Reunification**
**CSW, February 1996 through September 1996**
**Emergency Response CSW, September 1996 through July 1997**
**Dependency Investigator, July 1997 through June 2000**
**Torrance DCFS Office**
**Dependency Investigator, June 2000 through December 2001**

As a Children's Social Worker Trainee/I/II/III, I conducted child abuse investigations and determined the safety and risk factors of children in their home. I received ongoing and extensive training on the roles and responsibilities of a Children's Social Worker. I followed the Departmental and State mandates, Penal Code, DCFS policy and procedures to investigate referrals assigned as children in immediate risk of abuse and/or neglect. I conducted investigations, gathered evidence and statements from witnesses and professionals, consultated with superiors, law enforcement, medical experts, etc. and determined whether DCFS intervention and/or removal was warranted. I dispositioned the allegations of referrals/promoted Substantiated referrals warranting removal to cases and prepared initial court reports. I worked with CWS/CMS database and all associated databases, including but not limited to SDM Safety and Risk Assessment tools.

As a Dependency Investigator, I conducted in-depth investigations and evidence gathering once children were removed from the care of their parents. These investigations provided the information required to provide amended petitions and reports to the Juvenile Court regarding the need for ongoing detention and placement and case plan services to the children and families involved. Case plans were developed, consultation with all appropriate professionals and witnesses, in addition to reporting to law enforcement, Courts, Adoption and Family Law Courts, State Licensing, Child Support, Child Support, etc. Received court and departmental commendations on high-risk investigations, casework and criminal testimony which led to the conviction of a child abuse perpetrator. Worked with families in the reunification process, monitored visitation, provided referrals to clients, prepared legally sufficient court reports and amended petitions and made recommendations to the court regarding dependency status, visitation and case plan. Received court commendations for "Excellent Report".

### DCFS Headquarters
### Acting Administrative Services Manager, Contract Management, April to July 1998

Worked with DCFS Program Managers and Community Family Preservation Network Agencies, assessing, evaluating and extending contracts for continued services to families.

### DCFS Lakewood Office
### Children's Social Worker Intern, August 1994-May 1995

I interviewed and was selected as a paid DCFS University Intern through the University Consortium between DCFS and California State University, Long Beach. During this internship, I was assigned a caseload which included children who were in foster care and those who had recently reunited with their parents. I was responsible for weekly home visits, monitoring visitation between children and parents, school visits and collateral consultation with teachers, counselors, medical professionals and family members. I learned Departmental policies and procedures and was able to have a hands-on approach to working with the families served by DCFS. I was responsible for finding appropriate foster care/group home placements for youth and writing court reports to the Juvenile Court.

# EXHIBIT 4

Conditionally filed under seal

# EXHIBIT 5

Conditionally filed under seal

# EXHIBIT 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ABHIJIT PRASAD,                    )
                                   )
              Plaintiff,           )      **ORIGINAL**
                                   )
    vs.                            )   Case No.:
                                   )   5:15-cv-04933-BLF
SANTA CLARA COUNTY DEPARTMENT )
OF SOCIAL SERVICES, GAIL           )
SIMMONS, GUADALUPE ACEZES, and)
DOES 1-20,                         )
                                   )
              Defendants.          )
_____ )


DEPOSITION OF RONNI SMITH, PMK


DATE:          Friday, December 1, 2017

TIME:          1:03 o'clock p.m.


LOCATION:      PULONE REPORTING SERVICES
               1550 The Alameda, Suite 150
               San Jose, California 95126


REPORTED BY:  THERESA WARD, C.S.R. 9587



800.200.1252  pulone.com
Global Reporting & Videoconferencing
Excellence Since 1978

1    hearing?

2         A    No, I don't recall.

3         Q    Anyone else besides Ms. Chancellor?

4         A    For the Department?

5         Q    Yes.

6         A    No.

7         Q    Did Mr. Prasad have counsel?

8         A    No.

9         Q    And Mr. Lane was the hearing officer?

10        A    Yes.

11        Q    My understanding is the testimony you're able to

12   give as a PMK is limited to how to do an adjustment in

13   CWS/CMS as a result of a grievance hearing; is that

14   correct?

15        A    Yes.

16        Q    And in this matter, for 2015, there was no

17   grievance hearing; is that correct?

18             MR. SCHMID:  Objection.  The question's vague.

19   Calls for speculation.

20             THE WITNESS:  There was not a grievance hearing

21   for 2015.

22   BY MS. WEISSBURG:

23        Q    That's correct, is it not?

24        A    That's correct.

25        Q    Are the procedures identical for a grievance

24

1    hearing modification in CWS/CMS and a modification due to a

2    reason other than a grievance hearing?

3         A    They're similar, yes.

4         Q    Are they identical?

5         A    No.

6         Q    Okay.  What's different?

7         A    There's not a grievance hearing involved in the

8    decision to make the amendment.

9         Q    What authority is there to make the amendment if

10   there is not a grievance hearing?

11        A    Managerial level.

12        Q    What do you mean, "managerial level"?

13        A    A conversation at management level to discuss the

14   outcomes of the investigation.

15        Q    Okay.

16        A    And whether or not that 8583 needs to be amended.

17        Q    Was there an investigation in 2015, to your

18   knowledge?

19        A    No.

20        Q    Okay.  Was there a management meeting in 2015 to

21   discuss modification of CWS/CMS in this matter?

22        A    I don't know.

23        Q    In order to modify CWS/CMS, what basis do you

24   have to have statutorily?

25        A    The recommendation from the grievance review

25

1    officer to the Social Services agency director, who then

2    issues a letter for that amendment, and then I enter it

3    into the database.

4         Q    Okay.  In this case, do you have a recommendation

5    from a grievance review officer for 2015?

6         A    No.

7         Q    In this case, do you have any documents from a

8    grievance review officer authorizing that modification in

9    2015?

10        A    No.

11        Q    In this case, do you have any meetings from

12   administration ordering the modification statutorily?

13        A    I do not.

14        Q    Okay.  Do you know if such an administrative

15   order exists?

16        A    I don't know about an order.

17        Q    Do you know of any documents that exist that

18   modify -- that are authorizing modification of CWS/CMS in

19   2015?

20        A    No.

21             MS. WEISSBURG:  I have no further questions for

22   this witness.  This deposition is over.

23             MR. SCHMID:  You might want to ask the witness

24   whether or not she had any contact with -- not as a PMK,

25   any contact with the DOJ regarding listing concerning

26

1    the --

2              MS. WEISSBURG:  No.  She's not here in that

3    capacity.  I will call her back if you believe she has

4    testimony as a percipient witness to DOJ conversations.  I

5    will call her back.  But if you're going to hold me to this

6    nonsense about the PMK and the scope, I'm ending this

7    deposition because she has nothing at all to say about 2015

8    and modifications to CWS/CMS.

9              MR. SCHMID:  Let me respond to that.  This

10   witness is the person most knowledgeable regarding

11   correcting BCI-8583 reports in 2015.

12             MS. WEISSBURG:  After a grievance hearing.

13             MR. SCHMID:  Can I finish?

14             MS. WEISSBURG:  After a grievance.  She is very

15   specific.

16             MR. SCHMID:  My understanding is that's the only

17   policy the County has for correcting a BCI-8583.  That's

18   why she's here.  There's nobody else for your scenario,

19   which is some kind of corrected report, when there is not a

20   Gomez hearing and -- let me finish.  Let me finish.  You

21   are not going to -- if you re-notice this deposition for

22   this witness as a percipient witness, you are not going to

23   get a deposition.  Today's your shot.  Okay?

24             And one more thing.  When I asked you -- when I

25   suggested to you you might want to ask this witness

27

1    something, I think you might want to take me up on it

2    because somewhere down the road, when you start complaining

3    about not having the opportunity to get information from

4    this witness, you are not going to have any legs to stand

5    on.

6              MS. WEISSBURG: Really?

7              MR. SCHMID: Yes.

8              MS. WEISSBURG: Well, I think I'll just take you

9    up on it, then. Let's just see where we go.

10   BY MS. WEISSBURG:

11        Q    In this matter for the 2015 modification, did you

12   contact the Department of Justice?

13        A    Yes.

14        Q    And why did you contact the Department of

15   Justice?

16        A    I was asked to.

17        Q    Who asked you to?

18        A    Harrison Taylor.

19        Q    And when did you contact the Department of

20   Justice?

21        A    In April of 2015.

22        Q    Did Harrison Taylor tell you what to ask the

23   Department of Justice?

24        A    To verify whether or not Mr. Prasad was on the

25   DOJ (sic).                                                    28

```
 1        Q    And did he tell you why he wanted you to verify

 2   that?

 3        A    He was provided information from Mr. Prasad's

 4   attorney that he was -- that a self inquiry happened and he

 5   was not on the DOJ.

 6        Q    Mr. Taylor said he was contacted by Mr. Prasad's

 7   attorney?

 8        A    Correct.

 9        Q    Or he had information as a result of something?

10        A    Correct.

11        Q    There is a big difference.  I'm asking if

12   Mr. Taylor told you he talked to Mr. Prasad's attorney.  Do

13   you have any knowledge of that?

14        A    I just recall that attorney was in the

15   conversation.

16        Q    And he wanted you to contact the Department of

17   Justice to see if Mr. Prasad was in the system?

18        A    Correct.

19        Q    And is there a reason he said he couldn't do it?

20        A    No.

21        Q    Did he -- did you ask him if he could do it?

22        A    No.

23        Q    Okay.  And did you contact the Department of

24   Justice?

25        A    Yes.
```

1        Q    And what date did you contact them?

2        A    A week after Mr. Prasad, so April 13th, 14th.

3        Q    And DOJ verified that he was not in their system?

4        A    Yes.

5        Q    Did DOJ say that they had rejected the prior

6    submission?

7        A    No.

8        Q    Did you ask them if they had rejected the prior

9    submission?

10       A    Not for this case.

11       Q    Did you check the logs to see if it had been sent

12   out in this case?

13       A    That's not my role.

14       Q    I didn't ask that question.  I asked you if you

15   checked the logs to see --

16       A    No.

17       Q    Okay.  And DOJ verified Mr. Prasad was not in the

18   system?

19       A    Yes.

20       Q    Did you ask DOJ what to do next?

21       A    No.

22       Q    Did DOJ tell you anything else?

23       A    Yes.

24       Q    What did they tell you?

25       A    That Mr. Prasad was not on the DOJ for the 2009

30

1    incident, and he was not on the DOJ for the 2015 incident,

2    but the 2015 incident was new, so it could be 30 days

3    before it shows in the database.

4         Q    Okay.  And is Mr. Prasad -- have you verified

5    he's, in fact, in the system for 2015?

6         A    No.

7         Q    Is that because that's not your job?

8         A    My role changed in the Department, yes.

9         Q    Okay.  To your knowledge, did anyone in the

10   Department verify that Mr. Prasad was in the system for the

11   2015 incident?

12        A    No.

13        Q    Okay.  To your knowledge, is Mr. Prasad in CACI

14   right now?

15        A    I don't know.

16        Q    Anything else from DOJ?

17        A    That was it.

18        Q    And when you got that information, what did you

19   do with it?

20        A    Provided the information to Mr. Taylor.

21        Q    Anybody else?

22        A    No.

23        Q    Did you put anything in writing?

24        A    No.  It was by phone.

25        Q    So did Mr. Taylor, when he gave you these

                                                              31

1    instructions, did he send you anything in writing?

2         A    No.  It was by phone.

3         Q    Okay.  Did he ever follow up by e-mail or a

4    letter with his instructions?

5         A    No.

6         Q    After you gave him the information -- it was via

7    phone only?

8         A    Correct.

9         Q    Did he give you any instructions?

10        A    No.

11        Q    Did he ask you to do anything else?

12        A    No.

13             MS. WEISSBURG:  Okay.  We're done.

14             MR. SCHMID:  Okay.

15             THE COURT REPORTER:  Do you want a copy of this?

16             MR. SCHMID:  (Counsel nodded in the affirmative.)

17    Thank you.

18             (Whereupon, the proceedings were concluded at

19             1:43 o'clock p.m.)

20                          -o0o-

21

22

23

24

25                                                              32

1
2   I certify under penalty of perjury under the laws of the
3   State of California that the foregoing is true and correct.
4
5
6
7   Date                , 2017
                          Ronni Smith, PMK
8
                        -o0o-
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

PULONE REPORTING SERVICES    800.200.1252    www.pulone.com
CERTIFIED SHORTHAND REPORTING & VIDEOCONFERENCING SERVICES

1   STATE OF CALIFORNIA     )
                            )   ss.
2   COUNTY OF SANTA CLARA   )

3

4               I, THERESA WARD, a Certified Shorthand Reporter

5   in and for the State of California, hereby certify that the

6   witness in the foregoing deposition,

7                       RONNI SMITH, PMK,

8   was by me duly sworn to tell the truth, the whole truth,

9   and nothing but the truth in the within-entitled cause, and

10  that the foregoing is a full, true, and correct transcript

11  of the proceedings had at the taking of said deposition,

12  reported to the best of my ability, and transcribed under

13  my direction;

14              That before completion of the deposition, review

15  of the transcript [X] was [ ] was not requested.  If

16  requested, any changes made by the deponent and provided

17  during the review period have been attached here.

18

19  Date December 15, 2017        Theresa Ward, C.S.R. 9587

20

21

22

23

24

25                                                         34

# EXHIBIT 7

Conditionally filed under seal

# EXHIBIT 8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ABHIJIT PRASAD,

                Plaintiff,

    -vs-

SANTA CLARA COUNTY DEPARTMENT OF
SOCIAL SERVICES, GAIL SIMMONS,
GUADALUPE ACEZES, and DOES 1-20,

                Defendants.

_____/

CASE NO.:

5:15-cv-04933-BLF

# ORIGINAL

DEPOSITION OF GUADALUPE ACEZES

Pages 1 to 60

DATE:          November 30, 2017

TIME:          2:28 p.m.

LOCATION:     PULONE REPORTING SERVICES
                1550 The Alameda, Suite 150
                San Jose, California 95126

REPORTED BY:    ALICIA M. C. KEMP
                Certified Shorthand Reporter
                License Number C-6718



P. Pulone.
reporting services

800.200.1252  pulone.com
Global Reporting & Videoconferencing
Excellence Since 1978

1    I can cover.  But mostly, I have someone else cover.  I

2    have delegation.

3         Q.   When documents -- do your people send documents

4    to the State of California?

5         A.   I don't know.  That must be somebody else's job

6    to send documents.

7         Q.   None of your -- you're not responsible, your

8    people, for sending documents to the State of

9    California?

10        A.   Well, like the mailing, mailing the -- what is

11   it called?  The DOJ, yes.

12        Q.   So who is responsible for mailing the DOJ?

13        A.   Clerical --

14        Q.   Okay.

15        A.   -- for mailing, yes.

16        Q.   So have you ever been told that your name

17   appears on documents at the Department of Justice?

18        A.   Yes, I found that.

19        Q.   When did you find out?

20        A.   I don't know how I even hear it or how they had

21   my name, you know.  Since I've been there a long time, I

22   don't know, and we have changes of supervisors,

23   managers.  I notice it was there, but I never said

24   anything.  I just knew that my name was showing up, but

25   I just, you know, never really did anything.                25

1      Q.   Now, did you ask why your name was showing up?

2      A.   Not really.

3      Q.   You didn't worry about your name showing up in

4    the Department of Justice?

5      A.   No, not really.

6      Q.   Did anybody tell you what it meant to have your

7    name there?

8      A.   No.

9      Q.   So nobody told you that you were responsible

10   for sending reports to them?

11     A.   No.  We were just mailing, but not -- we were

12   just mailing those things.

13     Q.   So you put it in an envelope and you send it

14   out?

15     A.   Yes.

16     Q.   How does your name get on there?

17     A.   Because I think when, if the report --

18          MR. SCHMID:  Don't guess or speculate.

19          Go ahead.

20          THE WITNESS:  If the report was incomplete,

21   then it will come back, and you have my name.  But the

22   person doing that desk will give it to the worker whose

23   name is in the DOJ, and then it was their responsibility

24   to return it back in the basket for us.

25   BY MS. WEISSBURG:

26

1      Q.   You understood that?

2      A.   Yes.

3      Q.   The next document, which is 676, what is your

4  understanding what that is?

5      A.   It's a copy of a DOJ.

6      Q.   And do you -- is that what you usually mail?

7      A.   Oh, when they drop it off, yeah, from, but I

8  don't mail.

9      Q.   Who mails it?

10     A.   It's, there is a clerical function that does

11  that, not me.  I don't mail that.  I never mail those.

12     Q.   Okay.  And then there is another page that has

13  the names of the children.  Do you mail that?

14     A.   No, I do not.

15     Q.   And the next thing is a Notice of Child Abuse,

16  Central Index Listing.  Do you mail that?

17     A.   Hmm-um, I don't mail.  Myself, I don't.

18     Q.   Do your staff mail it?

19     A.   Yes.

20     Q.   Okay.  So your staff get these and they mail

21  them to who?

22     A.   That is for the subject or they call it -- I

23  forget what they call it.  The other one, it goes to the

24  Department of Justice.

25     Q.   Okay.  And this one goes to?

28

1    A.    It goes to the --

2    Q.    Perpetrator?

3    A.    -- perpetrator.

4    Q.    Okay.  There is attachments with it.

5    A.    Yes.

6    Q.    Now, when your staff send this first page to

7    the Department of Justice that we talked about just

8    now --

9    A.    Um-hmm.

10   Q.    -- 676 and 677, do you have a log --

11   A.    Yes.

12   Q.    -- that shows which ones you mailed?

13   A.    Yes.

14   Q.    And where is the log kept?

15   A.    In the database.

16   Q.    What do you mean, in a database?

17   A.    There's -- it's spreadsheet, we have a

18   database.

19   Q.    Spreadsheet database.  And who controls the

20   spreadsheet, database?

21   A.    The person who mails, who mails that, the

22   recording on the spreadsheet.

23   Q.    And when is the recording done on the

24   spreadsheet?

25   A.    They do it as they see it in the basket.  They

29

1    take care of it right away. I don't want to say because
2    I don't know how often it comes. I don't keep an eye on
3    that basket only --
4        Q.   Okay.
5        A.   -- but that is where it goes.
6        Q.   Now, in -- were you responsible for the people
7    that were mailing these things in 2009 and '10?
8        A.   Well, I've been the lead for a long time, so
9    whatever, whoever has those different desks, what is it
10   called, different desk duties, mails or just -- that is
11   how it is.
12       Q.   So you get it in your basket. Do your staff
13   make copies of what they get or do they just log it and
14   put it in an envelope?
15       A.   I think -- I don't know about right now, the
16   process. I haven't been involved for a long time. But
17   before, I do remember that we used to make copies
18   sometimes and we used to input it into the system, the
19   DOJ system. But I do know that that DOJ system,
20   spreadsheet, still is active.
21       Q.   Okay. When you say you put it in the DOJ
22   system, are you talking --
23       A.   Not DOJ system, in the spreadsheet that record
24   that DOJ into the system.
25       Q.   So your staff would enter what information in

30

1    the spreadsheet?

2        A.   Um, there is some procedure there.  We had a

3    procedure where they have to follow, like the person's

4    name, a case number, the date that it was sent.

5        Q.   Okay.  And the procedure that your staff did,

6    then they would -- would they make a copy of the

7    document and save that with the spreadsheet or would

8    they just go by the spreadsheet?

9        A.   No, I think they just go by the spreadsheet.

10       Q.   Now, have you been asked to look for 2010 to

11   see if there is a report in that spreadsheet for

12   Mr. Prasad?

13       A.   No.

14       Q.   Do you know if your staff were asked to look to

15   see if there was one mailed to Mr. Prasad?

16       A.   I don't recall, no.

17       Q.   Do you know if you were asked to look to see if

18   there was a report mailed to the Department of Justice

19   for Mr. Prasad?

20       A.   No.

21       Q.   Okay.  Do you know if your -- have you been

22   told whether your manager has been asked to look?

23       A.   Not that I know, no.

24       Q.   Does the Department of Justice contact you

25   about problems with things that are submitted to them?

31

1        A.    No, they don't.

2        Q.    So they just send stuff back with your name on

3    it?

4        A.    Yes.

5        Q.    What happens if you say, "I don't want to

6    answer this"?

7             MR. SCHMID:   Well, objection.   That calls for

8    speculation.

9             THE WITNESS:   I don't have to answer them.

10   It's just the letter they send, complete, goes back to

11   the worker.

12   BY MS. WEISSBURG:

13       Q.    The social worker?

14       A.    Who submitted that into our basket for mailing.

15       Q.    So whoever's name is on the document is who you

16   return it to?

17       A.    Yes.

18       Q.    Okay.   Do you have -- did you keep a log of the

19   returns that you would get from the Department of

20   Justice?

21       A.    It is the same as the one we have now.

22       Q.    The same spreadsheet?

23       A.    Yes.

24       Q.    How far back does the spreadsheet go?

25       A.    I don't know.   I really don't know.   I don't

32

1    foundation.

2          You can answer.

3          THE WITNESS: I mean, you can probably ask my

4    boss and she will search and view, but it's not up to

5    me.

6    BY MS. WEISSBURG:

7          Q.   Has anybody ever asked to search the

8    spreadsheet?

9          A.   Not that I know.

10         Q.   Okay.  When you get a document back from the

11   Department of Justice, you give it back to the worker?

12         A.   Yes.

13         Q.   But first, you put it, have your person put it

14   on the log; correct?

15         A.   If it's a return, no.  It's after they return,

16   after it's returned back in the basket, then it's

17   recorded again.

18         Q.   So a rejection from the Department of Justice

19   isn't recorded on your spreadsheet?

20         A.   When it's returned, when they send it to

21   like -- when they send it to us.

22         Q.   Okay.  You get them to report to the Department

23   of Justice that you mail; right?  You get the Department

24   of Justice form and you put it on the log and then you

25   mail the hard copy?

                                                              34

1      A.    That's right.

2      Q.    If the Department of Justice sends something

3  back, do you put that on the spreadsheet?

4      A.    Yes.

5      Q.    So it's recorded when it's rejected?

6      A.    When it comes back from the worker. We don't

7  do it when we just -- let's say we get it today. We

8  don't go into the system and put it in. We give it to

9  the worker. And when the worker returns it, that is

10  when we go in and say, resend or whatever.

11      Q.    So if you have a rejection from the Department

12  of Justice, how would anybody know?

13          MR. SCHMID: Well, objection. Calls for

14  speculation. The social worker would know, obviously.

15          THE WITNESS: I don't know.

16  BY MS. WEISSBURG:

17      Q.    So you have no way of knowing if the social

18  worker processes it or throws it in the garbage can?

19      A.    No idea, no. I don't know.

20      Q.    So has there ever been an audit of the

21  Department of Justice reports?

22      A.    Not that I know.

23      Q.    If there was an audit, who would they come and

24  talk to about the audit? Would it be you?

25      A.    My boss.

35

1    them?

2        A.    The ones that are returned incomplete?

3        Q.    No, the ones from the Department of Justice

4    that are sent out to people.

5        A.    They don't have my name.

6            MR. SCHMID:    That is not what she testified to.

7    BY MS. WEISSBURG:

8        Q.    If somebody does -- requests an inquiry from

9    the Department of Justice, they are told in a report

10   what county has the referral and who to contact.  Were

11   you ever told your name was appearing on there?

12       A.    No, not really.  No.

13       Q.    So you said earlier your name, you were told

14   your name appeared or you found your name?

15       A.    Well, it had on the return, incomplete, DOJ's,

16   it had my name, like, and that's from here, from -- but

17   the person who received the mail, because there is

18   different clerical who does different processing,

19   there's clerical who picks up the mail, opens the mail,

20   and so they knew that when they received that kind of

21   mail, they are supposed to give it to the worker.  So I

22   really, if it came with my name, I didn't even see that.

23   You know what I'm saying?

24       Q.    They never told you your name --

25       A.    It would just go like that to the worker.

38

1

2

3          I certify under penalty of perjury that the

4    foregoing is true and correct.

5

6    Date _____    _____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

59

REPORTER'S CERTIFICATE

1

2

3       The undersigned Certified Shorthand Reporter

4  in the State of California does hereby certify:

5       I am authorized to administer oaths or

6  affirmations pursuant to Code of Civil Procedure,

7  Section 2093(b), and prior to being examined, the

8  witness was duly administered an oath by me.

9       I am not a relative or employee or attorney or

10 counsel of any of the parties, nor am I a relative or

11 employee of such attorney or counsel, nor am I

12 financially interested in the outcome of this action.

13      I am the deposition officer who

14 stenographically recorded the testimony in the foregoing

15 deposition, and the foregoing transcript is a true

16 record of the testimony given by the witness.

17      Before completion of the deposition, review of

18 the transcript [x] was [ ] was not requested.  If

19 requested, any changes made by the deponent (and

20 provided to the reporter) during the period allowed are

21 appended hereto.

22      In witness whereof, I have subscribed my name

23 this _12th_ day of _December_, 20_17_.

24

25                    Alicia M.C. Kemp, CSR Number C-6718

# EXHIBIT 9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ABHIJIT PRASAD,                     )
                                    )
            Plaintiff,              )        **ORIGINAL**
                                    )
                                    )
        vs.                         )   Case No.:
                                    )   5:15-cv-04933-BLF
                                    )
SANTA CLARA COUNTY DEPARTMENT )
OF SOCIAL SERVICES, GAIL            )
SIMMONS, GUADALUPE ACEZES, and)
DOES 1-20,                          )
                                    )
            Defendants.             )
_____    )


DEPOSITION OF MELISSA SUAREZ, PMK

DATE:          Friday, December 1, 2017

TIME:          9:04 o'clock a.m.


LOCATION:      PULONE REPORTING SERVICES
               1550 The Alameda, Suite 150
               San Jose, California 95126


REPORTED BY:  THERESA WARD, C.S.R. 9587



800.200.1252  pulone.com
Global Reporting & Videoconferencing
Excellence Since 1978

1    procedure?

2            MR. SCHMID:  No.  She's a PMK.

3            MS. WEISSBURG:  Excuse me.  I asked her the

4    question, not you.  You want to testify, get sworn in, and

5    I'll ask you.

6            MR. SCHMID:  Objection.  Vague.  Expert, vague.

7            MS. WEISSBURG:  Thank you.

8    BY MS. WEISSBURG:

9        Q    Have you been designated, to your knowledge, as

10   the County's expert, PMK, person most knowledgeable on

11   CACI?

12       A    Yes.

13       Q    And when did that occur?

14       A    Approximately in the last month for purposes of

15   this hearing, deposition.

16       Q    So you've only been designated, to your

17   knowledge, as the PMK for this hearing on child abuse

18   central index policy and procedure?

19       A    Yes.

20           MR. SCHMID:  Reporting for 2015.

21           MS. WEISSBURG:  You're going to keep testifying,

22   and I'm going to get mad, and pretty soon, my patience is

23   going to run.  Please stop interrupting.  If you want to

24   make an objection, make one, but if you keep interrupting,

25   we are going to go down the street or we'll get the Court

19

```
1       A     It would have to be before 2005.

2       Q     So at least 12 years ago?

3       A     At least.

4       Q     Do you have a college degree?

5       A     Yes.

6       Q     And what is your college degree in?

7       A     I have a bachelor's, double major in psychology

8    and sociology, and I have a master's of social work.

9       Q     When did you get your master's?

10      A     I graduated in 1998.

11      Q     And what school did you go to?

12      A     San Jose State.

13      Q     And you said you were an ER manager.  You're

14   program manager 1; is that correct?

15      A     Correct.

16      Q     And is that the first level of management?

17      A     Yes.

18      Q     And what's the next level?

19      A     Program manager 2.

20      Q     And then?

21      A     Program manager 3.

22      Q     And then?

23      A     I think above that is the deputy director and

24   director.

25      Q     Other than Counsel, did you talk to anybody about
```

23

1    was our policy and procedure in regard to sending notices

2    to DOJ.

3         Q    Okay.  Are you aware of what the allegations are

4    regarding the notice that was sent to DOJ in 2015 in this

5    matter?

6         A    In general, yes.

7         Q    Okay.  And where did you get that information?

8         A    I believe in some discussions, trying to figure

9    out who might be best suited to be the PMK.

10        Q    Okay.  I'm confused.  Discussions with whom?

11        A    With our director, the director of our agency.

12        Q    And who is the director of your agency?

13        A    Franchesca Le Rue.  Also present was my manager,

14   Miday Tovar, and another manager, Meheret Sellasie.

15        Q    Can you spell the last person?

16        A    It's a challenge.  M-e-h-e-r-e-t, last name,

17   S-e-l-l-a-s-i-e, I believe.

18        Q    Now, were you present at that meeting?

19        A    Yes.

20        Q    Okay.  Anybody else?

21        A    No.

22        Q    What was discussed at the meeting?

23        A    That we needed to produce someone who could be

24   the person most knowledgeable regarding reporting to DOJ.

25        Q    And did the case name come up?

30

1     A     Did the case name come up?  I believe so, yes.

2     Q     And when did the meeting take place?

3     A     I would have to guess, but approximately in the

4  last few months.

5     Q     More than 30 days ago?

6     A     Likely more than 30 days ago.

7     Q     More than three months ago?

8     A     Likely not more than three months ago.

9     Q     Okay.  How about two months ago?

10    A     Approximately, yes.

11    Q     And what does -- I'm going to mispronounce it.

12  And I apologize in advance -- Meheret do?

13    A     Meheret is a manager in the administrative

14  bureau, and she -- her scope is including the custodian of

15  records.  So that's someone that she supervises.

16    Q     Do you know what her title is, her payroll title?

17    A     I believe it is project manager.

18    Q     A project manager is her payroll classification?

19    A     Yes, project manager.

20    Q     And is that higher than a program manager 1?

21    A     Yes.

22    Q     Higher than a program manager 2?

23    A     No.

24    Q     Okay.  Do you know who -- is that a woman?

25    A     Yes.

31

```
 1        Q    Do you know who she reports to?
 2        A    She reports to program manager 3, Stanley Lee.
 3        Q    Did Franchesca Le Rue advise the group that she
 4    knew me?
 5        A    She said that she did know you.
 6        Q    Okay.  What did she say?
 7        A    She said that she knew you from her work in
 8    Los Angeles and that you knew social work policy and
 9    procedure well.
10        Q    That's all?
11        A    Yes.
12        Q    Was there any recommendations from her?
13        A    As to?
14        Q    Anything.
15        A    I don't believe so.
16        Q    Did she say how the PMK should testify?
17        A    No.
18        Q    Did she suggest that somehow, my knowledge was
19    going to be an obstacle for whoever was designated?
20        A    I don't believe so, just that she said that you
21    were knowledgeable.  It wasn't about what needed to be said
22    as the PMK.  It was about who needed to be the PMK, who was
23    best suited to be the PMK.
24        Q    And how did you get picked?
25        A    Franchesca believed that I should be the one to
```

1  be the PMK, either Miday or I, and then it came down to me.

2      Q   Okay.  And why was -- I'm going to mispronounce

3  it again -- Meheret in the meeting?

4          MR. SCHMID:  Objection.  May call for

5  speculation.

6              You can answer.

7          THE WITNESS:  I didn't request the meeting, so I

8  don't know.

9  BY MS. WEISSBURG:

10     Q   How long did the meeting last?

11     A   Less than an hour.

12     Q   Who called the meeting?

13     A   I believe it was Franchesca.

14     Q   Did you receive written notice of the meeting?

15     A   I received an invite in my e-mail, in my Outlook

16 calendar.

17     Q   What did the invite say?

18     A   It's hard to recall exactly what it said, but it

19 requested a meeting with Franchesca in regard to the PMK.

20     Q   Okay.  Did it have Mr. Prasad's name in it?

21     A   I don't recall.

22     Q   Do you still have the invite?

23     A   Likely, yes.

24     Q   Did the invite have any instructions?

25     A   No, I don't believe so.  I would have to review

33

 1           MS. WEISSBURG:  I'm going to show this to
 2  Counsel.  It's a blowup of one of the screen shots that he
 3  sent me, and it's kind of hard to read.  Can you read the
 4  date on there for submission?
 5           MR. SCHMID:  Well, for the record, what you've
 6  handed me is -- unfortunately, I realize you tried to blow
 7  it up, but it doesn't show the whole screen, and obviously,
 8  there's things missing here.  And I don't know what's
 9  missing, so I think your question calls for speculation.
10           MS. WEISSBURG:  That isn't my question.  I
11  understand your objection.
12  BY MS. WEISSBURG:
13       Q    For the "Allegation, Conclusion History," can you
14  see that?
15       A    I can see that box.
16       Q    Okay.  There is a couple of different dates in
17  there.  Can you see those dates?
18       A    Yes.
19       Q    And what dates do you see?
20       A    I see 4/7/2015 and 2/9/2010.
21       Q    Now, would you agree that the date from 2015, as
22  the PMK, is an error since there was no investigation in
23  2015?
24           MR. SCHMID:  Objection.  Vague.  Calls for
25  speculation.  Misleading.
                                                        101

```
1        A    They may.

2        Q    Are you guessing?

3        A    No.  They may.  If they have an open

4   investigation, then they have access to what our county

5   has.  If they don't, they do not.

6        Q    Wait a sec.  If a new County opens up an

7   investigation in CWS/CMS, are you saying that county has

8   direct access to the records from Santa Clara County from

9   2015?

10       A    My understanding is yes, only if they have

11  something open and assigned in their county, yes.

12  Otherwise, if they are doing an inquiry where there is not

13  an open investigation, no.

14       Q    Can you go into Los Angeles County records right

15  now and look at a referral from Los Angeles County that's

16  closed on their system?

17            MR. SCHMID:  Okay.  Objection.  It's vague.

18            MS. WEISSBURG:  I want to know how she's basing

19  her opinion.

20            MR. SCHMID:  Are you going to let me object?

21            MS. WEISSBURG:  Okay.  Go ahead.

22            MR. SCHMID:  Objection.  Vague.  Calls for

23  speculation.  It's also outside the scope of her PMK

24  designation for the County.

25            MS. WEISSBURG:  But she's testifying as a PMK
```

103

1    BY MS. WEISSBURG:

2        Q    When's the last time, as a PMK for the County on

3    CACI, that you had training on CWS/CMS?

4            MR. SCHMID:    Same objection.    She's only been the

5    PMK for a short period of time.    I don't know what your

6    question is asking for, Diane.

7    BY MS. WEISSBURG:

8        Q    Do you understand my question?

9        A    I do.    As the PMK, I have had zero training on

10   CWS.

11       Q    And prior to becoming a PMK, when was the last

12   time you had training on CWS/CMS?

13           MR. SCHMID:    Same objections.

14           THE WITNESS:    I don't know.    Sometime in the last

15   few years.

16   BY MS. WEISSBURG:

17       Q    What is the last few years?    More than five?

18       A    Less than five.

19       Q    More than four?

20       A    Probably three years or so, approximately.

21       Q    And when was the last time you had specialized

22   training on CACI?

23           MR. SCHMID:    Same objections.

24           THE WITNESS:    Specialized training?    Have I

25   attended a specialized training on CACI?    Maybe five years

105

```
 1
 2    I certify under penalty of perjury under the laws of the
 3    State of California that the foregoing is true and correct.
 4
 5
 6
 7    Date                        , 2017
                                      Melissa Suarez, PMK
 8
                              -o0o-
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

111

PULONE REPORTING SERVICES    800.200.1252    www.pulone.com
CERTIFIED SHORTHAND REPORTING & VIDEOCONFERENCING SERVICES

STATE OF CALIFORNIA   )
                      )  ss.
COUNTY OF SANTA CLARA )


        I, THERESA WARD, a Certified Shorthand Reporter
in and for the State of California, hereby certify that the
witness in the foregoing deposition,

                MELISSA SUAREZ, PMK,

was by me duly sworn to tell the truth, the whole truth,
and nothing but the truth in the within-entitled cause, and
that the foregoing is a full, true, and correct transcript
of the proceedings had at the taking of said deposition,
reported to the best of my ability, and transcribed under
my direction;

        That before completion of the deposition, review
of the transcript [X] was [ ] was not requested.  If
requested, any changes made by the deponent and provided
during the review period have been attached here.

Date DECEMBER 15, 2017         Theresa Ward, C.S.R. 9587

112

# EXHIBIT 10

Conditionally filed under seal

EXHIBIT _____11_____

Case 5:15-cv-04933-BLF Document 101-2 Filed 12/31/18 Page 104 of 129

Cross Program Protocols
13-2 Reporting to the Department of Justice (DOJ)

- Reference Points
- DOJ Reporting Law
- Definition of an Active Investigation
- Definition of Substantiated, Inconclusive and Unfounded Reports
- Who is Responsible for Submitting the DOJ Report
- What Must Be Reported
- What Not to Report
- Completing and Documenting the Child Abuse or Severe Neglect Indexing From (BCIA 8583) in CWS/CMS

- Sending the Child Abuse or Severe Neglect Indexing From (BCIA 8583) to the Department of Justice
- Notifying Suspects of the Listing Their Names on the CACI
- Suspect Challenges Child Abuse Central Index (CACI) Listings
- New Allegations on an Open Referral/Case
- How a Person Finds Out if They are Listed on the CACI
- Record Keeping
- Other References

Reference Points

Effective Date: 5/1/08

Last Updated: 04/17/2014

Legal Basis:

- California Department of Social Services (CDSS) All County Letter (ACL) #12-21: Assembly bill 717, Chapter 468, Statues of 2011 Child Abuse Central Index
- Assembly Bill (AB) 717
- Child Abuse and Neglect Reporting Act (CANRA) which includes:
  Penal Code (PC) § 11164 through 11174.31
- A Guide to Reporting Child Abuse to the Department of Justice

Non CWS/CMS Forms:

- Notice of Child Abuse Central Index Listing (SOC 832)
  - (SOC 832) Spanish
- Grievance Procedures for Challenging Reference to the Child Abuse Central Index (SOC 833)
  - (SOC 833) Spanish
- Request for Grievance Hearing (SOC 834)
  - (SOC 834) Spanish
- Child Abuse Central Index Self Inquiry Search Request

CWS/CMS Forms:

- Referral Management Section: Child Abuse Form (BCIA 8583)

| Overview | Social workers are required to submit the results of certain child abuse investigations to the *California State Department of Justice (DOJ)* when the |
|---|---|

SCC000332

disposition of the allegation is substantiated. The Child Abuse or Severe Neglect Investigation Form (BCIA 8583) is used to make the report to DOJ.

The Child Abuse Unit of the DOJ uses the information supplied on the SS8583 to maintain a database called the Child Abuse Central Index (CACI). The CACI is a central state repository of substantiated and inconclusive reports of child abuse submitted since 1965. The DOJ Child Abuse Unit receives, documents, enters, and searches for data contained in this database, which helps the DOJ track abusers as they change residences and counties.

Because this information is available to social workers and may assist in a future investigation, *it is imperative that SS 8583 be completed accurately, forwarded promptly, and updated when new information becomes available* . Accuracy is critical to prevent individuals from being erroneously labeled child abusers.

The integrity and accuracy of the CACI is also vital to child protection agencies that use this database for clearances when making placements in the homes of relatives and others.

< Return to OPP Table of Contents | ^ Back to Top of Page

DOJ Reporting Law

At the conclusion of an *active investigation* (see section below) on a referral alleging known or suspected child abuse or severe neglect, a written report must be forwarded to DOJ when both:
  • The allegation is mandated by law to be reported
    ◦ See section below *What Must Be Reported.*
  and
  • The disposition of the allegation is substantiated.



To comply with mandatory reporting laws, local child welfare agencies are:
  • Responsible for notifying "known or suspected child abusers" that they have been reported to the California Child Abuse Central Index.
  • Required to retain child abuse investigative reports filed with the DOJ until the person listed in the CACI has reached the age of 100, which is also the age at which the listing is removed from the CACI.
  • Responsible for the accuracy and completeness of the child abuse investigative reports.
  • Required, under certain conditions, to provide "known or suspected child abusers"  with redacted copies of the suspected child abuse reports.
    See *OPP Chapter 13-2.1: Challenges to Child Abuse Central Index (CACI) Listings.*

The liability for false or inaccurate reports lies with the local child welfare agency. The law applies to both child welfare agencies and law enforcement agencies. Law enforcement has an independent duty to notify the suspected child abuser.

< Return to OPP Table of Contents | ^ Back to Top of Page

SCC000333

| | |
|---|---|
| Definition of an Active Investigation | An "active investigation" is an investigation that meets one or both of the following descriptions: |

1. Any investigation or assessment by any DFCS social worker that results in the Santa Clara Juvenile Court sustaining a dependency petition on behalf of the child pursuant to Welfare and Institutions Code (WIC) Section 300.
   - The suspect must be interviewed or an attempt must be made to interview the suspect as part of the dependency action for purposes of submitting the Child Abuse or Severe Neglect Indexing Form (BCIA 8583) to the DOJ.
     - If the suspect is unavailable or unwilling to be interviewed, the social worker documents on the BCIA 8583 the reason why the suspect was not interviewed.

OR

2. Any investigation or assessment by a DFCS social worker that includes all of the following:
   (a) It leads the social worker to conclude that the report of suspected child abuse is substantiated.
   AND
   (b) The victim(s), the suspect(s) and witness(es) have been interviewed or an attempt has been made to interview the suspect.
     - If the victim(s), the suspect(s) or witness(es) were unavailable or unwilling to be interviewed, the social worker documents on the BCIA 8583 the reason why the individual was not interviewed.
   AND
   (c) It is based upon the social worker's review of five or more of the following sources of information about the report of suspected child abuse or neglect:
     - Interview of the child victim
     - Interview of the suspect
     - Interview of the child's caretaker
     - Interview of any eyewitness to the abuse or neglect
     - Interview of extended family members
     - Previous abuse or neglect referrals for the child and/or family
     - The suspect's criminal record
     - Collateral medical psychological, educational, police, probation, parole, or social worker reports
     - Interview of collateral medical, psychological, educational, police, probation, parole, or social service personnel
     - Any open or closed service case files involving siblings or half-siblings
     - Any closed case files involving the child.

< Return to OPP Table of Contents | ^ Back to Top of Page

SCC000334

Definition of Substantiated, Inconclusive and Unfounded Reports

The social worker investigates the referral and determines into which category it falls, as defined by Penal Code (PC) 11165.12:

- Substantiated - There is evidence that makes it more likely than not that child abuse or neglect occurred.
- Inconclusive - Not unfounded but there is insufficient evidence to determine if abuse has occurred.
- Unfounded - Referral is determined to be false, the result of an accidental injury, or of a situation that does not constitute child abuse.

< Return to OPP Table of Contents | ^ Back to Top of Page

Who is Responsible for Submitting the DOJ Report

Any social worker who completes an investigation on a referral of child abuse or neglect is responsible for submitting a DOJ report, when the criteria for reporting exists.  Essentially, the reporting requirement applies to all DFCS case carrying social workers:

- Emergency Response social workers
- Dependent Intake (DI) social workers
- Continuing social workers
- Adoption social workers
- Voluntary Family Maintenance social workers
- Informal Supervision social workers

< Return to OPP Table of Contents | ^ Back to Top of Page

What Must Be Reported

Penal Code section 11169(a) requires DFCS to report to the DOJ Child Abuse Central Index "every case it investigates of known or suspected child abuse or severe neglect which is determined to be substantiated, other than cases coming within PC § 11165.2(b).

When an allegation is concluded as "substantiated", the following allegations or circumstances must be reported to DOJ:

- Physical abuse

- Sexual abuse

- Sexual exploitation

- Mental/emotional abuse which involves willfully causing or permitting the child to suffer, or inflicting thereon, unjustifiable mental suffering

- Severe neglect which includes:
  - The negligent failure of a person having the care or custody of a child to protect the child from severe malnutrition or medically diagnosed non organic failure to thrive, and

SCC000335

- ○ Those situations of neglect where any person having the care or custody of a child willfully causes or permits:
  - The person or health of the child to be placed in a situation such that his or her person or health is endangered, as proscribed by Section 11165.3, including the intentional failure to provide adequate food, clothing, shelter or medical care; and
  - Any child to suffer, or inflicting thereon, unjustifiable physical pain or mental suffering.

- Causing the death of a child by abuse or neglect

- Abandonment cases which involve the parent willfully abandoning the child under circumstances which constituted a serious danger to the child, meaning that without the intervention of another person or agency the child would have sustained severe or permanent disability, injury, illness or death

- Cruelty by a parent or guardian

< Return to OPP Table of Contents | ^ Back to Top of Page

What Not to Report

The following incidents are **not** to be reported:
- Unfounded reports (a report determined to be false, inherently improbable, or involving an accidental injury) (PC 11165.12)
- Reports determined to be Inconclusive (there is insufficient evidence to determine whether child abuse or neglect, as defined in PC 11165.6, has occurred.

- General neglect (PC 11165.2(b)); this also refers to a 300 Petition sustained solely on the basis of Section 300 (g)

- Emotional damage under WIC section § 300 (c), if based upon the parents' inability to provide appropriate care (PC11166)

- Consensual sexual acts between minors of a similar age, unless such acts include incest, sodomy, oral copulation, penetration with a foreign object, or statutory rape

- A positive toxicology screen at the time of the newborn's delivery, absent other risk factors (PC11165.13)

- Cases involving incarcerated parents in which the child was not willfully left at risk for death or severe injury

- Mutual fights between children (PC11165.6)

- Reports from adults stating that they were abused or molested as children, unless perpetrator has access to children and there is reason to believe the children may be at risk

SCC000336

- No adoption within one year of relinquishment

- Sibling abuse or neglect

See California Penal Code for Penal Code citations listed above.

< Return to OPP Table of Contents | ^ Back to Top of Page

---

Completing and
Documenting
the BCIA 8583
in CWS/CMS

Before creating the Child Abuse or Severe Neglect Indexing Form
(BCIA8583) in CWS/CMS, the social worker consults with his or her
supervisor to review the referral to verify that an active investigation was
completed and that the underpinnings of the investigation support a conclusion
of substantiated.

To make a report to the DOJ, social workers:
- *Create the Child Abuse or Severe Neglect Indexing Form (BCIA 8583) in the CWS/CMS referral.*
    - Choose Print Report from the drop down menu of File on the top toolbar.
    - Choose Referral Record in the Area of Interest drop down menu.
    - Choose Child Abuse Form (BCIA 8583) from the Report Name menu.
    - Click the Print Preview button in the dialog box to generate the SS8583.

- Complete form BCIA 8583 in CWS as follows:
    - Click on the name of the Suspect that appears in the Suspect window.
    - Click the Yes button to the question, "Suspect given written notice per PC 11169(B)?"
    - Enter the date the forms are generated and given to clerical for mailing.
    - Click "By Mail" under Delivery Method
        See  *A Guide to Reporting Child Abuse to the Department of Justice*.

- Click the OK button.

    CWS/CMS generates and automatically prints the:
    - Child Abuse or Severe Neglect Indexing Form
    - Notice of Child Abuse Central Index Listing (SOC 832)
    - Grievance Procedures for Challenging Reference to the Child Abuse Central Index (SOC 833)
    - Request for Grievance Hearing (SOC 834)

SCC000337

> **Note:** For links to forms translated in to Spanish click here

- Make a copy of the four documents.

- Place one set of the documents in the DOJ basket (located on the 1st, 2nd, and 4th floors.
- File one set of the documents in the case file.

- *Document in the Cross Report page* of the CWS/CMS referral that the Child Abuse Form was sent to the DOJ.
   - If a referral meets DOJ reporting criteria and is not sent to DOJ, explain why the report was not sent in the Narrative Description box.

< Return to OPP Table of Contents | ^ Back to Top of Page

| | |
|---|---|
| Sending the BCIA 8583 to the DOJ | The Emergency Response and Dependent Intake clerical staff at the Julian Office and the GFRC clerical staff at South County send the Child Abuse or Severe Neglect Indexing Form(BCIA S8583) to the Department of Justice (DOJ). After receiving the BCIA 8583 from the social worker, the clerical staff: |

- Mails the Child Abuse Form to the Department of Justice at the following address:
   - Department of Justice Bureau of Criminal Information and Analysis
   ATTENTION: Child Protection Program
   P.O. Box 903387
   Sacramento, CA 94203-3870
   Telephone: (916) 227-3285

- Logs into the DOJ Report database the:
   - Case number
   - Suspect's Name
   - Date the BCIA 8583 is sent to DOJ
   - Date the SOC832 is sent to the individual whose name is being referred to the DOJ. See the following section Notifying Individuals of the Listing Their Names on the CACI .

< Return to OPP Table of Contents | ^ Back to Top of Page

| | |
|---|---|
| Notifying Individuals of the Listing Their Names on the CACI | At the time a report is forwarded to the Department of Justice, the agency must notify in writing the known or suspected child abuser that he or she has been reported to the Child Abuse Central Index. There are three State forms used to inform a suspect that his or her name has been sent to the Department of Justice for listing on the Child Abuse Central Index (CACI). |

- Notice of Child Abuse Central Index Listing (SOC 832)

SCC000338

- ◦ Informs the person has been referred to the DOJ for listing on the CACI as the result of a completed child abuse investigation.
- ◦ Includes:
  - ▪ The victim's name
  - ▪ A brief description of the alleged abuse/severe neglect, including the date and location where it occurred
  - ▪ The individual's right to request a Grievance Hearing and instructions for requesting a hearing
  - ▪ A county contact person
  - ▪ He or she may inspect the referral documents as part of the Grievance Hearing Procedures.

- • Grievance Procedures for Challenging Reference to the Child Abuse Central Index (SOC 833)
  - ◦ A two-page document that explains the Grievance Hearing process and what the suspect must do to file a grievance to challenge his or her listing on the CACI.

- • Request for Grievance Hearing (SOC 834)
  - ◦ The form the suspect completes to request a Grievance Hearing.
  - ◦ See *OPP Chapter 13-2.1: Suspect Challenges to Name Listing on the CACI*.

The DOJ Desk clerical staff mails all three forms, the SOC 832, 833, and 834 to the suspect and logs into the DOJ Report database the date the Notification forms were sent to the individual.

< Return to OPP Table of Contents | ^ Back to Top of Page

| | |
|---|---|
| Suspect Challenges to CACI Listings | See OPP Chapter 13-2.1: Suspect Challenges to Name Listing on the CACI.<br><br>< Return to OPP Table of Contents | ^ Back to Top of Page |
| New Allegations on an Open Referral/Case | When a new allegation is received on an open referral/case, the social worker completes a new SS 8583 for the new allegation, if it is investigated and meets the DOJ reporting criteria stated previously.<br><br>< Return to OPP Table of Contents | ^ Back to Top of Page |
| How a Person Finds Out if They are Listed on the CACI | Any person may find out if he or she is listed in the Child Abuse Central Index (CACI) by submitting a notarized request to the Department of Justice (DOJ) at the address below. The inquiry must include the person's name, address, date of birth, and either a social security number or a California identification |

SCC000339

number. The form, Child Abuse Central Index Self Inquiry Search Request, may be sent to the person to complete for submittal to the DOJ.
- California Department of Justice
  Bureau of Criminal Information and Analysis
  Child Protection Program
  P. O. Box 903387
  Sacramento, CA 94203-3870

If the DOJ confirms that the person is listed on the CACI, the DOJ must inform the suspect of the date of the report and name of the submitting agency. In order to request a Grievance Hearing, the suspect is then responsible for mailing a written and signed request (Request for Grievance Hearing form) to DFCS within 30 calendar days of the date that the Notice of Child Abuse Central Index Listing and other forms were mailed to the person. When an individual requests, the social worker shall assist the individual in completion of the form necessary to initiate the request for the Grievance Hearing.

< Return to OPP Table of Contents | ^ Back to Top of Page

Record Keeping

Records related to substantiated reports sent to the Department of Justice (DOJ) must be retained until the person who is the subject of the referral reaches the age of 100 years.

< Return to OPP Table of Contents | ^ Back to Top of Page

Other References

🗎 Department of Justice Regulations for Child Abuse Reports Record Keeping

🗎 The information in this chapter is reformatted from the document: "Statement of Policy and Procedure- Reporting Suspected Child abuse and Neglect to the California State Department of Justice "Child Abuse Central Index"

- CWS/CMS Guide for Creating the Child Abuse Investigation Report

🗎 A Guide to Reporting Child Abuse to the Department of Justice

🗎 How to create more than One Copy of SS-8583 (Child Abuse Investigation Report on CWS/CMS)

- OPP Chapter 13-2.1: Challenges to Child Abuse Central Index (CACI) Listings

< Return to OPP Table of Contents | ^ Back to Top of Page

Dept of Family & Children's Services                     Santa Clara County SSA

SCC000340

EXHIBIT ___12___

# DFCS Online Policies & Procedures

<<< Return to OPP Table of Contents

## Handbook 13: Cross Program Protocols

13-2.1 Challenges to Child Abuse Central Index (CACI) Listings

### Cross Program Protocols
### 13-2.1 Challenges to Child Abuse Central Index (CACI) Listings

- Reference Points
- Overview
- How a Person Finds Out if They Are Listed on the CACI
- Forms for Notifying Individuals of Their Listing on the CACI

- When an Individual Challenges a CACI Listing
- Requests for Grievance Hearings
- Grievance Hearing Procedures
- Other References

| Reference Points |
| --- |
| Effective Date: 7/1/08 |
| Last Updated: 8/16/17 |

**Legal Basis:**

All County Letter (ACL) 07-53; Gomez v. Saenz Lawsuit Settlement

All County Information Notice (ACIN) NO. I-22-08; Implementation Activities for Gomez v. Saenz Lawsuit

**Non CWS/CMS Forms:**

Child Abuse Central Index Self Inquiry Search Request (BCIA4056)

Gomez Grievance Hearing Preliminary Review Worksheet (SC245)

Notice of Child Abuse Central Index Listing (SOC 832)
- (SOC 832) Spanish

Grievance Procedures for Challenging Reference to the Child Abuse Central Index (SOC 833)
- SOC833 (Spanish)

Request for Grievance Hearing (SOC 834)
- SOC834 (Spanish)

**CWS/CMS Forms:**

ONLY ENGLISH VERSIONS OF FORMS CAN BE CREATED IN CWS/CMS

Notice of Child Abuse Central Index Listing (SOC 832)

Grievance Procedures for Challenging Reference to the Child Abuse Central Index (SOC 833)

Request for Grievance Hearing (SOC 834)

**Overview**

Individuals whose names are referred to the California Child Abuse Central Index (CACI) are required to be informed that their names have been sent for listing on CACI. Those individuals have a right to challenge the listing of their name through an administrative grievance process.

Further, as a result of the Gomez v. Saenz settlement, county child welfare agencies were required to post during the month of May 2008 a notice to inform the public about

recourse for individuals who believe that their name was
referred to CACI incorrectly.

< Return to OPP Table of Contents | ^ Back to Top of Page

**How a Person Finds Out If They Are Listed on the CACI**

Any individual may find out if he or she is listed in the Child
Abuse Central Index (CACI) by:

- Submitting a notarized letter to the Department of
  Justice (DOJ) requesting the information.  The
  request must include the person's name, address,
  date of birth, and either a social security number or
  a California identification number.  The individual
  may use the Gomez CACI Self Inquiry.
    - California Department of Justice
      Bureau of Criminal Information and
      Analysis
      Child Protection Program
      P. O. Box 903387
      Sacramento, CA 94203-3870

If the DOJ confirms that the individual is listed on the CACI,
DOJ informs the individual of the date the report was made
and name of the submitting agency.  If the individual
believes that his or her name was submitted incorrectly, he
or she is then responsible for submitting a written request
to the local child welfare agency to request a Grievance
Hearing within 30 calendar days of the date that the Notice
of Child Abuse Central Index Listing (SOC832) was mailed to
the person.

< Return to OPP Table of Contents | ^ Back to Top of Page

**Forms for Notifying Individual's of Their Listing on the CACI**

The following forms have been developed by the State and
are to be used by county child welfare agencies when
contacting suspects about CACI listings:

- Notice of Child Abuse Central Index Listing (SOC 832)
- Grievance Procedures for Challenging Reference to
  the Child Abuse Central Index (SOC 833)
- Request for Grievance Hearing (SOC 834)

The forms are generated in CWS/CMS after a DOJ report is
created.

< Return to OPP Table of Contents | ^ Back to Top of Page

| When an Individual Challenges a CACI Listing | An individual may contact DFCS after receiving a Notice of Child Abuse Central Index Listing (SOC 832) for further explanation of the process.  If an individual contacts a DFCS staff person in response to a Notice of Child Abuse Central Index Listing or confirmation that his/her name is listed on the CACI, the DFCS staff person may either: |

- Instruct the individual to return the Request for Grievance Hearing (SOC834)
  or
- Refer the individual to the Administrative Support Bureau, (408) 501-6851, if the individual has further questions or requests assistance in completing the form necessary to initiate the request for the Grievance Hearing.

< Return to OPP Table of Contents | ^ Back to Top of Page

| Requests for Grievance Hearings | Upon receiving a Request for Grievance Hearing, the assigned Administrative Bureau staff initiates a preliminary internal review to assess the request, using the Gomez Grievance Hearing Preliminary Review Worksheet (SCZ45). The review includes: |

- Reviewing the child abuse case file to determine that:
  - An active investigation was completed.
  - There is supporting documentation.
    - The underlying documentation should include at a minimum:
      - The identity and contact information for the victim and witnesses.
      - The abuse or neglect that was alleged.
      - Where and when the abuse is alleged to have occurred.
      - What allegations were investigated.
      - What findings were made from the investigation
- Consulting with the social worker who completed the referral investigation.
- Confirming that the disposition of the allegations contained within the referral.
- Confirming that the underlying documentation supports a disposition of the allegation.

- Determining whether a juvenile dependency court found the allegation to be true.
  - No grievance hearing is required when a court of competent jurisdiction has determined that the suspected abuse or neglect has occurred.
- Determining whether the allegation of child abuse or neglect resulting in the referral to CACI is pending before the court.
  - No grievance hearing is required when the allegation of child abuse or neglect resulting in the referral to CACI is pending before the court.

| If the Gomez Hearing coordinatordetermines that.. | then the Gomez Hearing coordinator.. | |
|---|---|---|
| The individual's name was incorrectly submitted for listing on the CACI | Forwards the SCZ45 with Preliminary Review findings to the:<br>• Investigating social worker's SSPM.<br>• Administrative Support Bureau program manager (SSPM)<br>  • The Admin SSPM then forwards the form to the Emergency Response program manager. | |
| | The investigating social worker's program manager:<br>• Discusses the referral with the social worker who completed the investigation and the social worker's supervisor<br>• Returns the SCZ45 to the Gomez Hearing coordinator with written comment agreeing or disagreeing with the determination that the individual's name was incorrectly submitted for listing on the CACI. | |
| | If the ER Program Manager.. | then the Gomez Hearing coordinator.. |
| | Agrees that the individual's name was incorrectly submitted for listing on the CACI | • Sends to the DOJ:<br>  • A copy of the original SS8583.<br>  • A new SS8583, which states that supplementary information is being provided for a previously submitted SS8583. Department of Justice (DOJ) Address: DOJ 4949 Broadway, Room B216 Sacramento, CA 95820<br><br>• Downgrades the referral investigation disposition in CWS/CMS to inconclusive or unfounded.<br><br>• Responds to the suspect in writing, using County Response Letter to Suspect (SC219) to inform the suspect of the outcome of the review. |



| | | • Logs the outcome in the Administrative tracking file. |
| | Does not agree that the individual's name was incorrectly submittied for listing on the CACI | • Sets a Grievance Hearing.<br>• Logs the outcome in the Administrative tracking file. |
| The individual's name was correctly submitted the CACI | | • Sets a Grievance Hearing.<br>• Logs the outcome in the Administrative tracking file. |
| The individual's name was correctly submitted to the CACI, and the suspect does not have a right to a Grievance Hearing because the allegations are before the Court or have been sustained in a petition by the Court | | • Notifies the suspect in writing that he/she does not have a right to a Grievance Hearing.<br>  • Use the County Response Letter to Suspect (SC219) to inform the suspect of the outcome of the review.<br>  • If court procedures are pending, the Gomez Hearing coordinator requests that the grievant contact DFCS after the court proceedings are over, if the grievant wants to pursue a Gomez Hearing at that time.<br>• Logs the outcome in the Administrative tracking file. |

< Return to OPP Table of Contents | ^ Back to Top of Page

**Grievance Hearing Procedures**

The process for a Grievance Hearing is outlined in the document Grievance Procedures for Challenging Reference to the Child Abuse Central Index (SOC 833) which is sent to each individual whose name is referred to the CACI.

< Return to OPP Table of Contents | ^ Back to Top of Page

**Other References**

• OPP Chapter 13-2.1: Reporting to the Department of Justice (DOJ)

< Return to OPP Table of Contents | ^ Back to Top of Page

EXHIBIT ___13___

*TO BE TYPED OR PRINTED - PRESS FIRMLY - DO NOT USE FELT PEN*

# CHILD ABUSE INVESTIGATION REPORT
To be Completed by Investigating Child Protective Agency
Pursuant to Penal Code Section 11169
(SHADED AREAS MUST BE COMPLETED)

| R C N | FOR DOJ USE ONLY |
| A G Y | |

## A. INVESTIGATING AGENCY

1. INVESTIGATING AGENCY (Enter complete name and check type): ☐ POLICE ☐ WELFARE ☐ SHERIFF ☐ PROBATION

2. AGENCY REPORT NO./CASE NAME:

3. AGENCY ADDRESS: Street   City   Zip Code

4. AGENCY TELEPHONE: (   )   EXT:

5. NAME OF INVESTIGATING PARTY:   TITLE

6. DATE REPORT COMPLETED:   MO   DA   YR

7. AGENCY CROSS-REPORTED TO:   8. PERSON CROSS-REPORTED TO:

9. DATE CROSS-REPORTED:   MO   DA   YR

10. ACTION TAKEN (check only one box):
☐ (1) SUBSTANTIATED (Credible evidence of abuse)
☐ (2) INCONCLUSIVE (Insufficient evidence of abuse, not unfounded)

10A. SUPPLEMENTAL INFORMATION (Attach copy of original report)
☐ (a) INCONCLUSIVE   ☐ (c) ADDITIONAL INFORMATION
☐ (b) UNFOUNDED (false report, accidental, improbable)

11. Active investigation conducted per PC 11169(a)? ☐ Yes ☐ No*   Victim(s) contacted? ☐ Yes ☐ No*   Suspect(s) contacted? ☐ Yes ☐ No*   ☐ No Suspects
Witness(es) contacted? ☐ Yes ☐ No* ☐ No witnesses   *Explain in comments field A.12.

12. COMMENTS:

## B. INCIDENT INFORMATION

1. DATE OF INCIDENT: MO   DA   YR   2. TIME OF INCIDENT:   3. LOCATION OF INCIDENT:

4. NAME OF PARTY REPORTING INCIDENT:   TITLE:   5. EMPLOYER:   6. TELEPHONE: (   )

7. TYPE OF ABUSE (check one or more): ☐ (1) PHYSICAL ☐ (2) MENTAL ☐ (3) SEXUAL ☐ (4) SEVERE NEGLECT ☐ (5) GENERAL NEGLECT

8. IF ABUSE OCCURRED IN OUT-OF-HOME CARE, CHECK TYPE ☐ (1) FAMILY DAY CARE ☐ (2) CHILD CARE CENTER ☐ (3) FOSTER FAMILY HOME ☐ (4) SMALL FAMILY HOME
☐ (5) GROUP HOME OR INSTITUTION-Enter name and address:

## C. INVOLVED PARTIES

### VICTIMS

1. NAME: Last   First   Middle   AKA   DOB MO DA YR   APPROX. AGE:   ☐ MALE ☐ FEMALE   RACE*
ADDRESS: Street   City   Zip Code   DID VICTIM'S INJURIES RESULT IN DEATH? ☐ YES ☐ NO   NATURE OF INJURIES:
PRESENT LOCATION OF VICTIM:   TELEPHONE NUMBER:   IS VICTIM DEVELOPMENTALLY DISABLED [4512(a) W&I]? ☐ YES ☐ NO

2. NAME: Last   First   Middle   AKA   DOB MO DA YR   APPROX. AGE:   ☐ MALE ☐ FEMALE   RACE*
ADDRESS: Street   City   Zip Code   DID VICTIM'S INJURIES RESULT IN DEATH? ☐ YES ☐ NO   NATURE OF INJURIES:
PRESENT LOCATION OF VICTIM:   TELEPHONE NUMBER:   IS VICTIM DEVELOPMENTALLY DISABLED [4512(a) W&I]? ☐ YES ☐ NO

### SUSPECTS

1. NAME: Last   First   Middle   AKA   DOB MO DA YR   APPROX. AGE:   ☐ MALE ☐ FEMALE   RACE*
ADDRESS: Street   City   Zip Code   HGT   WGT   EYES   HAIR   SOCIAL SECURITY NUMBER:   DRIVER'S LICENSE NUMBER:
RELATIONSHIP TO VICTIM: ☐ (1) PARENT/STEPPARENT ☐ (2) SIBLING ☐ (3) OTHER RELATIVE ☐ (4) FRIEND/ACQUAINTANCE ☐ (5) STRANGER
Suspect given written notice per PC 11169(b)   MO   DA   YR
☐ Yes ☐ No   Date notice given:   If notice not given, explain in comments field A.12.

2. NAME: Last   First   Middle   AKA   DOB MO DA YR   APPROX. AGE:   ☐ MALE ☐ FEMALE   RACE*
ADDRESS: Street   City   Zip Code   HGT   WGT   EYES   HAIR   SOCIAL SECURITY NUMBER:   DRIVER'S LICENSE NUMBER:
RELATIONSHIP TO VICTIM: ☐ (1) PARENT/STEPPARENT ☐ (2) SIBLING ☐ (3) OTHER RELATIVE ☐ (4) FRIEND/ACQUAINTANCE ☐ (5) STRANGER
Suspect given written notice per PC 11169(b)   MO   DA   YR
☐ Yes ☐ No   Date notice given:   If notice not given, explain in comments field A.12.

### OTHER

1. NAME: Last   First   Middle   ☐ (1) PARENT/STEPPARENT ☐ (2) SIBLING   DOB MO DA YR   APPROX. AGE:   ☐ MALE ☐ FEMALE   RACE*

2. NAME: Last   First   Middle   ☐ (1) PARENT/STEPPARENT ☐ (2) SIBLING   DOB MO DA YR   APPROX. AGE:   ☐ MALE ☐ FEMALE   RACE*

*RACE CODES: W-White, B-Black, H-Hispanic, I-American Indian, F-Filipino, P-Pacific Islander, C-Chinese, J-Japanese, A-Other Asian, Z-Asian Indian, D-Cambodian, G-Guamanian, U-Hawaiian, K-Korean, L-Laotian, S-Samoan, V-Vietnamese, O-Other, X-Unknown   ☐ CHECK HERE IF ADDITIONAL SHEET(S) IS ATTACHED.

SS 8583 (Rev. 5/02)   PINK COPY-DOJ; WHITE COPY-Police or Sheriff; BLUE COPY-County Welfare or Probation; GREEN COPY- District Attorney's Office

# CHILD ABUSE INVESTIGATION REPORT
## DEPARTMENT OF JUSTICE (DOJ) FORM SS 8583
## Guidelines for Use and Completion of Form SS 8583

(For Specific Requirements Refer to the Child Abuse Reporting Law, California Penal Code Section 11165 through 11174.5)

**For immediate information on potential suspects/victims, please contact the Child Abuse Unit at (916) 227-3285.**

## Who Must Report

**Interagency Reporting**

- Any police or sheriff's department, county welfare department, or county probation department (if designated by the county to receive mandated reports) must report every suspected incident of child abuse it receives to:
  - the law enforcement agency having jurisdiction over the case
  - the agency responsible for investigations under Welfare and Institutions Code Section 300
  - the district attorney's office

**DOJ Reporting**

- An agency must report every incident of suspected child abuse for which it conducts an active investigation and determines not to be unfounded to DOJ on the Form SS 8583.

*NOTE: Reports are not accepted from non-California agencies.*

## What Incidents Must Not Be Reported

**Interagency Reporting**

- Incidents specifically exempted under cooperative arrangements with other agencies in your jurisdiction.

**DOJ Reporting**

- Unfounded reports - Reports that are determined to be false, to be inherently improbable, to involve an accidental injury, or not to constitute child abuse or neglect, as defined in Section 11165.6 PC (Section 11165.12 PC).
- Acts of nonexploitive, consensual sexual behavior between minors under the age of 14 years who are of similar age.
- Acts of negligence by a pregnant woman or other person(s) which adversely affect the well-being of a fetus.
- Past abuse of a child who is an adult at the time of disclosure.
- Child stealing, as defined in Sections 277 PC and 278 PC, unless it involves sexual abuse, physical abuse, mental/emotional abuse, and/or severe neglect.
- Reasonable and necessary force by school employees to quell a disturbance threatening physical injury to person or damage to property (Section 11165.4 PC).
- Statutory rape, as defined in Section 261.5 PC, except Section 261.5(d) PC (Statutes of 1997).
- Mutual fights between minors (Section 11165.6 PC).

## What Incidents Must Be Reported

- Abuse of a minor child, i.e., a person under the age of 18 years, involving any one of the below abuse types:

**Interagency Reporting**

- sexual abuse          . mental/emotional abuse
- physical abuse        . severe neglect
- general neglect

*(Refer to Section 11165.1 through 11165.6 PC for citations and definitions)*

**DOJ Reporting**

- All of the above, excluding general neglect.
- Deaths of minors resulting from abuse or neglect.

## When Must the Report be Submitted

**Interagency Reporting**

- Telephone notification - immediately or as soon as practical.
- Written notification - within 36 hours of receiving information concerning the incident.
- When an agency takes a report for which it lacks jurisdiction the agency shall immediately refer the case by telephone, fax, or electronic transmission to an agency with proper jurisdiction.

**DOJ Reporting**

- A Form SS 8583 must be submitted after an active investigation has been conducted and the incident has been determined not to be unfounded. DOJ defines "active investigation" as: the activities of an agency in response to a report of known or suspected child abuse. For purposes of reporting information to the Child Abuse Central Index, the activities shall include, at a minimum: assessing the nature and seriousness of the suspected abuse; conducting interviews of the victim(s), and any known suspect(s) and witness(es); gathering and preserving evidence; determining whether the incident is substantiated, inconclusive or unfounded; and preparing a report that will be retained in the files of the investigating agency.

*NOTE: No other form will be accepted in lieu of the Form SS 8583.*

The suspect(s) must be notified in writing that he/she has been reported to the Child Abuse Central Index per PC Section 11169(b).

## What Information is Required

**General Instructions**

- All information blocks contained on the Form SS 8583 should be completed by the investigating agency. If information is not available, indicate "UNK" in the applicable information block.

**Specific Instructions**

- INFORMATION BLOCKS ON THE FORM SS 8583 WHICH ARE SHADED GRAY MUST BE COMPLETED. *THE SUBMITTED FORM WILL BE RETURNED TO THE CONTRIBUTOR WITHOUT FURTHER DEPARTMENT OF JUSTICE ACTION IF THE CONTRIBUTOR FAILS TO COMPLETE ANY OF THE FOLLOWING ITEMS:* the agency name and type, the agency's report number or case name; the action taken by the investigating agency; the specific type of abuse; the victim's name, birthdate or approximate age, and gender; and the suspect's name and birthdate or approximate age, and gender. If the suspect is not known, UNKNOWN must be entered. Verification must be provided that an active investigation was conducted, that victim(s), and any known suspect(s), and witness(es) were contacted. An explanation must be provided if these contacts were not made. Verification must be provided that the suspect was given written notification that he/she has been reported to the Child Abuse Central Index per Section 11169(b) PC. An explanation must be provided if there was no notification.

Section A. "INVESTIGATING AGENCY," information block 10. "ACTION TAKEN" or 10A. "SUPPLEMENTAL INFORMATION" must be completed in accordance with the following definitions  (Check one of the boxes):



| ① | ② | ③ |
|---|---|---|
| **10. ACTION TAKEN** (check only one box):<br>□ (1) SUBSTANTIATED (Credible evidence of abuse)<br>□ (2) INCONCLUSIVE (Insufficient evidence of abuse, not unfounded) | **10A. SUPPLEMENTAL INFORMATION** (Attach copy of original report)<br>□ (a) INCONCLUSIVE        □ (c) ADDITIONAL INFORMATION<br>□ (b) UNFOUNDED (false report, accidental, improbable) | |

**10. ACTION TAKEN**

① SUBSTANTIATED - Acts determined, based upon some credible evidence, to constitute child abuse or neglect, as defined in Section 11165.6 PC.

② INCONCLUSIVE - Acts determined not to be unfounded, but there is insufficient evidence to determine whether child abuse or neglect, as defined in Section 11165.6 PC, has occurred.

**10A. SUPPLEMENTAL INFORMATION** - Only use this section to update information previously submitted on Form SS 8583.

(a) INCONCLUSIVE - A previously submitted Form SS 8583 indicated as **"SUBSTANTIATED"** is being reclassified to "INCONCLUSIVE."

(b) UNFOUNDED - A previously submitted Form SS 8583 indicated as "SUBSTANTIATED," "UNSUBSTANTIATED" or "INCONCLUSIVE" is being reclassified to "UNFOUNDED."

(c) ADDITIONAL INFORMATION - Supplementary information is being provided for a previously submitted Form SS 8583.

| Where To Send The Report Form SS 8583 | REMEMBER |
|---|---|
| *(For DOJ reporting only)*<br><br>Department of Justice<br>Bureau of Criminal Information and Analysis<br>P. O. Box 903387<br>Sacramento, CA 94203-3870<br>ATTENTION:  Child Abuse Unit | Submit completed Form SS 8583 to DOJ as soon as possible after completion of the investigation because the case information may contribute to the success of another investigation. It is essential that the report be complete, accurate and timely to provide the maximum benefit in protecting children and identifying and prosecuting suspects. If you have questions about DOJ REPORTING or need a victim or suspect name check, call the DOJ Child Abuse Unit at (916) 227-3285 or CALNET 498-3285. |

SS 8583 (5/02)

EXHIBIT ___14___



BCIA 8583
(Orig. 08/2005; Rev 03/2013)

DEPARTMENT OF JUSTICE

# CHILD ABUSE OR SEVERE NEGLECT INDEXING FORM

**To be completed by Submitting Child Protective Agency pursuant to Penal Code (PC) section 11169**

☐ INITIAL REPORT

☐ AMENDED REPORT (attach copy of original BCIA 8583. Complete sections A, C, and all other applicable fields)

DOJ USE ONLY
RCN AGENCY

## A. SUBMITTING AGENCY

SUBMITTING AGENCY (Enter complete name and check type)

☐ WELFARE ☐ PROBATION

AGENCY REPORT NUMBER/CASE NAME

AGENCY ADDRESS    Street    City    State    Zip Code

NAME OF SUBMITTING PARTY    TITLE    AGENCY TELEPHONE

## B. INCIDENT INFORMATION

DATE OF REPORT

☐ THE FINDING THAT ALLEGATIONS OF CHILD ABUSE OR SEVERE NEGLECT IS SUBSTANTIATED (PC sections 11165,12(b) and 11169(a))

DATE OF INCIDENT

TYPE OF ABUSE (Check one or more)
☐ PHYSICAL INJURY  ☐ SEVERE NEGLECT
☐ MENTAL/EMOTIONAL SUFFERING  ☐ WILLFUL HARMING/ENDANGERMENT
☐ SEXUAL ABUSE, ASSAULT, EXPLOITATION
☐ UNLAWFUL CORPORAL PUNISHMENT OR INJURY

## C. AMENDED REPORT INFORMATION

ORIGINAL AGENCY REPORT NUMBER/CASE NAME    DATE OF INCIDENT    TYPE OF ABUSE

☐ NOW UNFOUNDED OR INCONCLUSIVE ☐ ADDED ADDITIONAL INFORMATION ☐ CORRECTED REPORT INFORMATION ☐ UNDERLYING INVESTIGATIVE FILE NO LONGER AVAILABLE

COMMENTS

## D. INVOLVED PARTIES

### VICTIM(S)

NAME: Last First Middle    AKA    DOB    Approx. AGE    ☐ MALE ☐ FEMALE    RACE *
DID VICTIM'S INJURIES RESULT IN DEATH? ☐ YES ☐ NO ☐ UNKNOWN    IS VICTIM DEVELOPMENTALLY DISABLED (4512(a) W&I)? ☐ YES ☐ NO ☐ UNKNOWN

NAME: Last First Middle    AKA    DOB    Approx. AGE    ☐ MALE ☐ FEMALE    RACE *
DID VICTIM'S INJURIES RESULT IN DEATH? ☐ YES ☐ NO ☐ UNKNOWN    IS VICTIM DEVELOPMENTALLY DISABLED (4512(a) W&I)? ☐ YES ☐ NO ☐ UNKNOWN

NAME: Last First Middle    AKA    DOB    Approx. AGE    ☐ MALE ☐ FEMALE    RACE *
DID VICTIM'S INJURIES RESULT IN DEATH? ☐ YES ☐ NO ☐ UNKNOWN    IS VICTIM DEVELOPMENTALLY DISABLED (4512(a) W&I)? ☐ YES ☐ NO ☐ UNKNOWN

### SUSPECT

NAME: Last First Middle    AKA
SUSPECT IS AGE 17 OR YOUNGER ☐ YES ☐ NO    DOB    Approx. AGE    HGT    WGT    EYE    HAIR    ☐ MALE ☐ FEMALE    RACE *
ADDRESS Street    City    State    Zip Code    SOCIAL SECURITY NUMBER    DRIVER'S LICENSE NUMBER
RELATIONSHIP TO VICTIM: ☐ PARENT/STEPPARENT ☐ SIBLING ☐ OTHER RELATIVE ☐ FRIEND/ACQUAINTANCE ☐ STRANGER

### OTHER

NAME: Last First Middle    DOB    Approx. AGE    ☐ MALE ☐ FEMALE    RACE *
NAME: Last First Middle    DOB    Approx. AGE    ☐ MALE ☐ FEMALE    RACE *
NAME: Last First Middle    DOB    Approx. AGE    ☐ MALE ☐ FEMALE    RACE *
NAME: Last First Middle    DOB    Approx. AGE    ☐ MALE ☐ FEMALE    RACE *

**\* RACE CODES:**

W - White
B - Black
H - Hispanic
I - American Indian
F - Filipino
P - Pacific Islander
S - Samoan

C - Chinese
J - Japanese
A - Other Asian
Z - Asian Indian
D - Cambodian
G - Guamanian

U - Hawaiian
K - Korean
L - Laotian
V - Vietnamese
O - Other
X - Unknown

BCIA 8583
(orig. 06/2005; rev 03/2013)

DEPARTMENT OF JUSTICE

## GUIDELINES FOR USE AND COMPLETION OF THE
## CHILD ABUSE OR SEVERE NEGLECT INDEXING FORM (BCIA 8583)

For specific legal requirements regarding reporting abuse or severe neglect, refer to California Penal Code sections 11164 through 11174.3.

### REPORTING CHILD ABUSE OR SEVERE NEGLECT TO THE DEPARTMENT OF JUSTICE (DOJ)

An agency subject to the requirements of Penal Code sections 11165.9 and 11169(a) must report to the DOJ every incident of suspected child abuse or severe neglect for which it conducts an investigation and for which it determines that the allegations of abuse or severe neglect is substantiated. The agency must report on the Child Abuse or Severe Neglect Indexing Form (BCIA 8583), indicating the agency's finding of possible child abuse or severe neglect.

The completed BCIA 8583 should be submitted to the DOJ as soon as possible after completion of the investigation as the information may contribute to the success of another investigation. It is essential that the information on the form be complete, accurate, and timely to provide maximum benefit in protecting children and identifying instances of suspected abuse or severe neglect.

### WHAT INCIDENTS MUST BE REPORTED

Abuse of a minor child, i.e., a person under the age of 18 years, involving any one of the below abuse types: *(Refer to Penal Code sections 11165.1 through 11165.6 for definitions.)*

* Physical injury
* Mental/emotional suffering
* Sexual (abuse, assault, and exploitation)
* Severe neglect
* Willful harming/endangerment
* Unlawful corporal punishment/injury
* Death

### GENERAL INSTRUCTIONS

* Indicate whether you are submitting an INITIAL REPORT or an AMENDED REPORT by checking the appropriate box at the top of the form.
* All information blocks contained on the BCIA 8583 should be completed and substantiated by the submitting authorized agencies. The exact month, day, and year is required for entering into the CACI. If not known, please provide approximate date. Reports containing multiple dates will be returned.
* **Section B** - INCIDENT INFORMATION - The finding that allegations of child abuse or severe neglect is:
  * SUBSTANTIATED - defined by Penal Code section 11165.12(b) and 11169(a) to mean circumstances where the evidence makes it more likely than not that child abuse or severe neglect, as defined, occurred.
* **Section C** - AMENDED REPORT INFORMATION - Only use this section to update information previously submitted on form BCIA 8583. Attach a copy of the original BCIA 8583 and complete sections A, C, and all other applicable fields.
  * NOW UNFOUNDED OR INCONCLUSIVE - a previously submitted BCIA 8583 indicated as substantiated is being reclassified to unfounded or inconclusive.
  * ADDED ADDITIONAL INFORMATION - supplementary information is being provided for a previously submitted BCIA 8583. (Cases in which subsequent child death has resulted must be reported.)
  * CORRECTED REPORT INFORMATION - Information submitted on an initial BCIA 8583 is being corrected.
  * UNDERLYING INVESTIGATIVE FILE NO LONGER AVAILABLE - Your agency no longer retains the underlying investigative file that supports a previously submitted BCIA 8583.
  * COMMENT - use this area only if 1) you are reporting amended information that relates to one victim or suspect, and/ or 2) there is a need to clarify which victim or suspect the amended information applies to, as the initial report contained multiple victims and/or suspects.
* **Section D** - VICTIM (S) and SUSPECT INFORMATION - Victim(s) and Suspect information pertaining to allegations of child abuse or severe neglect.
  * VICTIM (S) - All information is required. Multiple victims are allowed on one form BCIA 8583.
  * SUSPECT - All information is required, it is mandated by CACI regulations to identify if the suspect is age 17 or younger.
  * ONE SUSPECT - One suspect per form BCIA 8583. All forms submitted with more than one suspect will be returned.
  * OTHER - Other interested party.

### WHERE TO SEND FORM BCIA 8583 (*For DOJ reporting only*)
Department of Justice
Bureau of Criminal Information and Analysis
P.O. Box 903387
Sacramento, CA 94203-3870
ATTENTION: Child Abuse Central Index (CACI)

EXHIBIT ____15____



**Social Services Agency**
*Department of Family & Children's Services*

DFCS Online Policies & Procedures

DFCS Online Policies & Procedures

<<< Return to OPP Table of Contents

Print Me!

Handbook 20: Special Information

20-3 Re-opening Cases Closed in CWS/CMS

Special Information

20-3  Re-opening Cases Closed in CWS/CMS

- DFCS Policy on Re-opening Cases in CWS/CMS
- Cases That Do Not Apply
- Procedures for Obtaining Approval to Re-open Cases Closed in CWS/CMS

Reference Points
Effective Date: 7/2/2009
Last Updated: 7/14/09

| DFCS Policy on Re-opening Cases in CWS/CMS | Approval for social workers to re-open closed CMS/CWS cases or referrals for purposes of data entry or correction requires approval from the Bureau Social Services Program Manager (SSPM) with collateral approval by the Administrative Support Bureau SSPM. |
|---|---|
| | The re-opening of a case or referral in CWS/CMS is not a preferred action.  There are few reasons for which approval is given to re-open a case, such as a need to enter Contact notes that were overlooked prior to closing the case in CWS/CMS.  Social Workers are cautioned to carefully review all data entries prior to closing the CWS/CMS case and ensure that all contacts are entered and case plans have been approved. |

< Return to OPP Table of Contents | ^ Back to Top of Page

**Procedures for Obtaining Approval to Re-open Cases Closed in CWS/CMS**

| Step | Task | Who |
|---|---|---|
| 1 | Emails his or her supervisor with a request to re-open the case or referral in CWS/CMS with the reason for the request. | Social Worker |
| 2 | • Makes a determination about approving the request.<br><br>• If approved, forwards the email to the Bureau SSPM and Administrative Support Bureau SSPM.<br><br>• Monitors the case to assure that the case is closed within five (5) business days of re-opening by the Help Desk. | Social Work Supervisor |
| 3 | Notifies the Administrative Support Bureau SSPM that he or she (Bureau SSPM) has or has not approved the request. | Bureau SSPM |
| 4 | Makes a determination about approving the request. | Admin Support Bureau SSPM |

| If the request.. | Then the ASB SSPM.. |
|---|---|
| is approved | Sends an email to the Help Desk that approval has been given to re-open the CWS/CMS case. |
| is not approved | Sends an email to the Bureau |

| | | |
|---|---|---|
| | SSPM with an explanation of why the request is denied. | |
| 5 | Notifies the social worker when the case is re-opened. | Help Desk |
| 6 | • Makes the necessary additions or corrections in the CWS/CMS case or referral.<br><br>• Submits the case or referral to the supervisor in Pending Approval status for closing by the supervisor | Social Worker |
| 7 | • If the re-opened case is not closed within five (5) business days of having been re-opened, contacts the Social Worker to remind him or her to close the CWS/CMS case<br><br>• Closes the case or referral in CWS/CMS. | Social Work Supervisor |

< Return to OPP Table of Contents | ^ Back to Top of Page

**Cases That Do Not Apply**

The procedures outlined above do not apply to those closed CWS/CMS cases that are re-opened for purposes of guardianship modification or cases re-opened for youth returning to the child welfare system from the juvenile delinquency system. Those types of cases are re-opened by specified staff who have been given pre-approval to re-open those cases.

< Return to OPP Table of Contents | ^ Back to Top of Page

SCC000155