# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

ABHIJIT PRASAD,

Plaintiff,

v.

GAIL SIMMONS, et al.,

Defendants.

Case No. 15-cv-04933-BLF

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

[Re: ECF 84, 101]

Plaintiff Abhijit Prasad brings this Section 1983 action against Defendants County of Santa Clara ("County"),[1] Guadalupe Acezes,[2] and Gale Simmons for alleged violations of his due process rights. The history of this action and the related events read like a treatise on governmental blunders. In 2010, the County determined that Plaintiff had sexually abused his oldest daughter, but not his youngest. The County then submitted Plaintiff's name for mandatory listing in a statewide database (the Child Abuse Central Index or "CACI") based on these conclusions, but the County accidentally indicated that Plaintiff had abused *both* of his children, not just the oldest. Except, as it turns out, the County inadvertently failed to actually submit

---

[1] Plaintiff sued Santa Clara County Department of Social Services ("DSS"); however, Defendant County of Santa Clara has asserted that DSS is merely a department within the County, and thus has been incorrectly sued. *See* Ans. ¶ 3, ECF 68. Plaintiff has not asserted that DSS was properly included in the suit or otherwise challenged the County's substitution of itself in any way. As such, the Court considers the County the proper Defendant here. *See Austen v. Cty. of Los Angeles*, No. 15-07372 DDP (FFMX), 2018 WL 501552, at *1 n.1 (C.D. Cal. Jan. 19, 2018) (dismissing Department of Public Social Services at summary judgment where plaintiff set forth no basis for Department's inclusion in the suit). However, the Court notes that even if DSS is the proper party here, the County's arguments and the Court's rulings apply equally to DSS.
[2] Ms. Aceves is sued as Guadalupe Acezes, with a "z." Ms. Aceves's declaration makes clear that her name is spelled with a "v." *See* ECF 84-2.

Plaintiff's information to the database. That is, Plaintiff's name was never listed in 2010, either correctly for abuse of one of his children or incorrectly for abuse of both.

However, because everyone believed that Plaintiff's name had correctly been submitted to CACI for the finding as to his oldest daughter, Plaintiff sought, and the County granted him, a grievance hearing so he could challenge this finding. Plaintiff lost at the grievance hearing and in subsequent state court proceedings, which upheld the finding. In 2015, the County discovered both of its errors and submitted Plaintiff's name to CACI, correctly indicating that the County had substantiated findings against Plaintiff only as to his oldest daughter. Plaintiff was notified of this submission. Because his name was listed in CACI at this point, Plaintiff requested another grievance hearing, which the County denied because he had a hearing in 2010. Plaintiff now argues that Defendants' failure to provide him a grievance hearing in 2015, when his name was first successfully submitted to CACI, violated his due process rights and constituted intentional infliction of emotional distress.

Now before the Court is Defendants' motion for summary judgment as to all of Plaintiff's claims, Def. Mot., ECF 84, and Plaintiff's motion for summary judgment as to all of his claims, Pl. Mot., ECF 101. The Court has considered the briefing, the admissible evidence, and the argument presented at the hearing on February 7, 2019. For the reasons discussed below, Defendants' motion is GRANTED and Plaintiff's motion is DENIED.

## I. UNDISPUTED FACTS[3]

### A. 2009–2010 Investigation of Mr. Prasad

On November 16, 2009, an unknown individual called Child Protective Services ("CPS") to report that Plaintiff had possibly sexually abused his two daughters, by, in part, "pinch[ing] their private area and [taking] baths with them." Silva Decl. ISO Def. Mot., Ex. A ("Narrative") at 1, ECF 89-3; *see also id.* at 3–4, 7. CPS requested that the County of Santa Clara Department of Family and Children's Services ("DFCS") generate a new referral and investigate. *Id.* at 1. Defendant Gale Simmons assigned the referral to DFCS employee Nana Chancellor. Simmons

---

[3] The facts set forth in this section are undisputed unless otherwise noted.

2

Depo. at 34:15–35:11, ECF 128. Ms. Chancellor investigated the allegations, including by interviewing both of Plaintiff's children and their mother (Plaintiff's ex-wife). Narrative at 2–4, 6. She closed this referral on November 30, 2009, finding the allegations inconclusive as to both children. *Id.* at 1. She opened a second referral on December 30, 2009 pertaining to the same allegations. *Id.* at 5; Simmons Depo. at 121:6–122:1; 154:9–155:9. For this referral, she concluded that the allegation of sexual abuse of Plaintiff's older daughter was "substantiated," while the allegation of sexual abuse of his younger daughter was "inconclusive." *Id.* at 7.

Based on these results, on February 9, 2010, Chancellor generated two documents relating to the investigation. First, she created a Child Abuse Summary Report, or "8583 form." When a county agency finds that an allegation of abuse or severe neglect is not unfounded, it must submit to the California Department of Justice ("CDOJ") a state-issued 8583 form pursuant to the Child Abuse and Neglect Reporting Act ("CANRA"), Cal. Penal Code § 11164, *et seq.* 11 Cal. Code Regs. §§ 900–901. The reported information is then submitted to the "Child Abuse Central Index" ("CACI"). Silva Decl. ISO Def. Mot., Ex. B ("2010 8583 Form"), ECF 89-3; Suarez Decl. ISO Def. Mot ¶ 3, ECF 87; Suarez Decl., Ex. S, ECF 87-1. This 8583 form is generated and filled out electronically in a statewide child-welfare-services database known as the Child Welfare Services Case Management System ("CWS/CMS"). *See* Cal. Welf. & Inst. Code § 16501.5. In this case, on the 2010 8583 form relating to Plaintiff, Ms. Chancellor checked that the "type of abuse" was "sexual." *See* 2010 8583 Form. She also incorrectly listed that the victims of the abuse were *both* of Plaintiff's children, even though the allegations were only substantiated as to the older child. *See id.*

Second, Ms. Chancellor created a Notice of Child Abuse Central Index Listing ("Notice of Listing"), to be sent to Plaintiff. Silva Decl., Ex. C, ECF 89-3. The Notice of Listing also incorrectly stated that the allegations against Plaintiff were substantiated as to *both* children. *Id.*

Pursuant to DFCS policy and custom, DFCS was supposed to send the 8583 form to CDOJ and the Notice of Listing to Plaintiff. Suarez Decl. ¶ 3; Suarez Decl., Ex. Q at 7–8, ECF 87-1. The Notice was successfully sent to Plaintiff; however, unbeknownst to DFCS at the time, the 8583 Form was never received by CDOJ. Simmons Decl. ISO Def. Mot. ¶ 2, ECF 84-1. As such,

3

Plaintiff's name was never listed in CACI in 2010. Weissburg Decl. ISO Def. MSJ Opp., Ex. 4A–N, ECF 107-2; Weissburg Decl., Ex. 7 at 70:3–9, ECF 98-3. If CDOJ had rejected the 8583 form, it would have sent the form back to Defendants. *See* Weissburg Decl., Ex. 10 at 22:9–25:24, ECF 98-3.

### B. 2010 Grievance Hearing and State Court Review

In March 2010, Plaintiff requested a grievance hearing (or "CANRA hearing") to challenge the (purported) inclusion of his name in CACI. Silvia Decl., Ex. D, ECF 89-3. In July and August 2010, a CANRA hearing was held. *Id.*, Ex. E, ECF 89-3. The hearing officer recommended that the investigation disposition not change—*i.e.*, that the referral for the older child should remain substantiated and the referral for the youngest child should remain inconclusive. *Id.* On August 25, 2010, DFCS's agency director concurred in the hearing officer's recommendation to deny the grievance. *Id.*, Ex. F, ECF 89-3.

In 2011, Plaintiff petitioned for a writ of mandamus in Santa Clara County Superior Court seeking to have the substantiated allegation against him set aside. *See* Def. Req. Judicial Not. ("Def. RJN"), Ex. J, ECF 88-1.[4] In his petition, Plaintiff argued in part that the grievance hearing had violated his due process rights. *Id.* at 13–14, 20, 47. The state trial court found that Plaintiff did "not meet his burden of proving that the administrative finding—that the report of sexual abuse was substantiated—is contrary to the weight of the evidence." *Id.*, Ex. K at 3, ECF 88-1. Plaintiff appealed this decision, and the state appellate court held that the grievance hearing did not violate Plaintiff's due process rights and that substantial evidence supported the trial court's decision. *See generally id.*, Ex. L, ECF. 88-1. Plaintiff's petition for review to the California Supreme Court was denied on June 13, 2018, and his petition for writ of certiorari to the United States Supreme Court was denied on November 5, 2018. *Id.*, Exs. M, N, ECF 88-1.

---

[4] Documents that are part of the public record may be judicially noticed to show that a judicial proceeding occurred or that a document was filed in another court case. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 & n. 5 (9th Cir. 2003). As such, the Court GRANTS the request for judicial notice as to documents from the state court proceedings. Likewise, the Court takes judicial notice of Exhs. 1, 2, 4, 7, and 10 to the Weissburg Declaration, to which Defendants do not object. *See* ECF 102. The Court need not and does not take judicial notice of any other documents; as such, the remaining requests for judicial notice are DENIED.

### C. FIRST FEDERAL COURT CASE

On January 13, 2014, Plaintiff filed a case against the County in federal court relating to these same allegations. *See* ECF 1 ("*Prasad I* Compl."), *Prasad v. Santa Clara Dep't of Social Srvs.* (*Prasad I*), No. 5:14-cv-00179-BLF (N.D. Cal.). Though Plaintiff received an opportunity to challenge his CACI listing in 2010, he did not receive an opportunity to challenge his listing in the statewide CWS/CMS database. *See* ECF 40 ¶¶ 67–69, *Prasad I*. In *Prasad I*, he claimed, in relevant part, that the lack of opportunity to challenge his listing in CWS/CMS deprived him of due process. *Id.* ¶¶ 81–85. However, he also disclaimed in that suit any challenge to his "substantiated" CACI listing. *See* ECF 51 at 10–12 & n.9. As such, this Court concluded that Plaintiff's due process claim failed because he had not identified any injury from his CWS/CMS listing that was independent of his CACI listing. *Id.* at 9–13. It dismissed his relevant claim with prejudice. The Ninth Circuit affirmed the Court's dismissal of Plaintiff's due process claim because "Prasad was able to challenge the factual basis behind the same allegation of child abuse included in the CWS/CMS in a [CACI] grievance hearing," the outcome of which Prasad was then challenging in state court proceedings, as discussed above.[5] *See Prasad v. Santa Clara Dep't of Soc. Servs.* (*Prasad II*), 685 F. App'x 538, 540 (9th Cir. 2017).

Plaintiff avers that he has spent over $250,000 to challenge his inclusion in CACI and CWS/CMS. Prasad Decl. ISO Pl. Mot. ¶ 10, ECF 107-3.

### D. DFCS'S DISCOVERY OF AND CORRECTION OF THE DATABASE ENTRIES AND 8583 FORM

In April 2015, attorneys for the County discovered that the 2010 Notice of Listing sent to Plaintiff had incorrectly stated that the allegations against Plaintiff were substantiated as to both children instead of just his older child. McKellar Decl. ISO Def. Mot. ¶ 2, ECF 86. By law, county agencies are required to immediately notify CDOJ of necessary changes to any previously submitted 8583 form by submitting an amended 8583 form. 11 Cal. Code Regs. § 902(b). And

---

[5] The Ninth Circuit also held that this Court had erred in granting dismissal with prejudice because Plaintiff might have a plausible due process claim if the state court were to overturn the substantiated finding and Plaintiff remained without a mechanism for challenging his CWS/CMS listing. *See Prasad II*, 685 F. App'x at 540. Because the state court ultimately affirmed the substantiated finding, the Ninth Circuit's reversal on this point is immaterial here.

the County had a policy for re-opening cases closed in CWS/CMS. Suarez Decl., Ex. U, ECF 87-1.

A deputy county counsel for the County then met with DCFS staff and advised them to submit an amended 8583 form to CDOJ. McKellar Decl. ¶ 2. Defendant Gail Simmons, a Social Work Coordinator at DCFS, was called into a meeting with her manager and the deputy county counsel in which her manager and the attorney told her "to go into the CWS/CMS database, change a disposition as to an allegation made by Prasad's younger child from substantiated to inconclusive and generate a new CACI report [*i.e.*, 8583 form]." Simmons Decl. ¶ 2. Specifically, Ms. Simmons remembers someone telling her the following: "We have a lawsuit. It is the Prasad case. It was not reported to DOJ. We failed to comply with the law. We discussed the fact that the youngest child did not give a verbal communication to the social worker and because of that, we need to change the second -- we need to change the conclusion on the youngest child to 'inconclusive' from 'substantiated.' Nana Chancellor is not here anymore. So it falls on you, Gale Simmons, to do. So as soon as you can, open up the referral, change the disposition, send it to DOJ, and close." Simmons Depo. at 73:1–10. When asked if she reviewed any legal mandates or law regarding modifying the CACI report, Ms. Simmons answered, "I don't have to. I have an attorney." *Id.* at 77:8–11. When asked if she reviewed any policies or procedures on reporting to the CDOJ prior to changing the CACI report, she answered "[m]y attorney reviewed it for me and relayed what I needed to do." *Id.* at 78:3–8. Ms. Simmons was not instructed to and did not further investigate the allegations. Simmons Decl. ¶ 3; Simmons Depo. at 121:3–25, 160:2–22; Weissburg Decl., Ex. 6 ("Smith Depo.") at 25:17–18. Her job was instead to "correct the error in reporting to DOJ." Simmons Depo. at 101:9–102:4.

On April 7, 2015, Ms. Simmons re-opened the case in CWS/CMS, corrected the finding regarding the younger child, and added the following addendum to Ms. Chancellor's investigation narrative:

> The referral was re-opened to correct an error in the CWS disposition and state that the allegation of sexual abuse to [youngest child] (age 4) by her father, Abhijit Prasad, is found to be Inconclusive. A letter has been sent to the DOJ indicating the disposition of the allegation was found to be inconclusive and the error should be

6

corrected in the CACI.

Narrative at 8; Simmons Decl. ¶ 2.

Ms. Simmons also created a new 8583 form (instead of an amended one) to send to CDOJ. In 2015, the format of the 8583 forms had changed since 2010. *See* Suarez Decl., Ex. T, ECF 87-1; Suarez Decl. ¶ 4, ECF 87. The 2015 8583 form Ms. Simmons filled out was titled "Child Abuse or Severe Neglect Indexing Form." Silva Decl., Ex. G ("2015 8583 Form"), ECF 89-3. Plaintiff's 2015 8583 form indicated that "the finding that allegations of child abuse or severe neglect is substantiated" as to the older child, and that the type of abuse was "sexual abuse, assault, exploitation," as compared to the simple "sexual" abuse from the 2010 8583 form. *See id.* There was no option on the 2015 version of the 8583 form for sexual abuse only. *Id.* As a comment on the form, Ms. Simmons wrote, "The allegation of sexual abuse substantiated for the child, [youngest child], by her father, Abhijit Prasad, was sent to DOJ in error and should be removed from the CACI. The allegation of sexual abuse to [youngest child] by her father Abhijit Prasad is found to be inconclusive." *Id.* This additional comment was not ultimately listed or entered into CACI because it was not entered in a designated field on the form. Meza Decl. ISO Def. Mot. ¶ 5, ECF 84-4. Defendant Guadalupe Aceves, who seemingly manages the clerical staff who mail the CACI reports for DFCS, was not directly involved in any of these actions. Aceves Decl. ISO Def. Mot. ¶ 1, ECF 84-2; Weissburg Decl., Ex. 8 ("Aceves Depo.") at 26–28, ECF 107-2.

### E. PLAINTIFF'S REQUEST FOR ANOTHER GRIEVANCE HEARING

On April 7, 2015, DCFS sent Plaintiff a new Notice of Listing, indicating that the allegations against him as to his oldest daughter had been substantiated as to "sexual abuse, assault, exploitation." Silva Decl., Ex. H, ECF 89-3; Prasad Decl. ¶ 25, ECF 101-3. On April 15, 2015, Plaintiff requested a CANRA grievance hearing. *Id.*, Ex. I, ECF 89-3. As in 2010, there still was no mechanism for Plaintiff to appeal his listing in CWS/CMS. *See* Prasad Decl. ¶ 19. In July 2015, the County decided not to provide Plaintiff with a grievance hearing "because he had already received a grievance hearing for the exact same referral in 2010," McKellar Decl. ¶ 3, and because "no new allegations were added or made against [Plaintiff]," *id.*, Ex P, ECF 95. In

informing Plaintiff of its decision, the County noted that the 2015 8583 form box indicating that Plaintiff had committed "sexual abuse, assault, exploitation" was merely a part of the state-mandated 8583 form and did not amount to new allegations. *Id.* Neither Defendant Simmons nor Defendant Aceves was involved in the decision not to grant Plaintiff a grievance hearing in 2015. Aceves Decl. ¶¶ 2–3; Simmons Decl. ¶ 3.

### F. PLAINTIFF'S ALLEGATIONS

Plaintiff filed this action on October 27, 2015. ECF 1. In his Second Amended Complaint, he claims that the 2015 CACI listing was based on both the 2010 allegations, as well as "new allegations that have never been investigated by defendants." Second Am. Compl. ("SAC") ¶¶ 34–36, ECF 65; *see also* SAC ¶¶ 78–79. Based on the County's failure to investigate these "new allegations" and Defendants' denial of a second grievance hearing to Plaintiff, Plaintiff brings the following causes of action: (1) Unlawful Policies, Customs and Habits in violation of 42 U.S.C. § 1983 (against the County); (2) a violation of 42 U.S.C. § 1983 (against Ms. Simmons and Ms. Aceves); and (3) intentional infliction of emotional distress (against all Defendants).

## II. EVIDENTIARY OBJECTIONS

Under Federal Rule of Civil Procedure 56(c), a party can object to an opposing party's declarations and evidentiary material if it is not in a form that "would be admissible in evidence." Defendants object to some of Plaintiff's evidence cited in his Opposition to Defendants' motion. *See* Def. Reply at 1–10, ECF 117. The Court discusses each objection in turn.

### 1. Second Amended Complaint ¶¶ 34, 36, and 48

Plaintiff's Second Amended Complaint is a verified complaint, which can be used as an opposing affidavit at summary judgment as long as it is "based on personal knowledge and set[s] forth specific facts admissible in evidence." *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995). Defendants object to SAC ¶¶ 34, 36, and 48 because they are alleged "on information and belief."

Ruling: SUSTAINED. Plaintiff does not have personal knowledge of these allegations. *See Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991).

### 2. Second Amended Complaint ¶ 35

Defendants object to the portion of SAC ¶ 35 which states that "Acezes was the agency contact responsible for the submission of the report that placed Plaintiff in CACI." Defendants argue that this is an impermissible lay opinion that lacks foundation under Federal Rule of Evidence 701.

Ruling: SUSTAINED. Plaintiff is not a county employee and has not indicated how he has personal knowledge of Ms. Aceves's duties as a county employee.

### 3. Second Amended Complaint ¶ 37

Defendants object to the portion of SAC ¶ 37 which indicates that Mmes. Simmons and Aceves "include[ed] [Plaintiff] in CWS/CMS, CACI, the 500 plus sub-databases," or submitted him "to the DOJ for allegations of abuse occurring in 2015." Defendants argue that this is an impermissible lay opinion that lacks foundation under Federal Rule of Evidence 701.

Ruling: SUSTAINED. Plaintiff is not a county employee and has not indicated how he has personal knowledge of Mmes. Aceves's or Simmons's duties as county employees.

### 4. Second Amended Complaint ¶ 42

Defendants object to the portion of SAC ¶ 42 which indicates that "more than 500 databases . . . directly receive information from the CWS/CMS system, which is then disseminated to public and private entries, without a court order." Defendants argue that this is an impermissible lay opinion that lacks foundation under Federal Rule of Evidence 701.

Ruling: SUSTAINED. Plaintiff has not demonstrated how he has personal knowledge of how the state databases receive and disseminate information.

### 5. Prasad Decl. ¶ 21

Defendants object to the portion of Prasad Decl. ¶ 21, stating "In 2015 they (Chancellor and Smith) changed the allegations to sexual abuse, assault and exploitation." Defendants argue that this is an impermissible lay opinion that lacks foundation under Federal Rule of Evidence 701.

Ruling: SUSTAINED. Plaintiff is not a county employee and has not indicated how he has personal knowledge of Mmes. Aceves's or Chancellor's duties as county employees.

#### 6. Prasad Decl. ¶ 29

Defendants object to Prasad Decl. ¶ 29, which states "I was told by my family law attorney that the only reason I have not been able to see my daughters was due to Ms. Chancellor claiming in 2010 that she had reported me to DOJ for sex abuse. Further, that Chancellor claimed I had criminal proceedings pending, which I did not." Defendants argue that this is inadmissible hearsay and irrelevant to the claims here.

Ruling: SUSTAINED. The statements by Plaintiff's attorney is inadmissible hearsay not subject to a valid exception. Moreover, Plaintiff's statement is irrelevant to his claims here, which do not involve the results of the 2010 investigation or Ms. Chancellor's actions.

#### 7. Lemor Warzman Expert Report, Weissburg Decl, Ex. 3, ECF 107-2

Defendants object broadly to the expert report of Lemor Warzman. Defendants argue that this report is irrelevant to the current action because it does not pertain to the 2015 events, and instead focuses solely on the investigation and hearings in 2010, with the exception of a conclusory statement that the actions in 2015 violated Plaintiff's due process rights. They also argue that it is an improper expert report under Federal Rule of Evidence 702 "because it includes: (1) speculative and subjective opinions that are not reliably-based; (2) impermissible legal opinions; and (3) impermissible attacks on the credibility of social workers, the grievance hearing officer and state court rulings." Def. Reply at 7–10.

Ruling: SUSTAINED. The Court agrees that Warzman's report relates almost exclusively to the investigation and hearings in 2010 and beyond. The opinions related to these events are irrelevant to the theory of liability in this case, which turns on the events of 2015. Moreover, Warzman's report is riddled with inadmissible legal conclusions. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). To the extent Warzman makes non-legal conclusions as to the events that occurred in 2015, Warzman does not connect those conclusions with any description of how those conclusions were reached. Again, the report deals almost exclusively with actions in 2010, such that the Court cannot determine what actions led Warzman to the conclusions about the actions in 2015. Thus, the Court cannot conclude that the opinions are based on sufficient facts or data, are the product of reliable principles and methods, or

1 | that Warzman reliably applied the principles and methods used to the relevant facts of the case.

## III. LEGAL STANDARD

### A. Summary Judgment

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248–49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Id.* at 1103. If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. In judging evidence at the summary judgment stage, "the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.,* 891 F. Supp. 510, 513–14 (N.D. Cal. 1995). "[T]he 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson*, 477 U.S. 242, 252 (1986)). "'Where the record taken

11

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss*, 134 S. Ct. 2056, 2066–67 (2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-part approach for analyzing qualified immunity. The analysis contains both a constitutional inquiry and an immunity inquiry. *Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir. 2003). The constitutional inquiry requires the court to determine this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If the Court determines that a constitutional violation could be made out based on the parties' submissions, the second step is to determine whether the right was clearly established. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

The Supreme Court has clarified that the sequence of analysis set forth in *Saucier* is not mandatory and that a court may exercise its sound discretion in determining which of the two prongs of the qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 241–02 (2009). Thus, in some cases, it may be unnecessary to reach the ultimate constitutional question when officers would be entitled to qualified immunity in any event, a result consistent with longstanding principles of judicial restraint.

The Supreme Court recently reiterated the longstanding principle that a "clearly established" constitutional right "should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). Rather, it must be "particularized" to the facts of the case. *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

12

(1987)). Defining the right at too high a level of generality "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Ricard*, 134 S. Ct. 2012, 2023 (2014). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). "A right can be clearly established despite a lack of factually analogous preexisting case law, and officers can be on notice that their conduct is unlawful even in novel factual circumstances." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013). "The relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional." *Id.*

## IV. DISCUSSION

Defendants and Plaintiff each move for summary judgment on all three of Plaintiff's claims. For the reasons discussed below, Defendants' motion is GRANTED, and Plaintiff's motion is DENIED. The Court first discusses the overarching issue of whether Plaintiff's Due Process rights were violated, and then discusses each claim in turn.

### A. Plaintiff's Due Process Rights

In Plaintiff's own words, "this is a case about Plaintiff's 2015 inclusion in CACI and CWS/CMS without a CANRA hearing, in violation of State and federal law." Pl. Mot. at 16; *see also* Pl. Mot. at 5, 23 (describing case as being about inclusion in CACI in 2015 without a grievance hearing).[6] Plaintiff's briefs muddy the water by referencing information irrelevant to this theory of liability, such as the 2010 investigation; Defendants' failure to list Plaintiff in CACI in 2010 and Plaintiff's attendant use of the judicial process to challenge that purported listing; and

---

[6] The Court has previously held that "the [2010] child sex abuse allegations against Prasad and the inclusion of his name and other information in the CWS/CMS database are irrelevant to this action," and thus struck allegations pertaining to these events from Plaintiff's First Amended Complaint. ECF 60. The Court summarized that "[t]his case is not about Prasad's 2009/2010 inclusion in the CWS/CMS database following a CANRA hearing; it is about Prasad's alleged 2015 inclusion in the CACI registry without a CANRA hearing." ECF 60 at 5–6.

13

the harm Plaintiff has suffered from being listed in CACI generally. *See generally* Pl. Mot; Pl. Opp, ECF 107. But when the Court considers evidence and arguments relevant to this case, resolution is straightforward: Plaintiff's Due Process rights were not violated when he was listed in CACI in 2015 without a grievance hearing because he had already received a grievance hearing in 2010 concerning the exact same allegations. Plaintiff has submitted no evidence of new or different allegations, only a new state-issued check-the-box form.

The Ninth Circuit's opinion in *Prasad I* dictates that so long as the same allegation underpins both a CWS/CMS listing and a CACI listing, a grievance hearing for the CACI listing that comports with due process provides due process for the CWS/CMS listing. All the more here, where the first listing was a purported CACI listing, and the second listing was *also* a CACI listing—implicating the same harms and required processes. In this case, the state court held that Plaintiff's 2010 grievance hearing provided him due process to challenge his listing in CACI. *See* Def. RJN, Exs. J–N. These two rulings combined compel the Court to conclude that Plaintiff had sufficient due process to challenge his 2015 CACI listing, so long as the allegations underpinning his purported 2010 listing and his 2015 listing, respectively, are identical.[7]

Those allegations are identical. No reasonable jury could conclude on these facts that different allegations underpin the 2015 CACI listing. Plaintiff relies on three key facts to show that the allegations differ: (1) Plaintiff's 2015 8583 form listed the type of abuse as "sexual abuse, assault, exploitation," while the 2010 8583 form listed the type of abuse as "sexual" only; (2) Ms. Simmons created a new 8583 form instead of amending the previous 8583 form, *see* Silva Decl., Ex. G; and (3) Ms. Simmons testified in her deposition that the allegations included that "Mr. Prasad had digitally penetrated one or both children," Simmons Depo. at 98:11–12, though the 2009–10 narrative concerned "pinching" of private areas, Narrative at 1.

---

[7] Plaintiff spends much of his motion arguing that listing in CACI and CWS/CMS without a hearing violates the stigma-plus test (and thus Plaintiff's due process rights). *See* Pl. Mot. at 24–29 (citing *Humphries v. Cty. of L.A.*, 547 F.3d 1117 (9th Cir. 2008)). But this fact is beside the point. Everyone agrees that Plaintiff was owed a due process hearing because he was listed in CACI. Defendants simply argue, and this Court agrees, that Plaintiff was afforded such process in 2010.

In their appropriate context, none of these facts points to a new allegation against Plaintiff in 2015. Most importantly, it is undisputed that no one, including Ms. Simmons, conducted a new investigation of the 2009–10 allegations against Plaintiff in 2015. *See* Simmons Depo. at 82:6–8 ("There is no investigation in 2015, so why would they grant him [a grievance hearing] in 2015? All of this has to do with whatever referral occurred in 2009 or '10."); Simmons Depo. at 160:8–15 ("It is not my job to research. And it's not my job to reinterview, to relitigate, to reinvestigate. The investigation was already done. Nobody was questioning no one. The only thing they were concerned about is the fact that it was not reported to DOJ and what was reported to DOJ was inappropriate."). Indeed, many of Plaintiff's arguments appear to turn on the fact that the County did not investigate before successfully transmitting the CACI listing in 2015. *See, e.g.*, Pl. Mot. at 15 ("defendants . . . submitted documents to have Prasad placed in CACI and CWS/CMS databases on April 7, 2015 . . . without conducting any investigation as mandated by law"); Pl. Mot. at 18–21 (describing how Defendants failed to investigate in 2015). If no new investigation was conducted, the only reasonable inference is that the substantiated allegation underpinning the 2015 CACI report was the same allegation as the one that underpinned the 2010 report. Indeed, Ms. Simmons's comment on the 2015 8583 form confirms that the 2015 form was meant only to correct what Defendants believed to be an error in reporting to the DOJ, stating that "[t]he allegation of sexual abuse substantiated for the child, [youngest child], by her father, Abhijit Prasad, was sent to DOJ in error and should be removed from the CACI. The allegation of sexual abuse to [youngest child] by her father Abhijit Prasad is found to be inconclusive." Silva Decl., Ex. G. At bottom, the 2015 8583 form was simply meant to correct an error in the 2010 8583 form regarding the same exact allegations. Plaintiff has not submitted any evidence to the contrary.

While it may be true that Ms. Simmons inappropriately created a new report instead of amending the old one, this mistake does not indicate that there were new allegations against Plaintiff, given that no investigation was conducted and no new referral had been made. Likewise, the fact that the 8583 form's check-boxes changed between 2010 and 2015 to now include a single box for "sexual abuse, neglect, and exploitation," as opposed to an individual box for "sexual"

15

abuse, does not mean that the allegations changed.  The County has no control over the state-mandated 8583 form.  Indeed, had the same alleged events occurred in 2015, instead of 2010, the County would have had to mark the "sexual abuse, neglect, and exploitation" box.  Finally, Ms. Simmons's deposition, read in context, makes clear that there was no new allegation that Plaintiff had "digitally penetrated" either of his children.  Ms. Simmons was basing her answer to the question on her memory of Ms. Chancellor's 2009 investigation, not any investigation of her own. *See* Simmons Depo. at 98:1–100:8 (describing the 2009 investigation, saying "as I remember correctly" and stating that her answers were "based on Nana Chancellor's investigation").  And this makes sense because Ms. Simmons undisputedly did not investigate and lacked foundation to describe the allegations and investigation results from 2009 and 2010.  Moreover, Plaintiff has failed to show that such an allegation is contained in Defendants' case file or the CACI listing.

Thus, because the allegations in 2010 were identical to those in 2015, and because Plaintiff received a grievance hearing in 2010 that provided Plaintiff sufficient due process, as held by the state court, no reasonable jury could find that Plaintiff's due process rights were violated.

### B. Plaintiff's Section 1983 Claim Against Aceves and Simmons

Because Plaintiff's due process rights were not violated, his Section 1983 claim against Aceves and Simmons cannot stand.  But even if Plaintiff's due process rights had been violated, no reasonable jury could find that Ms. Aceves violated them, and in any event the individual Defendants have demonstrated that they are entitled to qualified immunity.

The undisputed evidence shows that Ms. Aceves had nothing to do with DCFS's dealings with Plaintiff at any time.  She was not involved in creating his 2015 8583 form, she did not personally participate in the process of mailing his 8583 form, she was not involved in the decision to deny him a grievance hearing, and she has no authority to determine who is reported to CACI.  Aceves Decl. ¶¶ 1–3.  To be liable under Section 1983, Ms. Aceves would have to "subject" Plaintiff to a constitutional deprivation, meaning she must have done "an affirmative act, participate[d] in another's affirmative acts, or omit[ted] to perform an act which [s]he [was] legally required to do that cause[d] the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  Given the undisputed facts, no reasonable juror could

16

conclude that Ms. Aceves caused Plaintiff any due process violation, even assuming one occurred.

Moreover, Ms. Aceves and Ms. Simmons are both entitled to qualified immunity. Plaintiff claims that "Aceves and Simmons did knowingly violate the law by, not having any verification of submission to DOJ; no follow-up; and denying Plaintiff his civil rights" (*i.e.*, his right to a hearing). Pl. Opp. at 16. Plaintiff seems to argue that Mmes. Aceves and Simmons violated his rights by failing to comply with CDOJ reporting requirements in 2009. *See* Pl. Opp. at 16. But again, the relevant inquiry in this case, as Plaintiff has made clear, is whether *in 2015* Defendants contributed to any violation by submitting Plaintiff to CACI and denying him a grievance hearing. Here, Aceves was not involved in any relevant decisions or actions whatsoever in 2015, and Ms. Simmons was simply following her manager's and the attorney's instructions to report the correct allegations to CDOJ based on a previously substantiated allegation for which Plaintiff received a hearing. Thus, to demonstrate that Defendants are not entitled to qualified immunity, Plaintiff must point to a case that clearly established at the relevant time that a defendant violates a plaintiff's due process rights when she submits the plaintiff's name for listing in an abuse database without offering a new due process hearing or conducting a new investigation, where the underlying evidence remains unchanged from a prior report substantiating the abuse for which a grievance hearing was already offered and conducted. Plaintiff points to no such case, or any case even remotely close to these facts. As such, Mmes. Aceves and Simmons are entitled to qualified immunity.

Accordingly, Defendants' motion for summary judgment on the individual Section 1983 claim against Ms. Aceves and Ms. Simmons is GRANTED.

### C. Plaintiff's Section 1983 *Monell* Claim

Because Plaintiff cannot prove that his due process rights were violated, his claim for liability against the County under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), fails. *See Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002)

Accordingly, Defendants' motion for summary judgment as to Plaintiff's *Monell* liability Section 1983 claim is GRANTED.

### D. Plaintiff's Intentional Infliction of Emotional Distress Claim

To state a claim for intentional infliction of emotional distress ("IIED"), a party must plead: "(1) outrageous conduct by defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress." *Bogard v. Emp'rs. Cas. Co.*, 164 Cal. App. 3d 602, 615 (Cal. 1985); *accord Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009). "It is not enough that the conduct be intentional and outrageous[, it] must be conduct directed at the plaintiff or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). The conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal. 4th at 1051 (citation and internal quotation marks omitted).

Plaintiff's claim fails on multiple fronts. Because his due process rights were not violated, no reasonable jury could conclude that Defendants' refusal to offer Plaintiff a grievance hearing injured him. Likewise, given that Defendants' alleged conduct at best amounts to negligence (or even gross negligence), no reasonable jury could conclude that their conduct was "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* And Defendants were simply correcting their own error in order to comply with the County's mandatory duty to submit the corrected, substantiated form to CDOJ.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's IIED claim is GRANTED.

### V. ORDER

There is no doubt that important due process rights are implicated when a county sustains child abuse allegations and submits a person's record to CDOJ. Mr. Prasad and his attorneys are right to be vigilant in insuring that Mr. Prasad obtained access to all of his constitutional rights. However, in this case, after full discovery, it is undisputed that Mr. Prasad was, indeed, fully afforded his constitutional right to a hearing to contest the sustained allegations in 2010. There being no evidence of new or additional allegations, he simply was not entitled to a second hearing.

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment

18

as to all of Plaintiff's claims and DENIES Plaintiff's motion for summary judgment. The Court having dismissed all of Plaintiff's claims, the Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated: March 29, 2019

_____
BETH LABSON FREEMAN
United States District Judge